IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt)

**KENNETH FITCH**, *et al.*,                    *

                    Plaintiffs,            *

v.                                                            Case No.: **1:18-cv-02817-PJM**

                                                    *

**STATE OF MARYLAND**, *et al.*,            *

                    Defendant,            *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS MOTION TO CERTIFY CLASS**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................... 1

II.     PRELIMINARY STATEMENT ................................................... 1

III.    FACTUAL & PROCEDURAL HISTORY.................................... 3

IV.     STANDARD OF REVIEW ........................................................7

V.      ARGUMENT ..........................................................................7

        A.  Plaintiff Meet All Fed. R. Civ. P. 23(a) criteria for Class Certification ...............7

            1.  Ascertainability – The Class is Ascertainable ...............................8

            2.  Numerosity – The Numerosity Requirement is Satisfied .............9

            3.  Commonality – There are Common Questions
                of Law and Fact ...................................................... 10

            4.  Typicality – The Individual named Plaintiffs' Claims are
                Typical of the Class's Claims ...................................... 14

            5.  Adequacy of Representation – The Plaintiffs Will
                Adequately Represent the Class's Interests ........................17

        B.  Plaintiffs meet at least one of the Fed. R. Civ. P. (23)(b)
            Requirements for Class Certification ......................................19

            1.  The Case Qualifies for Class Certification under
                Fed. R. Civ. P. 23(b)(1) ...........................................21

            2.  The Case Qualifies for Class Certification under
                under Fed. R. Civ. P. 23(b)(2) .....................................21

            3. The Case Qualifies for Class Certification under
                Fed R. Civ. P. 23(b)(3) .............................................. 22

VI.     CONCLUSION ......................................................................24

## TABLE OF AUTHORITIES

**Cases**

Andrews v. Anne Arundel County, ...................................................................... 15
931 F. Supp. 1255 (1996)

Adams v. Henderson, ...................................................................................... 10
197 F.R.D. 162 (D. Md. 2000)

Brady v. Thurston Motor Lines, ...................................................................... 10
726 F. 2d 136 (4th Cir. 1984)

Broussard v. Meineke Discount Muffler Shops, Inc., ................................... 16, 17
155 F.3d 331 (4th Cir. 1998).

Brown v. Nucor Corp., ...................................................................................... 8
785 F.3d 895 (4th Cir. 2015)

City of Frederick v. Quinn, .............................................................................. 31
371 A.2d 626 (Md. App. 1977)

Cypress v. Newport News Gen & Nonsectarian Hosp. Ass'n, ........................ 10
375 F.2d 648 (4th Cir 1967)

Davis v. Mayor and Alderman of the City of Annapolis, ................................ 31
98 Md. App. 707 (1994)

Deiter v. Microsoft Corp., ............................................................................ 14, 16
436 F.3d 461 (4th Cir. 2006)

East Tex. Motor Freight System, Inc. v. Rodriguez, ...................................... 24
97 S. Ct. 1891 (1997)

EQT Prod. Co. v. Adair, ................................................................................. 9, 10
764 F.3d 347 (4th Cir. 2014)

Fitch v. Maryland, ............................................................................................ 8
Cir. Ct Baltimore City, 24-18-005077.

George v. Duke Energy Ret. Cash Balance Plan, ........................................... 26
259 F.R.D. 225 (D.S.C. 2009).

Gen. Tel. Co. of the Sw v. Falcon, .................................................................. 17
457 U.S. 147 (1982)

Gunnells v. Healthplan Serv., Inc., ............................................................... 8, 12
348 F.3d 417 (4th Cir. 2003)

Harlow v. Sprint Nextel Corp., .............................................................................. 32
    254 F.R.D. 423 (D. Kansas 2008)

In re Dennis Greenman Sec. Litig., ...................................................... 22
    829 F.2d 1539 (11ᵗʰ Cir. 1987)

In re Kirschner Med. Corp. Sec. Litig., .................................................... 17
    139 F.R.D. 74 (D. Md. 1997)

In re Titanium Dioxide Antitrust Litig., ............................................ 22
    959 F. Supp.2d 799 (2013)

Lienhart v. Dryvit Systems, Inc., ....................................................... 22
    255 F.3d 138 (4ᵗʰ Cir. 2001)

Minter v. Wells Fargo Bank, N.A., .................................................... 32
    279 F.R.D. 320 (D. Md. 202)

Ostrof v. State Farm Mut. Auto. Ins. Co., ................................................ 12, 24
    200 F.R.D. 521 (D. Md. 2001)

Peoples v. Wendover Funding, Inc., ..................................................... 12
    179 F.R.D. 492 (D. Md. 1998)

Rivkin v. Maryland, ............................................................................ 7, 8
    Cir. Ct. Baltimore City, 24-C-18-005168

Shook v. Bd. Of Cty. Comm'rs of City of El Paso, ............................................ 24
    543 F.3d 597 (10ᵗʰ Cir. 2008)

Schlesinger v. Reservists Comm. To Stop the War, ............................................ 24
    94 S. Ct. 2925 (1974)

Sprague v. General Motors Corp., ....................................................... 16
    133 F.3d 388 (6ᵗʰ Cir. 1998)

Thorn v. Jefferson-Pilot Life Ins. Co., ................................................ 12, 28, 29, 31
    445 F.3d 311 (4ᵗʰ Cir. 2006)

Walmart Stores, Inc v. Dukes, ........................................................ 8, 11, 12, 29
    564 U.S. 338 (2011)

Ward v. Dixie, ............................................................................... 12
    595 F.3d 164 (2010)

## Statutes, Regulations and Other Authorities

COMAR 17.04.13.(b)(3) ................................................................13
COMAR 17.04.13.05 (A)1-5................................................................. 14
COMAR 17.04.13.05(c)(1). .................................................... 4, 11, 18
COMAR 17.04.13.05(d)(1) ............................................................ 13

Md. Code Ann. State Personnel & Pensions § 1-101 et. seq. ..........................................4
Md. Code Ann. State Personnel & Pensions § 2-502.1 ........................................... 4, 18
Md. Code Ann. State Personnel & Pensions § 2-504 (2010). ................................... 14
Md. Code Ann. State Personnel & Pensions § 2-508 .............................. 4, 5, 18, 23, 31
Md. Code Ann. State Personnel & Pensions § 2-508(b) (2014) ................................... 13
Md. Code Ann. State Personnel & Pensions § 2-508(b)(4)(i) ................................... 6
Md. Code Ann. State Personnel & Pensions § 2-508(b)(4)(ii) ................................... 5
Md. Code Ann. State Personnel & Pensions § 2-509(d)(2014) ...................................13
Md. Code Ann. State Personnel & Pensions § 2-509(d) 2018 ................................... 11
Md. Code Ann. State Personnel & Pensions § 2-509.1 (2005) ............................. 4, 31
Md. Code Ann. State Personnel & Pensions § 2-509.1 (2014) ....................... 5, 23
Md. Code Ann. State Personnel & Pensions § 2-509.1 (2018) ................................... .6
Md. Code Ann. State Personnel & Pensions § 2-509.1(b) ................................... 13

Fed. R. Civ. P. 23 ............................................... 1, 2, 5, 9, 27, 33
Fed. R. Civ. P. 23(a)...........................................2, 9, 10, 17,30, 31, 33
Fed. R. Civ. P. 23(a)(1) ................................................... 10,
Fed. R. Civ. P. 23(a)(2) ................................................... 12
Fed. R. Civ. P. 23(a)(3) ................................................... 16
Fed. R. Civ. P. 23(a)(4) ................................................... 24, 26, 33
Fed. R. Civ. P. 23(b) ................................................... 8, 10, 27, 28
Fed. R. Civ. P. 23(b)(1) ................................................... 1, 23, 28, 27, 33
Fed. R. Civ. P. 23(b)(1)(A) ................................................... 28
Fed. R. Civ. P. 23(b)(2) ................................................... 20, 21, 22, 29, 30, 33
Fed. R. Civ. P. 23(b)(3) ................................................... 20, 22, 28, 30, 31, 33

2011 Budget and Reconciliation Act ................................................... 6, 9, 11
Acts 2011, c. 397, § 1, eff. June 1, 2011

2014 Budget and Reconciliation Act ................................................... 5, 7, 21
Acts 2014, c. 45, § 5; Acts 2014, c. 477, §1, eff. Oct. 1, 2014

2018 Budget and Reconciliation Act ................................................... .6
Acts 2018, c. 10, § 1, eff. June 1, 2018.

Class Certification in the Age of Aggregate Proof, Nagareda ................................................... .30
84 N.Y.U. L. Rev. 1 (2008).

## I.    INTRODUCTION

Plaintiffs by their undersigned counsel  respectfully submit this memorandum of law in support

of their Motion for Class Certification ("Motion")  and request an Order: (i) certifying this action as a

class action (ii) naming Ken Fitch as Class Representative; and iii) appointing Plaintiffs' counsel as

Class Counsel pursuant to Federal Rule of Civil Procedure Rule 23.  In support of Plaintiffs Motion

attached is a Declaration from Ken Fitch and the Declaration of Deborah Hill.

## II.    PRELIMINARY STATEMENT

The Plaintiffs seek certification of a Plaintiff class pursuant to Fed. R. Civ. P. 23 ("Rule 23")

consisting of:

> All retired persons who vested in the State Employee and Retiree Health and Welfare
> Benefits Program prior to July 1, 2011 and their surviving spouses and/or dependents whose
> prescription drug benefits have been or will be impaired by the enforcement of the 2011
> Budget and Reconciliation Act, or any other statute, law, rule, regulation, or plan document
> and, if such persons are now deceased or will be deceased prior to the conclusion of this
> lawsuit, all their living beneficiaries entitled to receive any damages set forth herein or
> retirement prescription drug coverage under the State Prescription Drug Coverage Plan, or
> their estates as applicable.
>
> The class specifically includes:
>
> **A. Medicare Eligible Retirees.**
>   1.    All currently retired persons who vested in the State Employee and Retiree Health
> and Welfare Benefits Program and who are also eligible for benefits under Medicare Part D
> prescription drug coverage
>   2.    All persons currently retired from the State of Maryland with more than 5 years of
> credible service and who are currently eligible for benefits under Medicare Part D
> prescription drug coverage by way of disability or age.
>
> **B. Non-Medicare Eligible Retirees.**
>   All persons currently retired from the State of Maryland who began service before July 1,
> 2011, with at least 5 years of creditable service and who are currently not eligible for benefits
> under Medicare Part D prescription drug coverage by way of disability or age (65 or older).
>
> **C. Employees with 5 years of credible service prior to July 1, 2011.**
>   All persons employed with the State of Maryland who began service before July 1,
> 2011 with at least 5 years of creditable service and who are not currently eligible for
> benefits under Medicare Part D prescription drug coverage by way of age (65 or older) or
> disability.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 1 of 33**

*Fitch, et al. State of MD et al.*
*18-02817 - PJM*

Certification under Rule 23 is appropriate if, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a).   The instant case meets that criteria.

The basis for Plaintiffs' Motion for Class Certification is simple, straightforward, and compelling.  The State of Maryland entered into a contract with its employees to provide health benefits, inclusive of a prescription drug program, upon vesting and during retirement. In 2005, the legislature for the State of Maryland codified this retirement benefit. In 2014, the Maryland General Assembly enacted a law which required Medicare Eligible State Retirees to enroll in Medicare Part D only for their prescription drug coverage and barred access to the prescription drug coverage included in the State Employee and Retiree Health and Welfare Benefit Program ("State Health Program") administered by the Maryland Department of Budget and Management ("DBM"). The State of Maryland has or will breach their contract with the Plaintiffs and have impaired the Plaintiffs' constitutional rights by requiring the Plaintiffs' election of Medicare Part D coverage only and barring their access to the State Health Program based upon current or future Medicare eligibility.

The Defendants' actions will result in thousands of retirees/class members suffering an elimination of one of their vested retirement benefits, in addition to paying more for their health insurance in the form of either increased premiums or increased out of pocket medical expenses.   The State Health Program and the breach by the State are issues common to all members of the putative class, who are estimated between at 90,000. Separate actions by individual members of the class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants. The Defendants have acted or refused to act on grounds that apply generally to

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 2 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole and this class action is superior to the alternatives, for the fair and efficient adjudication of this controversary, and most importantly, prosecution as a class action will avoid repetitious litigation.

Lastly, the Plaintiffs and all those similarly situated will be harmed and suffer significant injury if the Defendants' attempt to eliminate their contractual rights to prescription drug coverage under the State Health Program is upheld. On behalf of themselves and all other similarly situated vested current or future retirees who are negatively impacted by the elimination of Prescription Drug Coverage, the Plaintiffs move for class certification.

## III.    FACTUAL AND PROCEDURAL HISTORY

It is undisputed that all of the named Plaintiffs are retirees who retired from employment with the State of Maryland or a state agency and have contributed at least (5) years of credible service or more with the state of Maryland prior to the enactment of the statutes and regulations at issue and are vested and eligible to receive prescription drug benefits from the State Health Program. The Plaintiffs continued their employment as State of Maryland employees in exchange for deferred compensation from the State, including but not limited to retirement benefits and guaranteed health insurance benefits, which specifically includes prescription drug coverage, ("the Retiree Prescription Benefit") throughout the duration of their retirement. This Retiree Prescription Benefit was in place or maintained by Defendants for the active employees of the State of Maryland on the dates upon which Plaintiffs benefits vested after they maintained employment with the state of Maryland for a specified time. The promise and provision of certain guaranteed health benefits, which include prescription drug coverage, for the duration of their retirement, induced the Plaintiffs and all other similarly

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 3 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

situated persons to continue working as a State of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers.

The legislature for the State of Maryland has codified the retirement benefits afforded to retirees of the State of Maryland. See Maryland Code State Personnel & Pensions Ann. § 1-101 et. seq. Those codified retirement benefits originally included, amongst other things, eligibility for a health insurance benefit that expressly includes a prescription drug benefit plan. See Maryland Code State Personnel & Pensions Ann. §§ 2-502.1 and 2-508; COMAR 17.13.05(c)(1). These provisions created a contract that obligated the State of Maryland to provide health benefits that included a prescription drug benefit plan to State Retirees during their retirement.

In direct response to the Federal Medicare Prescription Drug, Improvement and Modernization Act of 2003[1] the Maryland General Assembly reaffirmed its pre-existing contractual relationship with the Plaintiffs in 2005[2] by codifying the legislature's intent for the health insurance benefits options to continue the inclusion of a prescription drug benefit plan. See Maryland Code State Personnel & Pensions Ann. § 2-509.1 (2005).  The 2005 codification of the legislative intent makes clear that anyone vested at that time or vested prior to any subsequent amendment would be eligible for participation in a health insurance benefit that included a prescription drug benefit plan ("2005 Codification").

---

[1] Public Law No: 108-173 (12/08/2003) HR-1 108th Congress (2003).

[2] 2005 - Maryland Code State Personnel and Pensions Ann. § 2-509.1(2005).

(a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ 2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 4 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

In 2014, the Legislature altered its reaffirmation in § 2-509.1 to discontinue prescription drug benefits for Medicare eligible retirees in July of 2019 (the beginning of fiscal year 2020).[3] ("2014 Amendment")[4] However, the 2014 Amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested prior to the 2014 amendment. Plaintiffs enrolled prior to the 2014 amendment maintained their right to participate in a health benefit plan that included the promised prescription drug benefit plan subsidized by the State of Maryland during the individual's retirement.

Prior to the enactment of the 2014 amendment, Maryland Code § 2-508 required a State of Maryland employee to have worked at least 5 years to be eligible for participation in a health benefit plan that included a prescription drug benefit plan subsidized by the State of Maryland. The terms of the State Health Program between of the State of Maryland and State of Maryland employees, including Plaintiffs, contained the following provisions:

> As to employees with a start date on or before June 30, 2011, "If a retiree receives
>
> a State disability retirement allowance or has 16 or more years of creditable
>
> service, the retiree or the retirees' surviving spouse or dependent child is entitled
>
> to the same State subsidy allowed a State employee. In all other cases, if a retiree
>
> has at least 5 years of creditable service, the retiree or the retiree's surviving spouse

---

[3] 2014 - Maryland Code State Personnel and Pensions Ann. § 2-509.1(2014).

(a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ 2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state

(b) Discontinuance of benefits in 2020. -- The State shall discontinue prescription drug benefits for Medicare-eligible retirees in fiscal year 2020.

[4] Acts 2014, c. 45, § 5; Acts 2014, c. 477, §1, eff. Oct. 1, 2014

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 5 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

or dependent is entitled to 1/16 of the State subsidy allowed a State employee for

each year of the retiree's creditable service up to 16 years."

Md. Code State Personnel & Pensions Ann. § 2-508(b)(4)(i) and (ii).

On March 28, 2018, the Maryland General Assembly further amended § 2-509.1.[5] ("2018

Amendment"). The 2018 Amendment, in pertinent part, altered the Legislature's reaffirmation in §

2-509.1 in electing to discontinue the prescription drug benefit plan for Medicare eligible retirees on

January 1, 2019.[6] However, the 2018 Amendment did not (and could not) alter the constitutionally

protected property right of any person already retired or any person who had already vested at the

---

[5] Acts 2018, c. 10, § 1, eff. June 1, 2018

[6] Md. Code Ann. State Personnel & Pensions § 2-509.1(2018).

**Construction with federal laws**

(a) Except as provided in subsection (b) of this section, the State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available to retirees under §§ 2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug, Improvement, and Modernization Act of 20031 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state.

**Discontinuance of benefits for Medicare-eligible retirees**

(b) Except as provided in subsection (c) of this section, on January 1, 2019, the State shall discontinue prescription drug benefits for:

(1) a Medicare-eligible retiree;

(2) the Medicare-eligible spouse or surviving spouse of a retiree; and

(3) a Medicare-eligible dependent child or surviving dependent child of a retiree.

**Spouse or dependent child coverage**

(c)(1) If a retiree is eligible to participate in the prescription drug benefit plan under Medicare, but the retiree's spouse or dependent child is not eligible to participate in a Medicare prescription drug benefit plan, the retiree may elect to cover the retiree's spouse or dependent child under the State prescription drug benefit plan.

(2) If the surviving spouse or surviving dependent child of a retiree is eligible to enroll in the State prescription drug benefit plan under § 2-509 of this subtitle, but is not eligible to participate in the prescription drug benefit plan under Medicare, the surviving spouse or surviving dependent child may elect to enroll in the State prescription drug benefit plan.

**Notice of coverage changes**

(d)(1) Subject to paragraph (2) of this subsection, not later than July 1, 2018, the Secretary shall provide written certified notice to the individuals listed in subsection (b) of this section of the change in the State prescription drug benefit plan under this section.

(2) The notice shall include information regarding:

(i) coverage options available in the Medicare prescription drug benefit plan; and

(ii) the potential for significant penalties if an individual does not promptly choose a Medicare prescription drug benefit plan immediately on termination of the individual's participation in the State prescription drug benefit plan

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 6 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

time of the 2014 Amendment to participate in a health benefit plan that included a prescription drug benefit plan subsidized by the State of Maryland during the individual's retirement.

In May 2018, Plaintiffs were notified by DBM that they were obligated to register for Medicare Part D only and would no longer be eligible for participation in the State's Prescription Drug Coverage Plan; a breach of their vested health benefit rights as described above. The letter dated May 15, 2018 was the only notice that Plaintiffs received from the Defendants pertaining to the 2011 Budget and Reconciliation Act and the elimination of their benefit. The Plaintiffs were required to register for Medicare Part D during open enrollment between October 15, 2018 and December 7, 2018 ("the Registration"). Enrollment in the State Health Plan was not an option.

On September 10, 2018, the Named Plaintiffs filed in the Circuit Court for Baltimore City (24-18-005077) a Complaint framed in five counts for: (1) Declaratory and Injunctive Relief; (2) Breach of Contract; (3) Unconstitutional Taking; (4) Unconstitutional Impairment of Contracts under Federal Law; (5) Unconstitutional Impairment of Contracts under State Law; and (5) Violations of the Equal Protection and Due Process Clause. The Complaint named the State of Maryland, The Governor of Maryland, and the Secretary of the Department of Budget and Management as Defendants.

On September 11, 2018, the Defendants removed the action to the U.S. District Court for the District of Maryland.

On September 14, 2018, Alan Rivkin, Rose Jackson, Victoria Dantoni, and Penny Goodenough filed a Complaint in the Circuit Court for Baltimore City asking for injunctive relief against the State of Maryland, the Governor of Maryland, and the Secretary of Department of Budget and Management to stay enforcement of the 2011 law eliminating prescription drug coverage for Medicare Eligible State retirees. A hearing was held on September 18, 2019. The Defendants argued in the case of <u>Rivkin, et al v. State of Maryland, et al</u>. (24-C-18-005168) that the instant case and the

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 7 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

Rivkin case involved the same parties. In fact, the Defendants Response in Opposition to the Plaintiffs' Motion for Temporary Restraining Order ("Response") states, "The current named Plaintiffs, represented by the same counsel as Plaintiffs in Fitch now seek emergency equitable relief from this Court *on behalf of the same putative class* that is seeking emergency relief in the federal Court." See Defendants Response, Page 2, ¶ 1 (emphasis added). The Temporary Restraining Order in Rivkin was denied.

This Court scheduled a hearing on the Motion for Preliminary Injunction to be heard on October 5, 2018, which was rescheduled for October 10, 2018, five days before enrollment was to commence. After hearing the arguments of the Parties, this Court entered a Preliminary Injunction in favor of the Plaintiffs, and all similarly situated State retirees. A Notice of Voluntary Dismissal was filed in October of 2018 closing the Rivkin case after the issuance of the Preliminary Injunction.

## IV.    STANDARD OF REVIEW

The Plaintiffs must establish that the class certification requirements have been met by a preponderance of the evidence. Brown v. Nucor Corp., 785 F.3d 895, 931-932 (4th Cir. 2015). In Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541 (2011), the Court held that "Rule 23 does not set forth a mere pleading standard." Id. at 2551. Instead, a plaintiff "must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. Although a court's rigorous analysis will frequently overlap with an inquiry into the merits, "[t]hat cannot be helped." Id. A plaintiff has the burden to show that all the necessary prerequisites for a class action have been met. Gunnells v. Healthplan Serv., Inc., 348 F.3d 417, 458 (4th Cir. 2003). The first of these prerequisites is that the class must exist and be "readily identifiable" or "ascertainable" by the court through

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 8 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

objective criteria. EQT Prod. Co v. Adair, 764 F.3d 347, 359-60 (4th Cir. 2014). The class must then

satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

If the plaintiff satisfies each of these requirements under Rule 23(a), the Court must still find

that the proposed class action fits into one of the categories of class action under Rule 23(b) in order

to certify the class. Fed R. Civ. P. 23(a).

## V.    ARGUMENT

### A.    Plaintiff Meets All Fed. R. Civ. P. 23(a) criteria for Class Certification

The purported Class meets all the requirements for maintaining a class action under Fed. R.

Civ. P. (23)(a).

#### 1. Ascertainability

Ascertainability is a threshold requirement which must be satisfied in order to proceed as a

class action. EQT Prod. Co v. Adair, 764 F.3d 347, 359-60 (4th Cir. 2014). While it is not necessary

to identify every class member at the time of certification for a class to be "ascertainable," a class

cannot be certified if its membership must be determined through "individualized fact-finding or mini-

trials." Id.

Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly

situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiffs seek

to represent in this action is the following:

> All retired persons who vested in the State Employee and Retiree Health and Welfare
> Benefits Program prior to July 1, 2011 and their surviving spouses and/or dependents
> whose prescription drug benefits have been or will be impaired by the 2011 Budget and
> Reconciliation Act, or any other statute, law, rule, regulation, or plan document and, if such
> persons are now deceased or will be deceased prior to the conclusion of this lawsuit, all
> their living beneficiaries entitled to receive any damages set forth herein or retirement
> prescription drug coverage under the State Employee and Retiree Health and Welfare
> Benefits Program, or their estates as applicable. The class specifically includes:

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 9 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

### A. Medicare Eligible Retirees

1.      All currently retired persons who vested in the State Employee and Retiree Health and Welfare Benefits Program and who are also eligible for benefits under Medicare Part D prescription drug coverage.

2.      All persons currently retired from the State of Maryland with a minimum of 5 years of credible service and who are currently eligible for benefits under Medicare Part D prescription drug coverage by way of disability or age.

### B. Non-Medicare Eligible Retirees.

All persons currently retired from the State of Maryland who began service prior to July 1, 2011, with at least 5 years of creditable service and who are currently not eligible for benefits under Medicare Part D prescription drug coverage by way of disability or age (65 or older).

### C. Employees with 5 years of credible service prior to July 1, 2011.

All persons employed with the State of Maryland who began service before July 1, 2011 with at least 5 years of creditable service and who are not currently eligible for benefits under Medicare Part D prescription drug coverage by way of age (65 or older) or disability.

This class is ascertainable and there is a well-defined community of interest among its members. In addition, no conflict exists since each seek the reinstatement of a hard-earned benefit contracted as deferred compensation provided that the retiree met the service qualifications under the statute. The Plaintiffs contend that this class is ascertainable.

### 2. Numerosity

Rule 23(a)(1) provides that one of the requirements to bring a class action is that the class be "so numerous that joinder of all members is impracticable." The Fourth Circuit has held that "[n]o specified number is needed to maintain a class action." Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984) (quoting Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967)). There is no "mechanical test" for determining whether the requirement of numerosity has been satisfied. Adams v. Henderson, 197 F.R.D. 162, 170 (D. Md. 2000). Rather,

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 10 of 33**                                                                    *Fitch, et al. State of MD et al.*
                                                                                        **18-02817 - PJM**

there are several factors to be considered in determining whether joinder is impracticable, including "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Id.

Here, the Named Plaintiffs contend that the proposed class numbers are between 35,000 and 90,000, a size that they contend makes joinder impracticable. In support of the Plaintiffs contention, attached to this motion are 1000 forms filled out by members of the proposed class who are willing to become Plaintiffs in the instant case. Each person is readily available to participate and has provided their name, address, and phone number. Each person who completed the attached forms met the following criteria(1) is a current or retired employee for the State of Maryland; (2) began service with the State of Maryland prior to July 1, 2011; (3) vested in the State Health Program; and (4) will be negatively impacted by the elimination of the prescription drug coverage. Furthermore, DBM has a complete listing of all employees current and retired, including the Medicare Eligible retirees, since DBM has identified and contacted these retirees by letter dated May 15, 2018.

Indeed, the members of the proposed class are among the most vulnerable of the community, living on fixed income making the elimination of this contracted benefit unconscionable.   Many of the class may not even be aware of the elimination of their Retiree Prescription Benefit by the 2011 Budget and Reconciliation Act, this lawsuit or the preliminary injunction in place, certain at the time of retirement that this benefit would be for the duration of their retirement. Certification of the class is proper under the numerosity factor.

### 3. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Wal-Mart Stores v. Dukes, 564 U.S. 338, 34950(2011). Therefore, Rule 23(a)(2) requires a question of law or fact common to the class. "A common question is one that can be resolved for

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 11 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

each class member in a single hearing," and does not "turn[] on a consideration of the individual circumstances of each class member." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006). Commonality requires that the questions of law or fact common to the class are capable of class-wide resolution, such that the determination of the truth or falsity of the common issue "will resolve an issue that is central to the validity of each one of the claims in one stroke." Fed. R. Civ. P. 23(a)(2); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Furthermore, "a representative plaintiff cannot establish commonality under [Rule 23(a)(2)] if the court must investigate each plaintiff's individual claim." Ostrof v. State Farm Mut. Auto. Ins. Co., 200 F.R.D. 521, 528 (D.Md.2001) (quoting Peoples v. Wendover Funding Inc., 179 F.R.D. 492, 498 (D.Md.1998)).

The commonality requirement is satisfied here because the legal and factual questions arising from Defendants' actions do not vary from one Class member to the next. The Defendants' elimination of the Retiree Prescription Benefit injured all class members. As shown below, several factual questions concerning the State's contractual obligation are common to all members of the Class, as are the resulting legal questions about whether the Defendants' actions were unlawful. The resolution of these common legal and factual issues will determine whether the members the class are entitled to relief.

The following issues of law and fact, among others, exist as to members of the class:

    **a.** That the members the class are former or current employees of the State of Maryland who began service before July 1, 2011;

    **b.** That the members of the class are all vested, either in whole or in part, in the State Employee and Retiree Health and Welfare Benefits Program;

    **c.** That the members the class have a vested right to participate in the Maryland Prescription Program for prescription drug coverage as part of the State Employee and Retiree Health and Welfare Benefits Program;

    **d.** That the members of the class have a vested right to a subsidy paid by the DBM toward their participation in a prescription drug benefit with the same co-payments, coinsurance,

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 12 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

and deductible that apply to the prescription drug benefits for an active employee of the State of Maryland;

e.   That the members of the class had a contract with the State of Maryland to provide them the foregoing prescription drug coverage during their retirement;

f.   That the Defendants breached the contract with the members of the class by unilaterally terminating the above-mentioned vested prescription drug coverage benefits;

g.   The above-stated contract has been impaired by the enactment of Maryland Code State Personnel & Pensions Article Ann. §§ 2-509.1(b)and 2-508(d)(2014)[7] ("the Statute"), and COMAR 17.04.13.05(d)(1)[8] ; 17.04.13.10(b)(3)[9] ("the Regulations")

---

[7]**MD. Code Ann. State Personnel & Pensions § 2-508(d)(2014).  Health insurance benefit options for retirees separate from active State employees**

(d)(1) Notwithstanding subsections (b) and (c) of this section and §§ 2-509 and 2-509.1 of this subtitle, the State may establish separate health insurance benefit options for retirees that differ from those for active State employees.

(2) Subject to § 2-509.1 of this subtitle, on or after July 1, 2011, the health insurance benefit option for retirees shall include a prescription drug benefit that:

(i) has the same co-payments, coinsurance, and deductible that apply to the prescription drug benefit for active State employees;

(ii) requires:

1. retirees who qualify for the maximum State subsidy to pay 25% of the premium for the prescription drug benefit; and

2. retirees who qualify for a partial State subsidy to pay 25% of the premium for the prescription drug benefit plus the proportional additional amount required under subsections (b)(4)(ii) and (c)(4)(ii) of this section; and

(iii) requires retirees to pay out-of-pocket limits equal to:

1. $1,500 for the retiree only; and

2. $2,000 for the retiree and the retiree's family.

[8] **Sec. 17.04.13.05(D). State Subsidy of Retired Employees Who Are Eligible for Health Insurance Benefits in Accordance with Regulation .03 of This Chapter**

D. Beginning on July 1, 2020, Medicare-eligible retirees will cease to be eligible for the prescription drug benefit option provided under the State Employee and Retiree Health and Welfare Benefits Program

[9] **Sec. 17.04.13.05(b)(3). State Subsidy of Retired Employees Who Are Eligible for Health Insurance Benefits in Accordance with Regulation .03 of This Chapter**

B. A retired employee who began State service on or after July 1, 2011 and the designated beneficiaries of a retired employee who began State service on or after July 1, 2011 are eligible to receive the subsidy provided by the State for the cost of the health insurance benefits program on the following basis:

(1) If an employee retired from State service and had at least 10 years of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive 10/25 of the subsidy provided to a State employee;

(2) If an employee retired from State service and had more than 10 but less than 25 years of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive 1/25 of the subsidy for each year of creditable service that is more than 10 but less than 25 years;

(3) If an employee retired from State service and had 25 or more years of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive the same subsidy that is provided to a State employee

---

**h.** The passage of those same statutes violated the class members constitutional rights of due process and equal protection under the law;

**i.** The passage of those same laws constitutes a governmental taking of personal property of the members of the class without just compensation;

**j.** That the members of the class have suffered damages due to Governor Hogan's failure to fully fund the State Share of the costs for prescription drug coverage in the State Budget as required by Maryland Code State Personnel & Pensions Ann. § 2-504[10], despite a sizable budget surplus.

**k.** The members of the class have been damaged by Secretary Brinkley's failure to provide a prescription drug benefit to retirees eligible for Medicare Part D by age (65 or older) or disability.

**l.** That the members of the class have been damaged by Secretary Brinkley's failure to comply with the relevant provisions of the Department of Budget and Management Regulations contained or at COMAR 17.04.13.05(A)1-5[11].

**m.** The members of the class are all entitled to injunctive, declaratory, and other relief, (including damages) for the above stated wrongful acts of the Defendants.

The Court must determine:

---

[10] **Md. Code Ann. § 2-504 (2010).  Funding for Program**

Each year the Governor shall include money in the State budget to pay the State share of the costs of the Program.
[11]**Sec. 17.04.13.05(A)(1-5). State Subsidy of Retired Employees Who Are Eligible for Health Insurance Benefits in Accordance with Regulation .03 of This Chapter**

A. A retired employee who began State service on or before June 30, 2011, and the designated beneficiaries of a retired employee who began State service on or before June 30, 2011, and a retired employee of the Judges' Retirement System who began State service on or after July 1, 2011, and the designated beneficiaries of a retired employee of the Judges'  Retirement System who began State service on or after July 1, 2011, are eligible to receive the subsidy provided by the State for the cost of the health insurance benefits program on the following basis:
(1) If an employee retired directly from State service before July 1, 1984, the retired employee and the designated beneficiaries of the retired employee shall receive the same subsidy that is provided to a State employee;
(2) If an employee retired from State service on or after July 1, 1984 and had at least 5 years of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive 5/16 of the subsidy provided to a State employee;
(3) If an employee retired from State service on or after July 1, 1984 and had more than 5 but less than 16 years of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive 1/16 of the subsidy for each year of creditable service that is more than 5 but less than 16 years;
(4) If an employee retired from State service on or after July 1, 1984 and had 16 years or more of creditable service, the retired employee and the designated beneficiaries of the retired employee shall receive the same subsidy that is provided to a State employee;

(5) If a retired employee is in receipt of a State disability retirement allowance, the retired employee and the designated beneficiaries of the retired employee shall receive the same subsidy that is provided to a State employee

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 14 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

1. Whether the class members hired by the State of Maryland prior to July 1, 2011 were vested in the State Health Program upon completion of at least 5 years of credible service or upon retirement for those retirees (and qualifying spouses and/or dependent) who retired prior to January 2019.

2. Whether the class members hired by the State of Maryland prior to July 1, 2011, upon completion of at least 5 years of creditable service for those who retired prior to January 2019 (and their qualifying spouses and/or dependents) had a contract with the State of Maryland for continued access to the State Health Program, which includes prescription drug coverage, during their retirement.

3. Whether the Defendants breached and/or impaired this contract with the class members by terminating the vested Retiree Prescription benefit through specific legislative actions in 2014 and 2018.

4. Whether the Defendants' impairment of this contract was a valid use of the legislature's policing power.  See Andrews v. Anne Arundel County, 931 F. Supp. 1255 (1996).

5. Whether the Retiree Prescription Benefit constitutes a property right.

6. Whether the elimination of the Retiree Prescription Benefit is an unconstitutional violation of the Takings clause of the Fifth Amendment of the United States Constitution made applicable to the actions complained of by the Plaintiffs by the Fourteenth Amendment

7. Whether the contract between the Plaintiffs and the Defendants were impaired when the Defendants deprived the Plaintiffs of said earned benefits without due process of law and/or equal protection under the law, a violation of the class members' constitutionally protected rights.

8. Whether the Defendants are required to provide the already vested Retiree Prescription Benefit which includes prescription drug coverage to Plaintiffs and other similarly situated persons per the terms of the contract.

These questions of law and fact, common to the members of the class, predominate over any questions affecting only an individual member or a group of members of the class and all of Plaintiffs' claims arise from the same course of conduct by the Defendants.   Moreover, Plaintiffs allege that the

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 15 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

breach of contract arose from the same actions taken against Plaintiffs and all others similarly situated as a group, including specifically legislation, which deprived Plaintiffs of the vested right in prescription drug coverage. The Defendants used age and disability to evaluate who should maintain prescription drug coverage, thereby choosing the most vulnerable of society. This portion of society, retirees of the State of Maryland, will now be subjected to market forces and fluctuations, a risk they had previously contracted to avoid. The State Prescription Program offered by the State of Maryland is not available on the open market nor is the option proposed by the Defendants substantially similar to the options that class members contracted to receive during their employment with the State of Maryland. Each class member seeks reinstatement of their prescription drug coverage therefore certification of the proposed class is proper under the commonality factor.

### 4. Typicality

The premise of the typicality requirement is simply stated: "as goes the claim of the named plaintiff, so go the claims of the class." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998)(quoting Sprague v. General Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998), cert. denied, 118 S. Ct. 2312 (1998). Rule 23(a)(3) requires that to meet the typicality requirement, a plaintiff must show that the class representative's claims and defenses are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Specifically, the "interest in prosecuting" the class representative's own case must "simultaneously tend to advance the interests of the absent class members." Deiter, 436 F.3d at 466. The plaintiff's claim "cannot be so different from the claims of absent class members that their claims will not be advanced by" proof of the plaintiff's own individual claim. Id. at 466-67. These claims do not have to be factually or legal identical, but the class claims should be fairly encompassed by those of the named Plaintiffs. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 344 (4th Cir. 1998).

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 16 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

Courts have recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 n. 13 (1982). The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 338 (4th Cir. 1998). Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." Id. at 340.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 17 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

The named Plaintiffs claims, like the class' claims are based on the same legal theory: that Md

Code Ann. State Personnel & Pensions §§ 2-502.1[12] and 2-508 (2010)[13], COMAR 17.13.05(c)(1)[14]

---

[12] **Md Code Ann. State Personnel & Pensions § 2-502.1. Maryland Rx Program defined**

(a) In this section, "Maryland Rx Program" means a purchasing pool for pharmacy benefits that meets the requirements of this section.

Program to save on costs of prescription drugs

(b) The Department shall establish a Maryland Rx Program to achieve savings on the cost of prescription drugs for:

(1) the State Employee and Retiree Health and Welfare Benefits Program; and

(2) any local government or other entity identified under this subtitle that satisfies the conditions for participation established by the Department.

Cost-saving measures of Program

(c) The Maryland Rx Program shall seek savings through:

(1) a preferred list of covered prescription drugs;

(2) rebates from drug manufacturers;

(3) negotiated discounts; and

(4) other cost-saving measures.

Responsibility for cost of drugs

(d)(1) Each entity that participates in the Maryland Rx Program shall be responsible for the cost of drugs purchased by or on behalf of the entity.

(2) The cost of drugs purchased by or on behalf of the State Employee and Retiree Health and Welfare Benefits Program shall be paid in accordance with the State budget and the provisions of this subtitle.

Start-up funds

(e) The State may:

(1) provide start-up funds for the Maryland Rx Program; and

(2) recoup any start-up funds from savings achieved for participating entities through the Maryland Rx Program.

Administrative fees

(f) The Department may:

(1) charge an administrative fee to an entity sufficient to offset the administrative costs resulting from the entity's participation in the Maryland Rx Program; and

(2) contract with a pharmacy benefit manager or other entity to administer the Maryland Rx Program.

Contracts with pharmacy benefit manager or other entity

(g) If the Department contracts with a pharmacy benefit manager or other entity to administer the Maryland Rx Program, the Department shall consider contracting with a nonprofit entity.

Regulations

(h) The Department shall adopt regulations to implement this section

[13] **Md. Code Ann. State Personnel & Pensions § 2-508 (2010). Enrollment in Program - Retirees**.

(a) Definitions.-

(1) In this section the following words have the meanings indicated.

(2) "Creditable service" means:

(i)  service credited toward a retirement allowance under Division II of this article;

(ii)  service while a member of the Judges' Retirement System under Title 27 of this article;

(iii)  service while an employee was employed by the Domestic Relations Division of the Anne Arundel County Circuit Court, prior to transfer on or before July 1, 2002 into the State Personnel Management System, in accordance with § 2-510 of the Courts Article; or

(iv)  service while a member of the Maryland Transit Administration Retirement Plan under § 7-206 of the Transportation Article.

(3) (i) "Retiree" means:

1. a former State employee who receives a retirement allowance under Division II of this article;

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 18 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

2. a former employee of the Medical System Corporation, as defined in § 13-301 or § 13-401 of the Education Article, who receives a retirement allowance from the Employees' Retirement System of the State of Maryland or the Employees' Pension System of the State of Maryland under Title 22 or Title 23 of this article; or

3. a former employee of the Maryland Transit Administration who receives a Maryland Transit Administration retirement allowance under § 7-206 of the Transportation Article.

(ii) "Retiree" does not include:

1. a member of the faculty or staff of a community college;

2. a teacher or a staff member employed by a county board of education; or

3. an individual who retired under an optional program under Title 30 of this article.

(4) "State service" means service with the State by:

(i) an employee while a member of the Employees' Retirement System or the Employees' Pension System under Title 22 or Title 23 of this article;

(ii) a member of the Judges' Retirement System under Title 27 of this article;

(iii) a teacher while a member of the Teachers' Retirement System or Teachers' Pension System under Title 22 or Title 23 of this article;

(iv) a correctional officer, while a member of the Correctional Officers' Retirement System under Title 25 of this article;

(v) an employee of the Medical System Corporation, as defined in § 13-301 or § 13-401 of the Education Article, while a member of the Employees' Retirement System of the State of Maryland or the Employees' Pension System of the State of Maryland under Title 22 or Title 23 of this article;

(vi) a State Police officer while a member of the State Police Retirement System under Title 24 of this article;

(vii) a law enforcement officer while a member of the Law Enforcement Officers' Pension System under Title 26 of this article; or

(viii) an employee while a member of the Maryland Transit Administration Plan under § 7-206 of the Transportation Article.

(b)  Participation in health insurance benefit options; applicability. -

(1) A retiree may enroll and participate in the health insurance benefit options established under the Program if the retiree:

(i) ended State service with at least 10 years of creditable service and within 5 years before the age at which a vested retirement allowance normally would begin;

(ii) ended State service with at least 16 years of creditable service;

(iii) ended State service on or before June 30, 1984;

(iv) retired directly from State service with a State retirement allowance on or after July 1, 1984, and had at least 5 years of creditable service; or

(v) retired directly from State service with a State disability retirement allowance on or after July 1, 1984.

(2) (i) The surviving spouse or dependent child of a deceased retiree who was eligible to enroll may enroll and participate in the health insurance benefit options established under the Program as long as the spouse or child is receiving a periodic allowance under Division II of this article or the Maryland Transit Administration Retirement Plan under § 7-206 of the Transportation Article.

(ii) Subparagraph (i) of this paragraph does not apply to a deceased retiree's spouse or dependent child who receives an Option 1, Option 4, or Option 7 benefit under Division II of this article or a lump-sum payment of benefits under the Maryland Transit Administration Retirement Plan under § 7-206 of the Transportation Article.

(c)  State subsidy entitlement.-

(1) If a retiree receives a State disability retirement allowance or has 16 or more years of creditable service, the retiree or the retiree's surviving spouse or dependent child is entitled to the same State subsidy allowed a State employee.

(2) In all other cases, if a retiree has at least 5 years of creditable service, the retiree or the retiree's surviving spouse or dependent child is entitled to 1/16 of the State subsidy allowed a State employee for each year of the retiree's creditable service up to 16 years.

(3) Notwithstanding paragraph (2) of this subsection and subsection (a)(4)(i) of this section, if a retiree is an additional employee or agent of the State Racing Commission, for the purposes of determining a retiree's State subsidy, creditable service shall be determined with respect to service as an additional employee or agent beginning from the initial date of employment or January 1, 1986, whichever is later.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 19 of 33**

*Fitch, et al. State of MD et al.*
*18-02817 - PJM*

created a contract between the State and its employees that obligated the State of Maryland to provide health benefits that included a prescription drug coverage plan and that its employee's rights as retirees to participate in the program is a contractual obligation earned after the appropriate years of service. Namely, the Plaintiffs are entitled to a portion of the subsidy afforded to active employees upon the completion of five or more years of service.

Here the Proposed Class Representative and the class' claims arise from the Defendants failure to acknowledge Plaintiffs' vested rights to participate in the State sponsored Program that includes a prescription drug plan and the refusal by Defendants to provide a health benefit plan with a prescription drug benefit as outlined by the statute. As a result of this blatant disregard of Plaintiffs' contractual right to prescription drug coverages, Defendants have or will breach their contracts with the Plaintiffs and have impaired the Plaintiffs' constitutional rights by requiring Plaintiffs election of Medicare Part D coverage only which completely bars Plaintiffs access to the Maryland prescription program based upon Plaintiffs' current or future Medicare eligibility.

Plan benefits are an integral part of the employment relationship between the State and its public workers and are viewed as guaranteed, deferred compensation by its employees. The named Plaintiffs along with their spouses and/or dependents rely upon the Retiree Prescription Benefit as security against outrageous costs of prescription medication in retirement which can result in personal financial catastrophe. Prior to receipt of the May 15, 2018 letter, State employees made financial decisions based on the availability and quality of the State of Maryland retirement benefits, specifically

[14] **Sec. 17.04.13.05(c)(1). State Subsidy of Retired Employees Who Are Eligible for Health Insurance Benefits in Accordance with Regulation .03 of This Chapter.**
C. The health insurance benefit for eligible retirees and their designated beneficiaries includes a prescription drug benefit that:
(1) Has the same copayments, coinsurance, and deductible that apply to the prescription drug benefit for active State employee

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 20 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

health benefits and the Retiree Prescription Program in particular. During the financial downturn of the State's economy, state employees gave up step and pay increases along with reduction in pay through furloughs to keep these benefits that would only be realized in retirement. The elimination of this benefit is devastating to each State retiree's financial health if confronted with an illness or trying to manage a disease. Indeed, class members who are not currently using this benefit due to optimum health vested in this benefit for the possibility that it would be necessary as they became older and more vulnerable to the ravages of time. If the named Plaintiffs succeed in their claim, then that ruling will likewise benefit every member of the class.

The Proposed Class Representative, Kenneth Fitch, began employment with the State of Maryland prior to July 1, 2011 and retired after 23 years of service in 2012 with a disability pension making him Medicare eligible. He has, at minimum, five years of credible service with the State of Maryland prior to the enactment of the 2014 amendment. The Proposed Class Representative is eligible to participate in the State's prescription drug coverage plan upon retirement and, more importantly, during the duration of his retirement. He is also a diabetic and must use insulin to stay alive. His costs for that drug will skyrocket to over $11,000 dollars, an amount he could not have foreseen when he contracted with the State to ensure prescription drug coverage during his retirement. He received notice of the elimination of the Retiree Prescription Benefit in June of 2018, seven years after the passage of the 2011 Budget and Reconciliation Act. He had three months to find a Medicare Part D plan that would cover his current medication. If he became incapacitated and additional drugs were prescribed, these medications would not be covered under Medicare Part D until the following year as mandated by the Medicare Part D program. However he would be required to 1) pay out of pocket costs for the additional medication for that year; (2) if the drug necessary for his illness was not on the Medicare Part D formulary then he would have pay the full price for the remainder of the

**Plaintiffs Memorandum in Support of Motion to Certify**
Page 21 of 33

*Fitch, et al. State of MD et al.*
18-02817 - PJM

year; (3) that since he is covered by the State he would not be eligible for any coupons or discounts to reduce the cost of the drug; and (4) the following year he would have to find a plan that included both drugs and hope not to suffer from another illness where his drugs were not on the chosen formulary. The Proposed Class Representative left a job that paid substantially more, accepted employment with the State, worked 23 years, and vested in the Retiree Prescription Benefit so that he would not have to be confronted by this type of circumstance or have additional outlay of costs during his retirement. The actions of the Defendants eliminated this benefit.

In fact, the named Plaintiffs represent a cross-section of persons typically harmed by the Defendant's actions. Plaintiff Reinard began her employment with the State of Maryland in 1980 and retired after 33 years of service. If forced onto Medicare Part D her cost will increase to $11,741.05 a year (Complaint at ¶ 3 and ¶ 4.) The Retiree Prescription Benefit is a benefit that she worked for and the exorbitant increase of cost is not something that she financially prepared for when planning retirement.    Plaintiff Reinard could have accepted other positions outside of public employment where the pay was substantially more but stayed with the low wages of state employment because of the benefits in retirement. This was taken away as a result of the Defendants' breach.

Plaintiff Heim began her employment with the State of Maryland in 1997 and retired after 21 years of service.  In April of 2018, Heim paid $30,000 to vest in the health and prescription drug coverage benefits in case she acquired an illness that would require use of the Retiree Prescription Benefit.  Heim retired in June 2018 and was then informed that her prescription drug coverage had been eliminated seven years earlier.  (Complaint at ¶ 5). The Defendants were accepting payment for a benefit that they had eliminated. No effort has been made by the State to reimburse Plaintiff Heim. Her monies and her benefit were taken away as a result of the Defendants' breach.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 22 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

Plaintiff Frye began her employment with the State of Maryland in 1976 and retired after 32 years of service in 2009. If forced off the State Health Plan her prescription drug coverage will increase to $24,204 a year. (Complaint at ¶ 6). Plaintiff Frye retired prior to the 2011 Budget and Reconciliation Act and yet her benefit was eliminated as a result of the Defendants' breach.

The named Plaintiffs are representative of the class and have attached a small sampling of the additional costs that will be incurred from members of this class if forced onto Medicare Part D only. Prescription drug coverage on Medicare Part D only for these members range from an additional $500.00 a month to $5,000.00 a month. This type of additional cost was not planned for when calculating reasonable expenses and income during retirement and is unconscionable. The Defendants guaranteed that the Plaintiffs and all others similarly situated that this type of financial devastation would not befall them during retirement if they vested in the State Health Program and/or maintained employment with the State. In fact, employees in the role of supervisors, directors or senior management used the promise of these benefits from the State Health Program to make loss of income during employment palatable.

The named Plaintiffs maintain that the legislative changes in §§ 2-509.1 and 2-508 are ineffective in altering their vested right to participate in the State Health program that includes a prescription drug benefit plan. The promise and provision of certain guaranteed health benefits, which include prescription drug coverage, for the duration of their retirement induced the named Plaintiffs, and all other similarly situated to continue working as a state of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers. Due to their age or health this is not a time for the Plaintiffs to embark on a new career. They are in the twilight of their lives faced with the necessity of getting a job because of the Defendants' breach.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 23 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

The named Plaintiffs underwent furloughs, denial of raises and step increases imposed by the State of Maryland with the knowledge and promise of the Retiree Prescription Benefit during retirement. The named Plaintiffs have claims that are typical of the class and asserts the same facts as every other class member i.e., that they worked for this benefit, they vested in this benefit, the State promised them this benefit and that their claims arise from the Defendants' elimination of the State prescription drug coverage and the Defendants' bar of access to the State Health Program. Plaintiffs acknowledge that the claims could vary by different degrees dependent on the class member's health and circumstances, but each will lose a vested benefit and has been harmed by the Defendants breach.

Neither the facts nor legal theories upon which this action is based is unique to named Plaintiffs because all Class members' claims arise from the specific actions of the Defendants as outlined above. Since the members of the class would rely on this same evidence, typicality is satisfied.

### 5. Adequacy of Representation

Finally, Rule 23(a)(4) requires that the persons representing the proposed class must be able to "fairly and adequately protect the interests" of all members of the class. The adequacy requirement is met with a two-prong test, "1) the interests of the plaintiff and other members of the class must coincide; and 2) it must appear that plaintiff and his attorney will vigorously prosecute the action." Kirschner, 139 F.R.D. at 79. In order to satisfy the requirement of adequacy of representation, "a class representative must be part of the class and `possess the same interest and suffer the same injury' as the class members." East Tex. Motor Freight System, Inc. v. Rodriguez, 97 S. Ct. 1891, 1896 (1997) (quoting Schlesinger v. Reservists Comm. to Stop the War, 94 S. Ct. 2925, 2930 (1974). Representation will be considered "adequate" if the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. Ostrof, 200 F.R.D. at 530.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 24 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

The Proposed Class Representative's interests are entirely aligned with those of the Class and is not aware of any pending individual actions raising the same issues against the same Defendants. As discussed above, all members of the class allege claims arising out of a breach of contractual obligation and are based on the same legal theories advanced by the named Plaintiffs.

Since the inception of this case, the Proposed Class Representative has taken his role and obligation to the putative Class seriously and has acted to protect the interest of the Class. At each stage, the Proposed Class Representative has actively supervised and monitored the progress of this issue and the resulting litigation.

The Proposed Class Representative interviewed and acquired the named Plaintiffs in this case. The named Plaintiffs are adequate representatives because they entirely share the class' interests in establishing the existence of a contract between the State and its retirees pursuant to relevant statutes. Their injuries arise from the Defendants' actions, that all class members were subjected to, and their legal challenges to Defendants actions are shared among the members of their class.

The Proposed Class Representative made arduous attempts to get the Legislature to hold a Special Session in the Fall of 2018 and even had a conference with the Governor's Chief of Staff regarding this issue. He has created a group of concerned retirees who have rallied the State House and coordinated meetings around the state to highlight, inform and educate State Retirees on this issue. The Proposed Class Representative, with named Plaintiffs, filed the initial complaint and Motion for Preliminary Injunction in this action and has successfully obtained a Preliminary Injunction from this Court. He has testified in front of the Maryland House of Delegates and the Maryland Senate on this issue. The Proposed Class Representative has availed himself of the legislative and executive avenues to correct this injustice and now relies on the judicial branch to confirm that a contract exists between the State of Maryland and its employees regarding the Retiree Prescription Benefit.

**Plaintiffs Memorandum in Support of Motion to Certify**
Page 25 of 33

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

The Proposed Class Representative has also certified that he is willing and able, through his agents to provide deposition and testimony, oversee further motion practice and participate in any settlement discussions. The Proposed Class Representative's actions thus far, and the common interest he shares with the Class in seeing this litigation successfully prosecuted, fully satisfy Rule 23(a)(4) adequacy standard. In fact, all the Named Plaintiffs have remained engaged and committed to this case since it was filed.

In addition, the named Plaintiffs have proposed the law firm of Deborah A. Holloway Hill as class counsel in this matter. Rule 23(a)(4) requires that the named Plaintiffs and their lawyers fairly and adequately protect the interests of the class. The adequacy requirement involves two inquiries: (1) whether the named Plaintiffs have any conflicts of interest with the rest of the class; and (2) whether named Plaintiffs' counsel is qualified, experienced, and generally able to handle the certified case. George v. Duke Energy Ret. Cash Balance Plan, 259 F.R.D. 225, 232 (D.S.C. 2009). "The adequacy of plaintiffs' counsel. is presumed in the absence of specific proof to the contrary." George, 259 F.R.D. at 232.

Neither the named Plaintiffs, or their counsel have interests which are contrary to or conflict with those of the Class and will fairly and adequately protect the interests of the class. They are proceeding with this litigation in hopes that the judicial branch will affirm their stance that a contractual obligation exists. All those similarly situated seek the same remedy.

 Counsel's efforts with regard to this litigation have so far included extensive investigation over a period of nine months, including numerous interviews with retirees, current state employees, witnesses, legislators, attorneys practicing in Maryland, and community members. Counsel has coordinated outreach to the infirmed of this class and testified in front of the Maryland Senate and House of Delegates. Counsel has done numerous hours of research on the State Health Plan and the

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 26 of 33**

*Fitch, et al. State of MD et al.*
*18-02817 - PJM*

laws surrounding its enactment in order to compile a detailed understanding of federal law and practices as they relate to public sector employment. As a result, counsel has devoted enormous time and resources to becoming intimately familiar with the State Health Program and all the relevant laws and procedures relating to its enactment, governance and elimination.

. The named Plaintiffs assert that they have satisfied this factor.

### B. Plaintiffs meet at least one of the Fed. R. Civ. P. (23)(b) requirements for Class Certification.

In addition to meeting the prerequisites of Rule 23(a) a party seeking class certification must also satisfy just one of the requirements listed Fed R. Civ. P. 23(b). That section provides as follows:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 27 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

This Court has held that "the general practice is to certify a Rule 23(b)(1)(A) action only in cases seeking injunctive or declaratory relief. See Ostrof, 200 F.R.D. at 524 n.3 (citing In Re Dennis Greenman Sec. Litig., 829 F.2d 1539, 1544 (11th Cir. 1987)). Similarly, Rule 23(b)(2) "does not cover cases where the primary claim is for damages but is only applicable where the relief sought is . . . predominantly injunctive or declaratory." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 329 (4th Cir. 2006) (internal quotations and citation omitted). Plaintiffs must therefore satisfy the Rule 23(b)(3) requirements that the "common questions of law or fact predominate over questions affecting individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### 1.   This case qualifies for class certification under Fed. R. Civ. P. 23(b)(1).

Under Rule 23(b)(1), a class action may be maintained if the plaintiff shows that absent a class action, there is a risk of "inconsistent or varying adjudications" across individual class members that would result in "incompatible standards of conduct" for the defendant, or a risk of individual adjudications resulting in dispositive rulings that "substantially impair or impede" the ability of other plaintiffs to protect their interests. Fed. R. Civ. P. 23(b)(1).

Attempting to litigate between 35,000 and 90,000.00 claims would be an enormous burden on the State's judicial system. Even worse, that many separate cases could result in up to 90,000

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 28 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

potentially inconsistent verdicts on the same issue and put the State Health Program in a position to have to offer numerous health plans to differing groups or individual retirees based on the outcome of individual cases[15]. Among the current and retired State employees who are negatively impacted are retirees who, through adjudication, have settled with the State over injuries, i.e. workman's compensation, injury as a result of job performance, etc. who signed settlement agreements that expressly guaranteed access to healthcare inclusive of the Retiree Prescription Benefit. There are also retirees who paid to vest into these benefits over the last seven years and never received notice that they were vesting in a benefit that was eliminated. And of course, the retirees who currently need the Retiree Prescription benefit to live. Each of these, just to name a few, will want the opportunity to present their case, seeking damages, if this class is not certified. The strain on the judicial system would be enormous. In addition, prosecution as a class action, will avoid repetitious litigation with inconsistent adjudications. The Plaintiffs contend that they have satisfied this factor and certification of the proposed class is proper under Rule 23(b)(1).

### 2.    The Case Qualifies for Class Certification under Fed R. Civ. P. 23(b)(2)

Rule 23(b)(2) requires that the defendant have acted on grounds that "apply generally to the class, so that final injunctive relief...is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2) "cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." Shook v. Bd. of Cty. Comm'rs of Cty. of El Paso, 543 F.3d 597, 604 (10th Cir. 2008); see also Thorn, 445 F.3d at 330. "The Key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them. Walmart, 131 S. Ct. at

---

[15] The Plaintiff, Deborah Heim, paid $30,000 in April of 2018 to DBM to ensure receipt of health benefits and prescription drug coverage when she retired. After retiring in June of 2018, she was informed by DBM that her prescription drug coverage was terminated.

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 29 of 33**

*Fitch, et al. State of MD et al.*
*18-02817 - PJM*

2557 quoting <u>Nagareda</u>, 84 N.Y.U.L. Rev. at 132. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. <u>Id.</u>

As stated previously, the elimination of the prescription drug coverage would have varying effects on the class members due to individualized circumstances. Age brings medical challenges that cannot be foreseen as required by Medicare Part D. Some class members will not have issues until years later, some class members are under heavy medication at this time and will see their costs increase as much as 5000 percent and some will be unable to cover the combined prescription drug costs of themselves, their spouses, and/or dependents in one household. Medicare Part D prescription drug plan includes fewer medications in its formulary than the State Health Program under which the vested retirees are currently eligible. In addition, the out of pocket costs for prescription drugs under Medicare Part D's prescription drug plan are significantly higher than the State Health Program which the vested retirees are currently eligible. All these issues can be remedied by the Court declaring that a breach of contract occurred when the Defendants eliminated the Retiree Prescription Benefit because the injury suffered does not vary among class members. The loss of the prescription drug benefit was uniform with respect to each of the class members. If and when Plaintiffs succeed on the merits in this case, class members as a whole will receive appropriate equitable relief and restoration of their benefits. The Plaintiffs contend that they have satisfied this factor and certification of the proposed class is proper under Rule 23(b)(2).

### 3. The Case Qualifies for Class Certification under Fed. R. Civ. P. 23(b)(3)

Rule 23(b)(3) requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Fourth Circuit has held that the predominance requirement of Rule 23(b)(3) is "more stringent" than the commonality

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 30 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

requirement of Rule 23(a). See Thorn, 445 F.3d at 319; Lienhart v. Dryvit Systems, Inc., 255 F.3d 138, 147 n.4 (4th Cir. 2001).

### a. Questions of law and Fact Common to All Members of the Class Predominate Over Any Questions Affecting Individual Members.

There are central factual and legal issues common to all putative class members which pertain to the class. Each issue is directly related to the contract between the State and the class members. These common issues predominate over any individual distinction that may exist among individual retirees and some are outlined above.  The dispositive questions of fact in this case are susceptible to resolution through common evidence because they all center on the existence of a contract, its breach and the damages that would be sustained if the class members are not given permanent injunctive relief.

Plaintiffs contend that the Maryland Ann. Code, State Personnel and Pension §§ 2-508 *et. seq.* (2005) contains contractual provisions that become property interests in favor of the Plaintiffs upon each plaintiff's completion of the express condition precedent.  Namely, each plaintiff is entitled to a portion of the subsidy afforded to active employees upon completion of at least five years of service. It is well settled under Maryland law that a retiree has a contractual property interest in the pension upon completion of the requisite vesting period. City of Frederick v. Quinn, 371 A.2d 626 (Md. App. 1977); Davis v. Mayor and Alderman of the City of Annapolis, 98 Md. App. 707 (1994).  However, it is a novel issue in Maryland as to whether prescription drug coverage is protected by the vesting criteria, making this question one that is common to all members and predominates over any question affecting individual members.  Because the dispositive issues of law and fact can be resolved through common evidence the putative class meets the requirements of Rule 23(b)(3).

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 31 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

### b. The Case Should Proceed as a Class Action Because that Option is Far Superior to Other Alternatives.

Allowing Plaintiffs to proceed as a class action meets the requirement of superiority because it promotes justice by providing class members, who would not have sufficient incentive to pursue claims individually, access to the courts to seek vindication of their rights. See Minter v. Wells Fargo Bank, N.A., 279 F.R.D. 320, 330 (D.Md.202)

This class action is superior to all other alternatives, for the fair and efficient adjudication of this controversy. It will achieve economies of time, effort, and expense and promote the uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about undesirable results. Consolidating the litigation in a single class action is far preferable to the alternative of having proceedings and discovery repeatedly litigated in this Court. See Harlow v. Sprint Nextel Corp., 254 F.R.D. at 423 (D. Kansas 2008) ("The alternative to a class action would be for many plaintiffs to bring individual suits ……... This would be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation."). Adjudicating the claims in one forum would avoid duplicative results and eliminate the potential for inconsistent judgments. In addition, a class action does not present any insurmountable difficulties in management. The proposed Class is ascertainable from state personnel records already in Defendants' possession, and they are limited in geographic scope (unlike a nationwide, multi-district class containing millions of members). Indeed, requiring separate individual lawsuits would likely result in far greater manageability problems, such as duplicative discovery (including numerous depositions of the same officials and repetitive production of documents), repeated adjudication of similar controversies in this Court, and excessive costs. Judicial economy will therefore be better served if the legality of Defendants' actions is adjudicated in a single class proceeding rather than through a flood of individual suits. Therefore, class-wide treatment of this breach is a far superior method of

**Plaintiffs Memorandum in Support of Motion to Certify**
**Page 32 of 33**

*Fitch, et al. State of MD et al.*
**18-02817 - PJM**

determining the content and legality of the laws and statutes that define the terms of this contract. The Plaintiffs contend that they have satisfied this factor and certification of the proposed class is proper under Rule 23(b)(3).

## VI.    CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court (a) certify this action as a class action pursuant to Rule 23(a) and either 23(b)(1), (b)(2) or (b)(3) certify Kenneth Fitch as the Proposed Class Representative; and (3) appoint the law firm of Deborah A. Holloway Hill as Class Counsel.

Respectfully Submitted

DATED:     May 27, 2019

/s/ Deborah Hill
**Deborah A. Holloway Hill**
(Bar #28384)
102 W Pennsylvania Avenue, Suite 401
Towson, MD 21204
O: (410) 428-7278
F:  (866) 499-6906
DebHill@outlook.com

*Attorney for the Plaintiffs*

Plaintiffs Memorandum in Support of Motion to Certify
Page 33 of 33

*Fitch, et al. State of MD et al.*
18-02817 - PJM