## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND

|  |  |
|---|---|
| KENNETH FITCH, *et al.*, | |
| *Plaintiffs*, | Civil Action No.: 18-CV-02817-PJM |
| v. | |
| STATE OF MARYLAND, *et al.* | |
| *Defendants*. | |

### MOVANTS' MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AND OBJECTION TO THE APPOINTMENT OF DEBORAH HOLLOWAY HILL AS SOLE CLASS COUNSEL AND KENNETH FITCH AS SOLE CLASS REPRESENTATIVE

### INTRODUCTION

The Motion requests intervention by 15 Movants for the following purposes: (1) to object to the appointment of Deborah Holloway Hill, attorney for the named Plaintiffs, as the sole counsel for the class of State retirees and employees that may be certified by the Court; (2) to object to the appointment of Paintiff Kenneth Fitch as the sole representative of said class; (3) to request that the Court defer ruling on Plaintiffs' Motion to Certify Class for 60 days to permit the Movants and their counsel to seek out and propose to the Court qualified and experienced attorneys who are able to adequately represent the class; and (4) when and if appropriate, to name other plaintiffs who will be proper class and sub-class representatives.

Collectively, the 15 Movants are retired State of Maryland employees, each of whom has a present interest in and eligibility for the State Employee and Retiree Health and Welfare Benefits Program (the "Program") at issue in this case. As such, to protect his or her interest, each Movant has the right to intervene in this action either as of right or permissively under Fed.R.Civ.P. 24. At

1

this time, Movants seek to intervene for the limited purposes described in this motion.  They do not oppose certification of an appropriately-defined class of retirees. However, all 15 of them object to the appointment of Deborah Holloway Hill as sole class counsel and Kenneth Fitch as sole class representative. As a Sole practitioner whose primary focus is Bankruptcy and general practice and the only remaining lawyer in the case, Ms. Hill does not possess the qualifications, knowledge, experience or resources to represent the class adequately or to litigate the complex constitutional issues which this case presents. The Movants also object to the appointment of Kenneth Fitch as a class representative and as the sole class representative, because Mr. Fitch has a unique set of circumstances (including an individual promise that was made to him regarding health insurance coverage), which is different from the class as a whole, making him an unsuitable class representative, particularly the sole class representative.

While the Movants are initially seeking to intervene for a limited purpose, their ultimate goal is to identify a firm, firms and/or public interest organizations which can adequately represent the class and, at some point and if appropriate, to seek full intervention. The Movants have been searching for representation and are in discussions with public interest organizations and other firms. However, given that the only named Plaintiffs are represented by Ms. Hill and that she and the proposed sole class representative (Mr. Fitch) appear to be opposed to co-counseling with other firms, there is no avenue for new potential class counsel to enter the case. This has complicated the search for representation. The Movants are asking the Court to postpone any decision on class certification and the appointment of class counsel and class representatives until the Movants have had the opportunity to present proposed alternatives to the Court. The Movants request an order allowing them 60 days to identify candidates to potentially fill the role of class counsel. If the Movants identify potential class counsel who is willing to assume representation and the Court

appoints that counsel to represent the class, then the Movants may seek to add new or additional class representatives so that all of the identified subclasses are adequately represented, and may potentially urge the Court to modify the class presently proposed by Ms. Hill.

**THE MOVANTS AND THEIR INTEREST IN THE LITIGATION**

I.    **THE PROSPECTIVE CLASS AND SUBCLASS DEFINITIONS AND ELIGIBILITY CRITERIA FOR PARTICIPATION IN THE RETIREES' PRESCRIPTION DRUG PROGRAM.**

The eligibility criteria for retirees' Program benefits prior to the effective date of the 2011 amendments to Md. Code, State Pers. & Pens. § 2-509.1 (Jan. 1, 2019), are set forth in Volume V, Chapter 15 of the 2018 Maryland Legislative Handbook. For retirees hired before July 1, 2011, they are eligible for  Program benefits if they fall within any one of the following categories: (1) they retired directly from the State with at least five years of creditable service; (2) they retired directly from the State with a disability; (3) they ended State service with at least 16 years of service; (4) they ended service with at least 10 years of creditable service and within five years of retirement age; or (5) they ended State service on or before June 30, 1984. Md. Legislative Handbook, vol. V, ch. 15 at 203 (Md. Dep't Legis. Servs. 2018), Ex. A[1].

The general class is defined by Plaintiffs in their motion for class certification as follows:

> All retired persons who vested in the State Employee and Retiree Health and Welfare Benefits Program prior to July 1, 2011 *and their surviving spouses and/or dependents* whose prescription drug benefits have been or will be impaired by the enforcement of the 2011 Budget and Reconciliation Act, or any other statute, law, rule, regulation, or plan document and, if such persons are now deceased or will be deceased prior to the conclusion of this lawsuit, all their living beneficiaries entitled to receive any damages set forth herein or retirement prescription drug coverage under the State Prescription Drug Coverage Plan, or their estates as applicable.

---

[1] The relevant provisions from this Handbook are attached hereto as Exhibit A.  The Handbook is available in its entirety at: http://mgaleg.maryland.gov/ess06-pubs/OPA/H/2018_5.pdf.

ECF No. 36-1 at 6 (emphasis supplied).

The Plaintiffs' motion also includes the following three non-exclusive subclasses, which fall within the general class definition:

A.  Medicare Eligible Retirees.

1.     All currently retired persons who vested in the state Employee and Retiree Health and Welfare Benefits Program and who are also eligible for benefits under Medicare Part D prescription drug coverage;

2.     All persons currently retired from the State of Maryland with more than 5 years of creditable service and who are currently eligible for benefits under Medicare Part D prescription drug coverage by way of disability or age.

B.  Non-Medicare Eligible Retirees.

All persons currently retired from the State of Maryland who began service before July 1, 2011, with at least 5 years of creditable service and who are currently not eligible for benefits under Medicare Part D prescription drug coverage by way of disability or age (65 or older).

C.  Employees with 5 years of creditable service prior to July 1, 2011.

All persons employed with the State of Maryland who began service before July 1, 2011 with at least 5 years of creditable service and who are not currently eligible for benefits under Medicare Part D prescription drug coverage by way of age (65 or older) or disability.

*Id.* at 6.

## II.     THE MOVANTS

The 15 Movants are William A. Kahn, Peta N. Richkus, M. Catherine Orleman, Ann L. Heslin, William H. Kirk, Dana A. Reed, Dawna M. Cobb, Edward S. Harris, Edward Robert Kemery II, Gerald Langbaum, Julia P. Davis, Larry W. Tolliver, Sheila M. Tolliver, Laurence Levitan, and Thomas L. Osborne, Sr. The following is an explanation of why each fits within the Plaintiffs' general class definition, along with some of their subclass definitions.

### 1.  WILLIAM A. KAHN

From 1977 through the date of his retirement on December 31, 2003, Mr. Kahn was an Assistant Attorney General in the Maryland Office of the Attorney General.  Decl. of W. Kahn ¶ 2, Ex. B. From 1983 until he retired, Mr. Kahn was in charge of the Attorney General's Contract Litigation Unit. *Id*. Mr. Kahn became eligible for Program benefits as a retiree on December 31, 2003, because he retired directly from the State, he was employed prior to July 1, 2011, and had 26 years of creditable service at the time. *Id*. Therefore, he falls within the general class definition. He also falls within subclass A, as he is a current retiree who is otherwise eligible for benefits under Medicare Part D. *Id*. ¶ 3.

### 2.  PETA N. RICHKUS

From January 1999 through February 26, 2003, Ms. Richkus was the Secretary of the Maryland Department of General Services, and she served as a Commissioner on the Maryland Port Commission, from July 2008 through December 2014. Richkus Decl. ¶¶ 2–3, Ex. C. She became eligible to receive Program benefits through her late spouse, Mr. Randolph B. Rosencrantz, former Chairman of the Maryland State Board of Contract Appeals, who died on June 25, 2003. *Id. ¶* 3. Mr. Rosencrantz was eligible for and received Program benefits as a disabled State retiree. *Id*. ¶¶ 3–4. As his surviving spouse, Ms. Richkus is entitled to the same pension and healthcare benefits to which Mr. Rosencrantz was entitled for the remainder of her life. *Id. ¶* 3. Thus, Ms. Richkus falls within the general class definition and also the definition of subclass A, as she is over the age of 65 years and eligible to participate in Medicare Part D. *Id*. ¶ 4.

### 3. M. CATHERINE ORLEMAN

From September 1991 through August 1995, Ms. Orleman was an Assistant Attorney General in the Maryland Department of Transportation and from August 1995 through her date of retirement on March 1, 2010, Ms. Orleman was Principal Counsel for the Maryland Port Administration. Orleman Decl. ¶¶ 2–3, Ex. D. Ms. Orleman is also Willlaim H. Kirk's spouse. *Id.* ¶ 3. On the date of her retirement (March 1, 2010), Ms. Orleman became independently eligible to receive Program benefits as a retiree, because she retired directly from the State, had 18 years of creditable service and was employed prior to July 1, 2011. However, she elected to continue Program benefits as the spouse of a retiree (Mr. Kirk). *Id.* So, from March 1, 2010 through the present, Ms. Orleman has received Program benefits as the spouse of a State retiree and continues to receive them. *Id.* ¶ 4. Thus, Ms. Orleman falls within the general class definition, as she is both a spouse of a retiree and a retiree who became independently eligible for Program benefits. She is also eligible for benefits under Medicare Part D because she is over the age of 65, and therefore falls within the definition of subclass A. *Id.* ¶¶ 3–4.

### 4. ANN L. HESLIN

From June 3, 1970 to June 30, 2001 and from September 4, 2013 through her date of retirement on April 30, 2016, Ms. Heslin was a Social Worker in the Maryland Department of Social Services and Human Resources. Heslin Decl. ¶ 3, Ex. E. Ms. Heslin is eligible to receive Program benefits because she retired directly from the State, had 34 years of creditable service at the time and was employed prior to July 1, 2011. *Id.* ¶¶ 3–4. Ms. Heslin is also eligible for benefits under Medicare Part D, as she turned 65 on November 12, 2013. *Id.* ¶ 4. Thus, Ms. Heslin falls within the general class definition and the definition of subclass A.

### 5.  WILLIAM H. KIRK

From May 1990 through September 1, 2005, Mr. Kirk was an Architect and Construction Manager in the Maryland Transit Administration.  Kirk Decl. ¶ 2, Ex. F. As noted above, Mr. Kirk is also Ms. Orleman's spouse. From September 1, 2005 through his date of retirement on October 1, 2010, Mr. Kirk was the Deputy Director of Facilities Engineering in the Maryland Transportation Authority. *Id.* Mr. Kirk became eligible for Program benefits as a retiree on October 1, 2010, because he retired directly from the State, and he had 20 years of creditable service at the time and was employed prior to July 1, 2011. *Id.* ¶¶ 2–3, 5. He also became eligible for benefits under Medicare Part D on March 17, 2013, when he turned 65.  Thus, Mr. Kirk falls within the general class definition and the definition of subclass A.

### 6.  DANA A. REED

Ms. Reed was employed by the State as an Assistant Attorney General from December 1989 through July 31, 2011 when she retired.  From 2004 through the date of her retirement, she was in charge of the Attorney General's Contract Litigation Unit.  Reed Decl. ¶ 2, Ex. G.  Ms. Reed was eligible to receive Program benefits as a retiree on July 31, 2011, because she was employed by the State prior to July 1, 2011, she retired directly from the State and had 21 years of creditable service at the time. *Id.* ¶¶ 2–3. She began receiving those benefits on her retirement date and continues to receive them. *Id.* ¶ 4. She therefore falls within the general class definition. She also falls within subclass A, as she is over the age of 65 and eligible for benefits under Medicare Part D.  *Id.* ¶ 3.

### 7.   DAWNA M. COBB

Ms. Cobb was employed by the State from January 1, 1990 until June 30, 2012, when she retired. Cobb Decl. ¶ 2, Ex. H. Ms. Cobb served as an Assistant Attorney General from January 1, 1990 to August 2006, including six years as Deputy Counsel in the Attorney General's Educational Affairs Division. From August 2006 to June 30, 2012, she served as Assistant Dean of Students at the University of Maryland Francis King Carey School of Law. *Id*. Ms. Cobb was eligible to receive Program benefits as a retiree on June 12, 2012, because she was employed by the State prior to July 1, 2011, she retired directly from the State and she had 22 years of creditable service when she retired. *Id*. ¶ 5. She began receiving those benefits on that date and continues to receive them.  *Id*. She therefore falls within the general class definition and the subclass B definition, as she is not yet eligible for Medicare Part D, but is a retiree with at least 5 years of creditable service.

### 8.   EDWARD S. HARRIS

Mr. Harris was employed by the State as an Assistant Attorney General from February 1982 through July 1, 2017 when he retired. From 1989 through the date of his retirement, he was the Principal Counsel to the State Highway Administration. Harris Decl. ¶ 2, Ex. I.  Mr. Harris became eligible to receive Program benefits as a retiree on July 1, 2017, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at the time of his retirement, he had 35 years of creditable service. *Id*. ¶¶ 2–3, 5. He began receiving those benefits on his retirement date and continues to receive them. *Id*. ¶ 5. Therefore, he falls within the general class definition. He also falls within the definition of subclass A, as he is over the age of 65 and eligible to participate in Medicare Part D.  *Id*. ¶ 4.

### 9.  EDWARD ROBERT KEMERY II

Dr. Kemery was employed by the State as a faculty member of University of Baltimore's Merrick School of Business from 1987 until August 1, 2017 when he retired. Kemery Decl. ¶¶ 2–3, Ex. J.  Dr. Kemery became eligible for program benefits as a retiree on August 1, 2017, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at the time of his retirement, he had 30 years of creditable service. *Id*. ¶¶ 2–4. He began receiving those benefits on his retirement date and continues to receive them. *Id*. ¶ 4. Therefore, he falls within the general class definition. He also falls within the definition of subclass A, as he is over the age of 65 and eligible to participate in Medicare Part D.  *Id*. ¶ 5.

### 10. GERALD LANGBAUM

Mr. Langbaum was employed by the State as an Assistant Attorney General from January 1975 to June 30, 2008, when he retired.  From 1978 through his retirement, he was Principal Counsel and Division Director to the State Comptroller. Langbaum Decl. ¶ 2, Ex. K.  Mr. Langbaum became eligible to receive program benefits as a retiree on June 30, 2008, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at that time, he had 33 years of creditable service. *Id*. ¶¶ 2–5. He began receiving Program benefits on his retirement date and continues to receive them. *Id*. ¶ 4. Therefore, he falls within the general class definition. He also falls within the definition of subclass A, as he is over the age of 65 and eligible to participate in Medicare Part D. *Id*. ¶ 3.

### 11. JULIA P. DAVIS

Ms. Davis was employed by the State as an Assistant Attorney General from 1989 to February 1, 2019, when she retired.  From 2003 through February 1, 2010, she was Principal Counsel and Division Director to the Department of General Services.  Davis Decl. ¶¶ 2–3, Ex. L.

Ms. Davis became eligible for Program benefits as a retiree on February 1, 2019, because she was employed by the State prior to July 1, 2011, she retired directly from the State and, at that time, she had 30 years of creditable service. *Id.* ¶¶ 2–4. She began receiving Program benefits on her retirement date and continues to receive them. *Id.* ¶¶ 4, 6. Therefore, she falls within the general class definition. She also falls within the definition of subclass A, as she turned 65 on June 22, 2019 and is now eligible to participate in Medicare Part D. *Id.* ¶ 5.

### 12. LARRY W. TOLLIVER

Mr. Tolliver was employed by the Maryland State Police from 1967 until he retired on February 1, 1995 as the Superintendent of the State Police. L. Tolliver Decl. ¶ 2, Ex. M.  Mr. Tolliver became eligible for Program benefits as a retiree on February 1, 1995, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at that time, he had 28 years of creditable service. *Id.* ¶ 2. He began receiving Program benefits on his retirement date and continues to receive them. *Id.* ¶ 3. Therefore, he falls within the general class definition. He also falls within the definition of subclass A, as he is over 65 and eligible to participate in Medicare Part D. *Id.* ¶ 4.

### 13. SHEILA M. TOLLIVER

Ms. Tolliver was employed by the State in a number of positions for 27 years and retired on October 1, 1997 as an Assistant Secretary in the Department of Labor, Licensing, and Regulation. S, Tolliver Decl. ¶ 2, Ex. N.  Ms. Tolliver became independently eligible to receive Program benefits as a retiree on October 1, 1997, because she was employed by the State prior to July 1, 2011, she retired directly from the State and, at that time, she had 30 years of creditable service (as a result of early retirement, she received 3 extra years of credit). *Id.* ¶¶ 2–4. From her retirement date forward, Ms. Tolliver has received Program benefits as the spouse of a retiree,

Lawrence Tolliver, and she continues to receive them. *Id*. ¶ 5. Therefore, she falls within the general class definition as both a spouse of a retiree and as an eligible retiree. She also falls within the definition of subclass A, as she turned 65 on October 16, 2011 and is now eligible to participate in Medicare Part D. *Id*. ¶ 6.

### 14. LAURENCE LEVITAN

Mr. Levitan was elected to the Maryland General Assembly, first as a Delegate and later as a Senator, serving for 24 years beginning in 1970. For the last 16 years of his State service, he was the Chair of the Senate Budget and Taxation Committee.  Levitan Decl. ¶ 2, Ex. O.  He retired in 1994. *Id*. Mr. Levitan became eligible for Program benefits as a retiree when he retired in 1994, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at that time, he had 24 years of creditable service. *Id*. ¶¶ 2–4. He began receiving Program benefits as a retiree on his retirement date and continues to receive them. *Id*. ¶ 4. Therefore, he falls within the general class definition. He also falls within the definition of subclass A, as he is over the age of 65 and eligible to participate in Medicare Part D.  *Id*. ¶ 5.

### 15. THOMAS L. OSBORNE, SR.

Mr. Osborne was employed by the State of Maryland from 1991 to 2004, when he retired. Osborne Decl. ¶ 2, Ex. P.  He was employed in the following positions: Assistant to the Secretary of the Maryland Department of Transportation, Deputy Secretary of the Maryland Department of Transportation, and Executive Secretary of the Maryland Transportation Authority. *Id*. Mr. Osborne has been eligible for Program benefits as a retiree since his retirement in 2004, because he was employed by the State prior to July 1, 2011, he retired directly from the State and, at that time, he had 13 years of creditable service. *Id*. ¶¶ 2–3. He began receiving Program benefits on his retirement date and continues to receive them. *Id*. ¶¶ 4, 6. Therefore, he falls within the general

class definition. He also falls within the definition of subclass A, as he turned 65 on June 3, 2012 and is eligible to participate in Medicare Part D.  *Id.* ¶ 5.

## ARGUMENT

### I.    THE MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT PURSUANT TO FED. R. CIV. P. 24(a)(2) OR PERMISSIVELY UNDER RULE 24(b).

Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action," where the claims are "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," except when "existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

The Fourth Circuit has long held that any doubt concerning the propriety of allowing intervention should be resolved in favor of proposed intervenors, as "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process."  *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citation omitted).  Accordingly, district courts must generally "permit intervention as a matter of right if the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of that action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation."  *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (citing *Teague v. Bakker*, 931 F.2d 259, 260–61 (4th Cir. 1991)).

### A.    THE MOVANTS HAVE AN INTEREST IN THE SUBJECT MATTER OF THIS ACTION BECAUSE THEY ARE PUTATIVE CLASS MEMBERS.

To intervene as of right, a movant's interest must be "significantly protectable" and he/she must "stand to gain or lose by the direct legal operation."  *Teague*, 931 F.2d at 261 (citing

*Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  A movant may establish such an interest where the challenged state action directly affects the proposed intervenors.  *Feller*, 802 F.2d at 30. The Supreme Court has long held that "the interest of an individual in continued receipt" of government retirement benefits "is a statutorily created 'property' interest protected by the Fifth Amendment" to the U.S. Constitution.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The Movants, like Plaintiffs, thus seek "to protect and restore their . . . Constitutional right[s] as retired employees of the State of Maryland to ensure their future right to prescription drug coverage."  ECF No. 29 at 66:22–25. As demonstrated in Section I above, the movants are all putative class members with an interest in the subject matter of this litigation, which they stand to win or lose depending on the outcome of the case. As such, they most certainly have an interest in the outcome of this litigation and meet the first element.

## B.   THE MOVANTS' INTERESTS WILL BE IMPAIRED BY THIS LITIGATION.

Movants' interests will also be impaired by the litigation. To determine whether an intervenor's interest in litigation will be impaired by the litigation, courts generally look to the relief requested in the complaint. *Feller*, 802 F.2d at 730. If the Plaintiffs' motion for class certification is granted, there is no question that the Movants' rights will be impaired if the Plaintiffs do not prevail in the litigation. This is so because Movants are members of the prospective class, and, if the class is certified, Movants will be bound by an adverse judgment. They are therefore impaired. *See Royal Park Investments SA/NV v. United Stated Bank National Association,* 356 F.Supp.3d 287 (S.D.N.Y. 2018), where the Court had this to say:

> The next element requires NCUA to show that "disposing of the action may as a practical matter impair or impede [NCUA's] ability to protect its interest." Fed. R. Civ. P. 24(a)(2); *see also Hartford Fire Ins. Co. v. Mitlof,* 193 F.R.D. 154, 161 (S.D.N.Y. 2000). Class actions present a common example of cases in which an adverse judgment would impair the movant. When a class is certified or likely to be certified, absent class members who

do not opt out are bound by any judgment in a class action, and they are therefore clearly at risk of impairment. See *Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2015 WL 4619663, at *4 (S.D.N.Y. Aug. 3, 2015) (observing that intervention is "commonly granted to absent class members" who could be bound by a judgment). Of course, the risk of adverse judgment turns partly on whether class certification is likely and whether the movant is part of the proposed class.

*Id*. at 295.

But even if the Movants were not bound by an adverse judgment, their rights may be impaired by the running of the statute of limitations. Accordingly, because the Movants' interests will be substantially affected by this litigation, they are entitled to intervene as of right. As such, they meet the second element

### C.   THE MOVANTS' INTERESTS ARE NOT ADEQUATELY REPRESENTED IN THIS ACTION.

As explained in Section III below, the Movants are extremely concerned that their interests will not be protected if Ms. Hill is appointed class counsel and if Mr. Fitch is appointed a class representative or as the sole class representative. Thus, the Movants meet the third element of the test.

Having satisfied all three elements, Movants are entitled to intervene in this action as a matter of right.

### D.   EVEN IF THE MOVANTS ARE NOT ENTITLED TO INTERVENTION AS OF RIGHT, THE COURT SHOULD GRANT MOVANTS' REQUEST FOR PERMISSIVE INTERVENTION.

If the Court concludes that the Movants are not entitled to intervene as of right under Rule 24(a)(2), the Court should, in its sound discretion, permit them to intervene permissively under Fed. R. Civ. P. 24(b)(1)(B). *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003). Permissive intervention is proper where a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). An economic interest, while not

required, tilts the balance in favor of granting permissive intervention. *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F2d 765, 769 (D.C. Cir. 1955) (permissive intervention granted because applicant had a "real economic stake in the outcome."). As putative class members, the Movants clearly have an economic stake in the outcome of this matter and they should be permitted to intervene.

Also, the Movants' limited intervention will not prejudice the rights of the existing Plaintiffs. When deciding a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of other parties' rights." Fed. R. Civ. P. 23(b)(3). There is no risk of such undue delay or prejudice here. The record indicates that the parties have not engaged in formal discovery, the Court has not issued a scheduling order, and the Court has not yet ruled on the pending Motion to Certify Class or on the Motion to Dismiss. Permitting the Movants to intervene at this early stage will not result in delay or prejudice to the Plaintiffs. Instead, granting permissive intervention would be best for the Movants and for the other putative class members of which there could be as many as 90,000. ECF No. 1-1 at 5. Indeed there could be prejudice to the putative class members who are not named plaintiffs in this action if their intervention is not permitted by the Court.

Accordingly, the Court should allow the Movants to Intervene.

## II. THE MOVANTS OBJECT TO THE APPOINTMENT OF PLAINTIFFS' COUNSEL, DEBORAH HOLLOWAY HILL AS SOLE CLASS COUNSEL, AND TO KENNETH FITCH AS A CLASS REPRESENTATIVE OR THE SOLE CLASS REPRESENTATIVE.

In their motion for class certification, Plaintiffs seek the appointment of Deborah Holloway Hill as sole class counsel and Kenneth Fitch as the sole class representative. ECF No. 36-1 at 6. For the reasons explained below, neither Ms. Hill nor Mr. Fitch are adequate class representatives. All 15 of the Movants expressly object to the appointment of Ms. Hill as class counsel. *See* Ex. B

¶¶ 8-10; Ex. C ¶¶ 10-11; Ex. D ¶¶ 7-10; Ex. E ¶¶ 6-9; Ex. F ¶¶ 8-10; Ex. G ¶¶ 6-7; Ex. H ¶¶ 8-10; Ex. I ¶¶8-10; Ex. J ¶¶ 9-12; Ex. K ¶¶ 7-11; Ex. L ¶¶ 9-10; Ex. M ¶¶ 7-9; Ex. N ¶¶ 9-11; Ex. O ¶¶ 8-9; P ¶¶ 8-10. And, through their counsel, they also object to the appointment of Mr. Fitch as class representative.

The "adequate representation inquiry consists of two parts: (1) the adequacy of the class representatives in light of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)[2]. *Accord Bell*, 922 F.3d at 510 ("A class action is appropriate ***only when both class representatives and class counsel adequately protect the interests of the class.***") (emphasis supplied.) Courts inquire particularly into an applicant class counsel's "diligence, respect for judicial resources, and promptness." *Gomez*, 649 F.3d at 592. Because the proposed class is expected to number between 35,000 and 90,000 (using the State's own numbers), a single representative who does not share claims or interests with numerous other members of the class cannot adequately represent the interests of all members of the class.

Where a court certifies a class, it "must appoint class counsel." Fed. R. Civ. P. 23(g). To do so, "the court must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex

---

[2] By their Memorandum in Support of Motion to Certify Class, Plaintiffs concede that this two-pronged inquiry is controlling for purposes of their Motion. ECF No. 36-1 at 32 (citing *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009)). Plaintiffs, however, incorrectly argue that "[t]he adequacy of plaintiff's counsel is presumed in the absence of specific proof to the contrary." *Id.* If this were the standard in the past, it no longer controls. In 2011, the Supreme Court expressly held that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). *See also EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("It is the plaintiffs' burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied.").

litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Where an applicant seeks appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1)." Fed. R. Civ. P. 23(g)(2).

Consideration of the Rule 23(g) factors is mandatory and, while the Court may consider other permissible factors, it cannot appoint class counsel without having the necessary evidentiary support needed. *Bell v. Brockett*, 922 F.3d 502, 512 (4th Cir. 2019). Indeed, failure to have this evidence (and thus failure consider those factors before appointing counsel) would "render certification fatally defective." *Id*. This requirement "is particularly important because the due process rights of absentee class members may be impacted since they are bound by a final judgment in a suit where they were inadequately represented." *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986). *Accord Scott v. Univ. of Del.*, 601 F.2d 76, 85 (3d Cir.), *cert. denied*, 444 U.S. 931 (1979); *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Matthews*, 551 F.2d 340, 346 (D.C. Cir.), *cert. denied*, 431 U.S. 954 (1977).

Of particular relevance is the extent to which counsel appears to lack "familiarity with basic class actions principles, as well as a lack of thoroughness in failing to uncover them." *Riggleman v. Clarke*, No. 5:17-CV-63, 2019 WL 1903795, at *5 (W.D. W.Va. April 29, 2019). While "'[m]ere differences in litigation strategy are not enough to justify intervention as a matter of right,'" *Stuart*, 706 F.3d at 353 (quoting *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 954 (9th Cir. 2009)), where counsel "ha[s] made significant errors in [an] action, both of substance and form," district courts are within their discretion to reject their applications for appointment as

class counsel.  *Skipper v. Giant Food, Inc.*, 68 Fed. App'x 393, 397 (4th Cir. 2003).  *See also*

*Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 471 (D. Md. 2002) (Attorney could not

adequately represent proposed subclass, as required to certify class in employment discrimination

action, where attorney frequently erred in citing and stating law, failed to include deposition pages

essential to clients' claims, and lacked sufficient resources to meet financial demands of

representing proposed classes.)

> **A.      MS. HILL SHOULD NOT BE APPOINTED CLASS COUNSEL BECAUSE SHE PROVIDED THE COURT WITH ALMOST NO INFORMATION ABOUT HER QUALIFICATIONS AND EXPERIENCE AND THERE IS NO INDICATION THAT SHE IS ABLE TO ADEQUATELY REPRESENT THE CLASS.**

Plaintiffs' co-counsel, Breon Johnson, Esquire, who had some, albeit limited, experience

handling these types of cases has withdrawn his appearance, leaving Ms. Hill as sole class counsel.

ECF No. 35. Ms. Hill has presented the Court with almost no information about the Rule 23 (g)(A)

factors, preventing the Court from making a finding that she is able to adequately represent the

class. Her failure to address this issue alone raises serious doubts about whether she possesses the

attributes necessary to provide adequate representation to the class. ECF No. 1-1 at 5. Ms. Hill

devotes less than two pages to discussing her qualifications and the discussion is at best evasive.

As to factor A(1), Ms. Hill has presented the Court with a short summary of her investigation and

identification of claims in this action. *Id*. However, she has said absolutely nothing in the

memorandum or her supporting affidavit about factors A(2) ("counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in this action"), A(3)

("counsel's knowledge of the applicable law") or A(4) ("the resources counsel will commit to

representing the class").

Indeed, an examination of publicly available information on Ms. Hill's website (https://deblaw.com) indicates that she has no class action or complex litigation experience nor is she familiar with the constitutional issues in this case. Ms. Hill's practice areas of Bankruptcy, Real Estate, Criminal Defense, Litigation, Personal Injury and Immigration (per her website) fall outside of the complex litigation and class action expertise required in this case. *Id*. She appears to be a sole practitioner as there are no other attorneys listed on the web site. *Id*. Further, she does not list experience with actions under 42 U.S.C. §1983 or constitutional challenges to statutes, governmental action or class actions. *Id*.

Ms. Hill's actions in the case also demonstrate a lack of familiarity with or lack of ability to comply with very basic procedures. Plaintiffs' counsel misfiled a Motion for Reconsideration on September 12, 2018. ECF No. 8. The document purports to contain a total of 6 pages, but counsel only filed the first 3 of those 6 pages. The first two such pages comprise the main document. *Id.* The third page is mistitled as a "Proposed Order." ECF No. 8-1. Each document was filed without a signature. To date, these documents have not been corrected, nor are the remaining three pages of the Motion to be located anywhere in the record. Also, on September 12, 2018, Plaintiffs' counsel filed a Motion for Reconsideration (ECF No. 8) and Motion to Shorten Time in regards to the Motion for Reconsideration (ECF No. 9). On September 13, 2018, the Court issued an order noting that ECF No. 8 was incomplete and a complete copy needed to be refiled, and that ECF No. 9 was unsigned and also needed to be refiled. ECF No. 10.  It has been more than nine months and Plaintiffs' counsel has still not refiled ECF Nos. 8 and 9. And, on May 31, 2019, Plaintiffs' counsel improperly filed the Motion to Certify Class, ECF No. 36, and failed to comply with the Court's local rules regarding lengthy paper exhibits and filing documents under seal.  The Clerk's Office noted this error on June 12, 2019 and directed counsel to correct it by

breaking up the exhibit electronic filings into smaller parts. ECF No. 39. As of June 27, 2019, at 5:00 p.m., a last-minute check of the docket shows that Plaintiffs' counsel has not corrected this error.

Moreover, Plaintiffs' counsel has failed to demonstrate that she has a grasp of the constitutional issues in this case or that she grasps the importance of substantively responding to the State's Motion to Dismiss the action, ECF No. 18. In support of its Motion to Dismiss, the State filed a 21-page supporting memorandum in which it argued that the constitutional and other claims should be dismissed, as Plaintiffs stated no cognizable claims as a matter of law. ECF No. 18-1. Plaintiffs' counsel filed a meager six-page response, which inadequately and cursorily addressed the State's arguments. ECF No. 18-1.

Plaintiffs' counsel also does not appear to understand the role that 42 U.S.C. § 1983 plays as a vehicle for bringing constitutional challenges to state statutes, as the complaint does not even mention § 1983. Section 1983 is the sole vehicle through which individuals may seek redress for violations of federal constitutional rights by state officials or other individuals acting under color of state law. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). The statute not only authorizes suits challenging the constitutionality of a particular state actor's conduct, but also contemplates facial challenges to state statutes, along with specific challenges to state statutes as applied. *Davis v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019) (state actor's conduct); *Mallette v. Arlington Cty. Emps. Supplemental Retirement Income Sys. II*, 91 F.3d 630, 635 (4th Cir. 1996) (discussing application of Section 1983 challenges to state statutes).

In short, Ms. Hill has failed to demonstrate through her affidavit or her actions in this case that she has the resources or the qualifications to be appointed class counsel as required by Rule 23(g)(A).

**B**. **MR. FITCH IS NOT A SUITABLE CLASS REPRESENTATIVE BECAUSE HIS INTERESTS ARE DIFFERENT FROM THE CLASS OR CLASSES AS A WHOLE AND, IN NO EVENT, SHOULD HE BE THE SOLE CLASS REPRESENTATIVE.**

Plaintiffs have not demonstrated that the proposed class representative, Kenneth Fitch, would adequately protect the interests of the putative class members. Rule 23(a)(4) requires Plaintiffs to prove that proposed class representatives "will fairly and adequately protect the interests of the class." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (citing *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)). Thus, a proposed class representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Moreover, a proposed class representative is adequate only if he is "part of the class." *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019).

Mr. Fitch, as the proposed class representative, bears the burden of production and persuasion to show that he has "no substantial interests antagonistic to those of proposed class members and that [he] share[s] the desire to prosecute the action vigorously." ANN. MANUAL FOR COMPLEX LITIG. § 21.141 (2019 ed.). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard"). Under this analysis, "[t]he adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria." *Windsor*, 521 U.S. at 625 n.20 (quoting *Falcon*, 457 U.S. at 157).

Moreover, the Supreme Court has explained that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350–51 (internal quotation

and citation omitted).  The Court must do so here, as Plaintiffs' bald conclusions that Mr. Fitch's "interests are entirely aligned with those of the [proposed] Class," and that "all members of the class allege claims arising out of a breach of contractual obligation and are based on the same legal theories advanced by the named Plaintiffs," are both unsupported and inaccurate. ECF No. 36-1 at 31.

Here, Mr. Fitch's interests are different from and adverse to the class. He has stated that he accepted employment with the State at a lower rate of pay "in exchange for the superior benefits" offered by the State. ECF No. 2-2 at 22. Mr. Fitch alleges that he began "his employment with the State of Maryland in 1989 and after 23 years of service he retired in 2012" and that he "vested" in the State Retirees Benefits Plan in 2011. ECF No. 1-1 ¶ 2. While Mr. Fitch is a retiree like many of the putative class members, his unique contractual theory makes his claims atypical of those of the class as a whole. And, Plaintiffs have provided no evidence or allegations that Mr. Fitch's claims align with any other putative class members or even a significant number of them. This renders Mr. Fitch unsuitable as a class representative. *See Windsor*, 521 U.S. at 625–26.  *Accord Sharp Farms*, 917 F.3d at 297.

Mr. Fitch also should not be appointed sole class representative because he seeks to represent five distinct subclasses, when he only falls into one – the subclass of retirees who were employed prior to July 1, 2011 who are currently eligible to participate in Medicare Part D. ECF No.36-1 at 6. Mr. Fitch's interests do not align with the four other subclasses: (1) spouses and beneficiaries of retirees who are who are eligible for benefits; (2) current retirees who are not yet eligible for benefits under Medicare Part D; and (3) current employees who were hired prior to July 1, 2011 with 5 years of creditable service. *Id.* Mr. Fitch should not be the sole client decision

maker in a potential class of 90,000, as his decisions will bind the others and he may decide to give his subclass preferential treatment over the other subclasses.

In short, Mr. Fitch is not an appropriate class representative and in no event should he be appointed sole class representative.

## CONCLUSION

For all of the foregoing reasons, the Movants request the following relief from the Court: (1) grant their motion for limited intervention; (2) postpone any decision on class certification or appointment of class counsel and class representatives for 60 days so that suitable class counsel can be identified; (3) allow the Movants 60 days from the date of any order to request appointment of new class counsel and potentially new or additional class representatives; (4) and deny the request by Ms. Hill to be appointed class counsel and the request to have Mr. Fitch appointed as sole class representative.

Respectfully submitted,


/s/  Omar Vincent Melehy
Omar Vincent Melehy
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland   20910
Tel.:    (301) 587-6364
Fax:    (301) 587-6308
Email: ovmelehy@melehylaw.com

*Attorneys for Movants*