# EXHIBIT

# A

# LEGISLATIVE HANDBOOK SERIES

## VOLUME V

### MARYLAND STATE PERSONNEL, PENSIONS, AND PROCUREMENT



# Maryland State Personnel, Pensions, and Procurement

**Legislative Handbook Series**
**Volume V**
**2018**

**Contributing Staff**

*Writers*
Phillip S. Anthony
Jade D. McDuffie
Matthew D. Jackson
Lindsay Rowe
Michael C. Rubenstein
Heather N. Ruby
Laure M. Vykol

*Reviewers*
Jodie L. Chilson
Patrick S. Frank
Victoria L. Gruber
Lisa J. Simpson

**For further information concerning this document contact:**

Library and Information Services
Office of Policy Analysis
Department of Legislative Services
90 State Circle
Annapolis, Maryland 21401

Baltimore Area:  410-946-5400 ● Washington Area:  301-970-5400
Other Areas:  1-800-492-7122, Extension 5400
TTY:  410-946-5401 ● 301-970-5401
Maryland Relay Service:  1-800-735-2258
E-mail:  libr@mlis.state.md.us
Home Page:  http://mgaleg.maryland.gov

The Department of Legislative Services does not discriminate on the basis of age, ancestry, color, creed, marital status, national origin, race, religion, gender, gender identity, sexual orientation, or disability in the admission or access to its programs, services, or activities.  The Department's Information Officer has been designated to coordinate compliance with the nondiscrimination requirements contained in Section 35.107 of the Department of Justice Regulations.  Requests for assistance should be directed to the Information Officer at the telephone numbers shown above.

by the international financial crisis and resulting fiscal challenges due to reduced general fund revenues. Funding was provided in fiscal 2007 ($100 million), 2008 ($50 million), and 2009 ($105 million, later reduced by $46 million by the Board of Public Works) to forward fund the Other Post Employment Benefits liability. The State has not made any additional contributions to the Other Post Employment Benefits trust fund since fiscal 2009. As of July 1, 2017, the trust fund held $306.7 million, which represents approximately 2.7% of the State's unfunded Other Post Employment Benefits liability amounts.

The Governmental Accounting Standards Board standards require only that governments calculate their Other Post Employment Benefits liabilities and reflect their obligations on their annual financial statements; they do not require governments to prefund their Other Post Employment Benefits liabilities. Indeed, the Governmental Accounting Standards Board has no mechanism of its own to enforce governmental adherence to their standards. However, adherence to the standards and maintaining affordable levels of short- and long-term debt are both important factors considered by credit rating agencies. For many years, Maryland has been one of only a handful of states that has maintained an AAA bond rating from all three agencies. Rating agencies' comments have noted that the State has not recently contributed to the trust fund that was established to prefund its Other Post Employment Benefits liability.

## "Sweeper" Provision for Other Post Employment Benefits Trust Fund

State law requires that the Administration appropriate an amount equal to any unassigned general fund balance in excess of $10 million into the Rainy Day Fund, referred to as the "sweeper." This appropriation is made to the budget two years after the unassigned general fund surplus is realized at closeout. Chapter 557 of 2017 diverts a portion of the sweeper amount to support Other Post Employment Benefits and pensions. Specifically, it requires that, beginning in fiscal 2021 and each year thereafter, 25% of any unassigned general fund balance above $10 million be assigned to the Postretirement Health Benefits Trust Fund, up to a maximum amount of $25 million; another 25% is assigned to the pension trust fund (up to $25 million), and the remainder of the balance continues to be paid to the Rainy Day Fund.

## Health Benefits for Retired State Employees

As noted above, State employees may be eligible to remain in the State Employee and Retiree Health and Welfare Benefits Program when they retire, and they may also qualify for a premium subsidy, depending on how long they work for the State. Chapter 397 established new eligibility requirements for retirees to enroll in the program and qualify

for the premium subsidy if they are hired on or after July 1, 2011. Therefore, the eligibility requirements to enroll in the program are different for those who began employment with the State before July 1, 2011, and those who began employment with the State on or after that date. Employees hired before July 1, 2011, are eligible to enroll and participate in the group coverage when they retire if they have:

- retired directly from the State with at least 5 years of service;

- retired directly from State service with a disability;

- ended State service with at least 16 years of service;

- ended State service with at least 10 years of creditable service and within 5 years of retirement age; or

- ended State service on or before June 30, 1984.

Employees who begin employment with the State on or after July 1, 2011, are eligible to enroll in the program if they:

- retire directly from the State with at least 10 years of service;

- retire directly from State service with a disability;

- end State service with at least 25 years of service; or

- end State service with at least 10 years of creditable service and within 5 years of normal retirement age.

Similarly, eligibility for the premium subsidy differs depending on when the retiree began employment with the State. For those hired before July 1, 2011, eligible retirees must have at least 16 years of service to receive the same subsidy of health insurance premiums that is provided to active employees (80% of preferred provider organization premiums or 85% of exclusive provider organization and integrated health model premiums). If a retiree has less than 16 years of State service (but more than 5 years), the benefit is prorated based on a maximum subsidy being earned with 16 years of service. Retirees who began employment with the State on or after July 1, 2011, must have 25 years of service to receive the same subsidy as that provided to active employees. If a retiree has less than 25 years (but more than 10) the benefit is prorated based on a maximum subsidy being earned with 25 years of service.

As noted earlier, Chapter 397 made additional changes to health benefits provided to State retirees, particularly in the area of prescription drug coverage. First, it authorized the State to establish separate health insurance benefit options for retirees that differ from those for active State employees. In response to the new authority to establish separate coverage for retirees, the Department of Budget and Management established a new Employer Group Waiver Plan, effective January 1, 2014, to provide prescription drug coverage to Medicare-eligible retirees. Employer Group Waiver Plans are authorized under the federal 2003 Medicare Prescription Drug Modernization Act and essentially "wrap" employer coverage around the Medicare Part D prescription drug coverage. Participating retirees are not impacted by any change in their coverage because all interaction between the State plan and Medicare are handled administratively.

Chapter 397 also increased the share of the premium for prescription drug coverage paid by retirees from 20% to 25% (it remained 20% for active State employees) and raised out-of-pocket limits for retirees to $1,500 for a single retiree and $2,000 for family drug coverage (previously, the limit had been $750 for single or family coverage for both active employees and retirees). Finally, it provided that the State would no longer provide prescription drug coverage for Medicare-eligible retirees beginning in fiscal 2020 when a coverage gap in the Medicare prescription drug plan would be closed. Chapter 10 of 2018 (the Budget Reconciliation and Financing Act) accelerated the date for this change in prescription drug coverage for Medicare-eligible retirees to January 1, 2019, as discussed later in this chapter.

Health insurance for retirees is one of the fastest growing areas in the State budget due to an aging population, longer life spans, and increasing health care costs. As illustrated in Exhibit 15.1, retiree enrollment in the State health plan continues to grow faster than active employee enrollment. Retiree enrollment in the State health plan as a percentage of total health plan enrollment increased from 38.4% in fiscal 2014 to 40.6% in fiscal 2017. This trend is expected to continue as the population continues to age and the size of the State workforce remains fairly stable. Retiree enrollment in the prescription plan also increased from fiscal 2014 to 2017 from 39.4% of total enrollment to 41.7%; however, the population enrolled in retiree prescription drug coverage is expected to decrease substantially in fiscal 2020 as Medicare-eligible retirees are transitioned into Medicare Part D prescription drug coverage. Per Chapter 10, non-Medicare-eligible spouses, surviving spouses, dependent children, and surviving dependent children of Medicare-eligible retirees are authorized to continue prescription drug coverage with the State.