## THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Greenbelt)

| | | |
|---|---|---|
| KENNETH FITCH, *et al.*, | * | |
| Plaintiffs, | * | |
| , | | |
| v. | * | CASE NUMBER: 18-02817-JKB |
| STATE OF MARYLAND, *et al.,* | * | |
| Defendant, | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFFS CORRECTED MEMORANDUM IN SUPPORT OF PLAINTIFFS MOTION FOR PERMANENT INJUNCTION/ SPECIFIC PERFORMANCE

**NOW COMES,** the Plaintiffs, by and through their undersigned attorney moves for a Permanent Injunction to allow current and future Medicare Eligible access to the State Employee and Retiree Health Welfare and Benefit Program and Stay the enforcement of any unconstitutional statute or regulation to the contrary.  Plaintiffs states for cause as follows:

Plaintiffs all had at least five (5) years of creditable service with the State of Maryland prior to the enactment of the statutes and regulations at issue and are, vested and eligible to receive a health benefit that includes prescription drug benefits from the State Employee and Retiree Health and Welfare Benefits Program ("Health Program").  During the tenure of employment with the State of Maryland, Plaintiffs were granted certain benefits appurtenant to their status as State of Maryland employees and as part of their overall compensation for employment.  One such benefit is prescription drug coverage through the Health Program.  That is in place and/or maintained by Defendants for the active employees of the State of Maryland on the date which Plaintiffs vest for benefits.

The promise and provision of certain guaranteed health benefits, which include prescription drug coverage, for the duration of their retirement, induced the Plaintiffs and all other similarly situated to continue working as a state of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers.  The legislature for the State of Maryland has codified the retirement benefits afforded to retirees of the State of Maryland.  See Maryland Code Ann. State Personnel & Pensions Ann. § 1-101 *et. seq* ("SPP"). Those codified retirement benefits originally included, amongst other things eligibility for health insurance benefit that expressly includes a prescription drug benefit plan. See SPP §§ 2-502.1 and 2-508; COMAR 17.04.13.05(c)(1).  Those provisions created a contract between Plaintiffs and Defendants, that obligated the State of Maryland to provide health benefits that included a prescription drug benefit plan.

In direct response to the Federal Medicare Prescription Drug, Improvement and Modernization Act of 2003, the Maryland General Assembly reaffirmed its pre-existing contractual relationship with the Plaintiffs by codifying the legislature's intent for the health insurance benefits options to continue the inclusion of prescription drug coverage in 2005.  See SPP § 2-509.1 (2005).[1]  The 2005 codification of the legislative intent makes clear that anyone vested at that time or vested prior to any subsequent amendment would be eligible for participation in a health insurance benefit that included a prescription drug benefit plan.

In 2013, the Legislature altered it reaffirmation in § 2-509.1 to discontinue prescription drug benefits for Medicare eligible retiree in fiscal year 2020 (July 2020). However, the 2013 Amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested at the time of the 2013 Amendment to participate in a health

---

[1]2005 - Maryland Code State Personnel and Pensions Ann. § 2-509.1(2005).
(a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ r2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state

benefit that included a prescription drug benefit plan subsidized by the State of Maryland during the individual's retirement.

Prior to the enactment of the 2013 amendment, SPP § 2-508 required a State of Maryland employee to have worked at least 5 years to be eligible for participation in a health benefit plan that included prescription drug coverage subsidized by the State of Maryland. The terms of the contract between the State of Maryland and State of Maryland employees, including the Plaintiffs, contain the following provisions:

> As to employees with a start date on or before June 30, 2011, "If a retiree receives a State disability retirement allowance or has 16 or more years of creditable service, the retiree or the retirees surviving spouse or dependent child is entitled to the same State subsidy allowed a State employee. In all other cases, if a retiree has at least 5 years of creditable service, the retiree or the retiree's surviving spouse or dependent is entitled to 1/16 of the State subsidy allowed a State employee for each year of the retiree's creditable service up to 16 years."

SPP § 2-508(b)(4)(i) and (ii).

On March 28, 2018, the Maryland General Assembly further amended § 2-509.1. The 2018 amendment, in pertinent part, altered the Legislature reaffirmation in § 2-509.1 to discontinue prescription drug benefit plan for Medicare eligible retirees on January 1, 2019 instead of the beginning of fiscal year 2020 (July 1, 2019). However the 2018 amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested at the time of the 2013 amendment to participate in a health benefit plan that included a prescription drug coverage plan subsidized by the State of Maryland during the individual's retirement.

In May 2018, Plaintiffs were notified by the Department of Budget and Management ("DBM") that were obligated to register for Medicare Part D between October 15, 2018 and December 7, 2018 and would be no longer eligible for participation in the State's Prescription Drug Coverage Plan as of January 2019; a breach of their vested health benefit rights as described above.

On September 10, 2018 the Plaintiffs Kenneth Fitch, Phylis Reinard, Debbie Heim, and Mary Frye filed in the Circuit Court for Baltimore City (Fitch v. Maryland, 24-18-005077) a Complaint framed in five counts for:  (1) Declaratory and Injunctive Relief; (2) Breach of Contract; (3) Unconstitutional Taking: (4) Unconstitutional Impairment of Contracts under Federal Law; (5) Unconstitutional Impairment of Contracts under State Law; and (5) Violations of the Equal Protection and Due Process Clause.  The Complaint named the State of Maryland, the Governor of Maryland, Larry Hogan, and the Secretary of the Department of Budge and Management, David Brinkley, as Defendants.

On September 11, 2018, the Defendants removed the action to the U.S. District Court for the District of Maryland. The Court granted a Preliminary Injunction in favor of the Plaintiffs on October 10, 2018 and the Order was entered on October 16, 2018.  The Court made the following findings:

   a. that the Plaintiffs would suffer irreparable harm if the program terminates by the loss of their prescription drug benefits;

   b. the balance of equities was in Plaintiffs favor since they would have to go out and get an entirely new plan where all that was required from the Defendants was to keep the program operating;

   c. the public interest issue is really whether in this kind of situation, benefits such as prescription drug benefits can be terminated after employees have met all the creditable service that they are expected to have; and

   d. that there was sufficient showing by the Plaintiffs that a contract existed and that the Plaintiffs may prevail on the merits with regard to a breach of contract claim based not only on the language of the statute but also by common law principles of contract

In May of 2019, the Maryland Legislature amended SPP § 2-509.1 again.[2]  The 2019 amendment did not materially alter the impairment of obligation of the 2013 Amendment. The 2013 Amendment still eliminated the Maryland RX program and forced State retirees who are disabled or 65 and older to move onto Medicare Part D.   It also placed unreasonable conditions on prescription drug coverage for current vested employees by requiring participation in programs that were vastly dissimilar to their earned benefit. By requiring retirement by December 31, 2019, the State bifurcated the affected current vested employees. The 2019 Amendment, in pertinent part, again altered the Legislature's reaffirmation in§ 2-509.1 to discontinue the prescription drug benefit plan and created the Maryland State Retiree Prescription Drug Coverage Program ("the Prescription Program"), the aptly named Maryland State Retiree Catastrophic Prescription Drug Assistance Program ("the Catastrophic Program") and the Maryland State Retiree Life-Sustaining Prescription Drug Assistance Program ("the Life-Sustaining Program") ("collectively 2019 Programs").

None of these programs are vaguely similar to the program that the State employees vested. The Prescription Program requires you to pay for your medication and then submit them to the State for reimbursement using procedures the program that have not been developed. SPP § 2-509.1(d)(1-4)(2019) The Catastrophic Program will allow reimbursement once the retiree reaches the Catastrophic Phase which Medicare indicates will be $6350.00 in 2020.  SPP § 2-509.1(e)(1-4). Prior to reaching that stage, all out of pocket costs are borne by the state retiree. The Life-Sustaining program that has not been established will reimburse the retiree for out of pocket costs for life sustaining prescription drugs; though those drugs have not been outlined, nor a list developed.   SPP § 2-509.1(f)(1-4). Two of these programs actively discriminated against eligible current employees who vested into the Health Program and whom AFSCME seeks to represent, by effectively bifurcating the

---

[2] Acts 2019, c. 8, § 5, in (h)(3) and (j), corrected cross-references; Acts 2019, c. 767, § 2,

eligible class of current employees in violation of the Equal Protection Clause made applicable by the Fourteenth Amendment of the U.S. Constitution.[3] However the 2019 Amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested at the time of the 2014 amendment to participate in a health benefit program that included a prescription drug coverage plan subsidized by the State of Maryland during the individual's retirement.

On November 1, 2019 the American Federation of County and Municipal Employees ("AFSCME") sought intervention to represent current vested employees in this action.

## Standard of Review

"In seeking a permanent injunction, a plaintiff must satisfy a four-factor test, to demonstrate: (1) that he "has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Doe v. Salisbury University, 123 F. Supp. 3d 748 - Dist. Court, D. Maryland 2015 quoting eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

## ARGUMENT

The Court should grant Plaintiffs request for Permanent Injunction because the General Assembly created a contractual right to prescription drug benefits for retirees by reason of SPP § 2-

---

[3] For eligible current employees who wanted the Prescription program:
2-509.1 (d)(1)(ii) if the retiree is retired on or before December 31, 2019;
For eligible current employees who could not retire by December 31, 2019:
2-509.1(e)(1-2) (ii) if the retiree:
1. began State service on or before June 30, 2011;
2. retired on or after January 1, 2020; and

509.1 if State employees met the required standards.   The State cannot take away that benefit retroactively.   By doing so, the State has violated the Contracts Clause under the United States Constitution.  By doing so without compensation the State has violated the Takings Clause under the United States Constitution.

In general, a statute is itself treated as a contract when the language and circumstance evince a legislative intent to create private rights of a contractual nature enforceable against the State. Andrews v. Anne Arundel County, Md., 931 F. Supp 1255, 1260 (D. Md. 1996)(citing United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 17 (1977).  In addition, statutes governing the interpretation and enforcement of contracts may be regarded as forming part of the obligations of contracts made under their aegis. Id.   Here, Maryland reaffirmed its pre-existing contractual relationship with the Plaintiffs by codifying the intent of the legislature to provide prescription drug coverage during their retirement.  The terms of the contract were clear and unambiguous as outlined in the statute.  "The State **shall** continue to include a prescription drug plan in the health insurance benefit options established under the Program and available to retirees under §§ 2-508 and 2-509 of this subtitle…" SPP § 2-509.1(2005)(emphasis added.)   The operative word in this statute is "shall". Maryland courts have consistently held that the use of "shall" in a statute means that the requirements set forth by the statute are mandatory. See Johnson v. State, 282 Md. 314, 321 (1978) (Stating that use of the word "shall" in a statute "denotes an imperative obligation inconsistent with the exercise of discretion."); Moss v. Director, 279 Md. 561, 564-65 (1977) ("It is now a familiar principle of statutory construction in this State that the use of the word `shall' is presumed mandatory unless its context would indicate otherwise . . ."); G&M Ross Enterprises, Inc. v. Bd. of License Comm'rs of Howard Cty., 111 Md. App. 540, 543 (1995) (explaining that "use of the word `shall' is ordinarily presumed to be mandatory."); Robinson v. Pleet, 76 Md. App. 173, 182 (1988) ("Unless the context indicates otherwise, `shall' and `must' will be construed synonymously to foreclose discretion" and "impose a

positive absolute duty.") The use of the word "shall" in the context of SPP § 2-509.1 gave rise to the justified expectation on behalf of all current and future State retirees that once they met the requirements for vesting, they had a valid property interest in this benefit for the duration of their retirement. This is further evidenced by the remainder of the terms of the statute. "...[N]otwithstanding the enactment of the federal Medicare Prescription Drug Improvement and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state." SPP § 2-509.1(2005). "When the words are clear and unambiguous, there is no need to search further." See Whiting-Turner, 366 Md. at 301, 783 A.2d at 670.

These words demonstrate the intent of the General Assembly. The purpose of this legislation was to ensure that State employees who retired disabled or had reached the age of 65 would enjoy prescription drug coverage offered by the State regardless of any subsequent federal laws inclusive of Medicare. This legislation passed unanimously making subsequent amendments that retroactively eliminated the State retirees' property interest are unconstitutional.

A law is thus unconstitutional when the law (1) impairs a contract, (2) "operate[s] as a `substantial impairment of a contractual relationship,'" and (3) if there has been a substantial impairment, whether the impairment is permissible because it is "reasonable and necessary to serve an important public purpose." Cherry v. Mayor & City Council of Baltimore City, 762 F.3d 366, 371 (4th Cir. 2014) (quoting Baltimore Teachers Union v. Mayor & City Council of Baltimore, 6 F.3d 1012, 1015, 18 (4th Cir. 1993)).

1. **The Enactment of the Statutes at Issue Impairs the Contract that Exists between the State and State Employees who vested in the Program**.

Central in the long line of government employment cases is the concept of vesting. Vesting is an important and simple concept. Black's Law Dictionary defines "vested" as "[h]aving become a completed, consummated right for present or future enjoyment, not contingent; unconditional; absolute." Black's Law Dictionary (3rd Pkt. Ed. 2006). Maryland precedent is consistent with this definition. When Plaintiffs worked over 5 years of creditable service, they would receive a subsidy for health and welfare benefits including prescription drug coverage. Plaintiffs fulfilled this condition. At that time, Plaintiffs rights to the subsidy became vested. This vesting and the Statute created a contract with the State. The Defendant could not then reduce the benefits after treating the Program as a lifetime contractual benefit, using words of contract. See § 2-509.1(2005).

The Plaintiffs assert that the diminution of their earned benefit does not qualify as "reasonable modifications" under Maryland law. SB946 did not merely modify or replace the old law with a comparable plan, the new law was an outright repeal which eliminated the earned benefit and thus impaired the State's obligation. SPP § 2-509.1(b)(2019)[4]. A very important prerequisite to the applicability of the Contract Clause to an asserted impairment of a contract by state legislative action is that the challenged law operates with retrospective, not prospective effect. United States Trust Co. explicitly restates the existence of statutory retroactivity as a necessary predicate for the applicability of the Contract Clause. United States Trust Co., 431 U.S. at 18 n. 15, 97 S. Ct. at 1515 n. 15. Plaintiff

---

[4] 2-509.1(2019)
Discontinuance of benefits for Medicare-eligible retirees
(b) Except as provided in subsection (c) of this section, on January 1, 2019, the State shall discontinue prescription drug benefits for:
(1) a Medicare-eligible retiree;
(2) the Medicare-eligible spouse or surviving spouse of a retiree; and
(3) a Medicare-eligible dependent child or surviving dependent child of a retiree.

Class' Constitutional rights were violated by the unilateral reductions to the vested contractual benefits that were applied retroactively and are contained in § 2-509.1(2019).

2. **The passage of the 2013 and 2019 Amendments to SPP § 2-509.1 Operate as a Substantial Impairment to the Contractual Relationship codified by the Statute.**

When it comes to pension or like benefits, the Federal District Court in Maryland has found that any diminution in already-earned benefits is likely to be substantial.  To determine the degree of impairment, the primary measure is "the reliance which the aggrieved party placed on the contractual obligation."  Andrews v. Anne Arundel County, 14 F. Supp 2d 752 (Dist. Md. 1998).  Any reduction or like benefits is likely to be significant given that "individuals plan their lives [based upon these benefits]. Id.

 As evidenced by the affidavits submitted herein, State Retirees relied on this benefit to be available during their retirement. The Plaintiffs continued their employment as state of Maryland employees in exchange for certain deferred compensation from the State, including but not limited to retirement benefits and guaranteed health insurance benefits, which include prescription drug coverage, throughout the duration of their retirement. That promise and provision of certain guaranteed health benefits, which include prescription drug coverage for the duration of their retirement, induced the Plaintiffs and all other similarly situated to continue working as a state of Maryland employees and forgo additional options and opportunities for employment and benefits from other employers.  Now when these retirees are at their most vulnerable and when the door to employment has been irrevocably closed due to age or disability, the General Assembly has retroactively eliminated a vested necessary benefit that is paramount to maintaining their life.

Reducing the availability of the benefit is an unconstitutional violation of the Takings Clause of the Fifth Amendment of the US Constitution made applicable to the action complained of by the Plaintiffs by the Fourteenth Amendment.  That injury is substantial and touches each member of the

class irrespective of the amount of service (if five years or more) or the amount of each individual's prescription cost outlay.

### 3. The Defendants elimination of prescription drug coverage is not reasonable and necessary to serve an important public purpose.

Any reduction in benefits "must be balanced by other benefits or justified by countervailing equities for the public's welfare." <u>Cherry v. Mayor and City Council of Baltimore City</u>, 762 F. 3d 366 (4th Cir 2014) quoting <u>City of Frederick v. Quinn</u> 371 A. 2d at 726.  Under Maryland law, the contract or vested rights of employees "are subject to a reserved legislative power to make reasonable modifications in the plan, or to indeed modify benefits if there is a simultaneous offsetting new benefit…" A State could not "adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them." <u>Id.</u> at 439.  The General Assembly could have adopted alternative means in achieving their goals. This issue was created not by the lack of money, but the lack of will to reduce spending in other areas.  The earned benefit was an obligation of the State that could not be eliminated because the money realized by the removal of the Program gives the General Assembly additional revenue for other expenditures.  The State could have raised the cost of the insurance, raised the costs of the premium, grandfathered in all vested employees, bargained for health plans that included prescription drug coverage that would reduce the overall cash outlay, or reduced overall spending but the State of Maryland chose none of these options.  Instead they removed the most vulnerable of their employees from a program that would allow them to live longer. In addition, programs that were implemented that drained already promised revenue to the Program could have been eliminated.  "A state is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well."   <u>United States Trust Co</u>. 431 at 29. The Defendants had a wealth of alternatives to choose from instead they chose to proceed against

State retirees who had an earned vested interest in this benefit and be punished due to their inability to access to prescription drug coverage.

"Legislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption." Home Building & Loan Assn v. Blaisdell, 290 U.S. 398 (1934). "Whatever the propriety of a State's binding itself to a future course of conduct in other contexts, the power to enter into effective financial contracts cannot be questioned. Any financial obligation could be regarded in theory as a relinquishment of the State's spending power, since money spent to repay debts is not available for other purposes." United States Trust Co. 431 US 1, 21 (1977). The States should be bound by its contract and Plaintiffs assert that obligation to ensure continued coverage still exists. If the State fails to continue covering State Retirees than a material breach to their contract exists. However only specific performance by the Defendants can cure this breach.

Notwithstanding, the ongoing obligation of the State towards the State retirees, the State is now considering a 4 trillion-dollar expenditure along with other expenditures and this consideration belies the contention that there is not enough money to continue to fund the Program that delivers prescription drug coverage to retired State workers. The elimination of this Program serves no public purpose other than to cull the sick and elderly from the pension roles.

A.      **Plaintiffs will suffer Irreparable Injury**

"While irreparable harm is only one of the four factors courts must consider in determining whether to grant injunctions, the Supreme Court has made clear that, regardless of the other factors, "[t]he equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury." City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983).

For the reasons stated above, the Plaintiffs are entitled to this contractual right. Upon information and belief, once the Plaintiffs register for Medicare Part D prescription drug coverage,

they will be unable to return to the state prescription drug coverage plan which they are contractually entitled. Irreparable harm occurs immediately when access is barred to the Program and State Retirees must join the Medicare Part D system. As the affidavits submitted herewith evidence the Plaintiffs will immediately realize increases in prescription costs of between 100 and 50,000 times their previous costs since Maryland offers a better program than is currently offered by Medicare. When planning post-employment expenses, Plaintiffs and all those similarly situated were not given the opportunity to plan for this contingency during their employment.

Prior to this legislation, the Plaintiffs did not have to register through a Federal government website for their prescription drug coverage. Unless the Plaintiffs wished to change their health care provider, they were not required to do anything to maintain their prescription drug coverage. Now the Plaintiffs will have to enroll in Medicare Part D system every year to maintain a limited form of prescription drug coverage. At a time when retirees are getting older, some with debilitating cognitive issues, this retroactive legislation will ensure that State Retirees will not maintain prescription drug coverage. The enactment of these laws threatens the financial and retirement security of thousands of state retirees for little public benefit. It is not in the public interest for the General Assembly to retroactively remove an earned benefit with a law that did not exist at the time of employment. The General Assembly has re-written an existing contractual obligation to the point where it eliminated the obligation at the great detriment of the beneficiaries with the approval of the Governor and the enforcement by the Secretary of DBM. The modification under SB946 just doesn't reduce the benefit, it denies its existence altogether.

As well as the elimination of a vested benefit, the enactment of SB946 caused irreparable injury to all vested State employees who retired on or before December 1, 2019. These employees were denied the freedom to choose the time of their retirement, an essential liberty protected by the Due Process Clause. The constitutional right to privacy extends to two types of interests: "one is the

individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Walls v. City of Petersburg, 895 F. 2d 188 (COA 4th Cir 1990) quoting Whalen v. Roe, 429 U.S. 589, 599-600, 97 S. Ct. 869, 876-877, 51 L.Ed.2d 64 (1977). The State's action directly affected the rights of current employees and imposed a restraint on their liberty and privacy interest in their retirement decision by a forcing a bifurcation of the current employee class.[5] That bifurcation occurred because of a December 31, 2019 retirement decision requirement in SB946.   When the decision or the information sought is "fundamental," regulation "may be justified only by compelling state interests and must be narrowly drawn to express only those interests." Id.  "[W]here there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling.") Gibson v. Florida Investigation Committee, 372 U. S. 539, 546, 83 S. Ct. 889, 893, 9 L. Ed.2d 929, 935-936 (1963).  Here the State cannot present a compelling interest which would justify the encroachment on current employees right to determine their post-employment financial future based on an unconstitutional law that eliminated a property right retroactively.

The named Plaintiffs stayed with the State of Maryland upon reliance of the benefits offered in retirement and altered their retirement plans with respect to spousal and dependent survivor benefits in reliance of this contract. The reduction of this benefit and the unexpected, additional financial expenditures Plaintiffs will have to face could represent a substantial portion of a monthly mortgage or rental payment, or weeks of food. Its inevitable result is penury, welfare and bankruptcy. The Defendants' elimination of the health benefit that included a prescription drug coverage program injured all class members This injury touches each member of the class irrespective of the extent that is necessary for coverage or the amount of each individual's prescription cost outlay.

---

[5] Prior to December 1, 2019 vested current employees were forced to choose a retirement date based on newly enacted prescription drug programs.  Those employees who failed to retire by December 31, 2019 were subjected to a more restrictive prescription drug program.

**B.     Plaintiffs assert that remedies available at law, such as monetary damages, are inadequate to compensate for the injury sustained by the elimination of their earned benefit.**

Where a state statute inhibits constitutional rights, and its enforcement will deprive of a plaintiff of those rights, the threat to enforce that statute constitutes "a continuing unlawful restriction upon and infringement of the rights" of the plaintiff as to which he has "no remedy at law which is as practical, efficient or adequate as the remedy in equity." Terrace v. Thompson, 263 U.S. 197, 215, 44 S. Ct. 15, 68 L. Ed. 255 (1923) (upholding injunction to end statute's ongoing inhibition of due process rights.)  The issue is compounded by the market fluctuations of prescription drug costs, creating an uncertainty about the amount of any money damages.  The percentage or fraction of the subsidy afforded to active employees is calculable in value, however that value is far less than the availability of the options in which Plaintiffs had vested.  In other words, the choice presented to State Retirees has diminished value because by eliminating that option, the Defendants, have subjected the Plaintiffs to market forces and fluctuations that they previously contracted to avoid. Monetary relief cannot correct this injustice.  Equitable relief in the form of a permanent injunction is the only avenue to make all retirees who vested in the benefit, whole. There are no remedies at law that will restore a health benefit that includes prescription drug coverage to State Retirees.  The absence of effective remedies at law makes a permanent injunction appropriate in this case.


**C.     Considering the balance of hardships between the Plaintiffs and Defendants, a remedy in Equity is Warranted.**

The Plaintiffs have a contractual right to a prescription drug plan that has the same co-pays, coinsurance and deductible that applied to the prescription drug coverage that applies to active State employees.  COMAR 17.04.13.05.  Deprivation of this contractual right, which is codified in SPP § 2-

508 and the above cited regulations for any period of time, is an infringement on a vested contractual right which cannot be remedied by money judgment and is only avoided by maintaining the Plaintiffs' prescription drug coverage. It was the intent of the General Assembly to reaffirm this contract by codifying the preservation of this benefit and, absent a showing of a compelling public necessity, the State should continue to do so.

If SB946 is enacted, thousands of state retirees will lose their earned prescription drug benefits entirely and be forced onto Medicare Part D.  If litigation regarding the Affordable Care Act[6] is successful, Medicare Part D could be drastically curtailed, even eliminated, leaving these retirees without any prescription drug coverage at all.[7] Plaintiffs are not physically or financially able to assume this burden at their stage in life.  It is a fact that time does not stand still for anyone and that as people age, the body deteriorates.  Removing this benefit during their most vulnerable stage in life will cause irreparable injury.  Conversely, the State, who has a contractual obligation to provide this benefit will have satisfied its debt to its employees and maintain the welfare and well-being of its citizens.

The State will argue that although they have not fully funded the program up to this point, that it will be prohibitive for them to do so now.  Plaintiffs assert that just this year, the Governor has announced almost 300 million in additional spending.  Defendants have the means and the methods to keep their promise, all they lack is the will since the enactment of these Amendments can only be viewed as self-serving to the State.  Past budgets of the State of Maryland have shown that the monies that have or will be earmarked for the Program will be channeled into new spending (not payment of existing obligations) and a prime example is the proposed funding for the Kirwan commission. The State is willing to commit to 4 billion dollars in new expenses over 10 years but cannot uphold their

---

[6] Patient Protection and Affordable Care Act, 42 U.S.C. § 18001 et seq. (2010)
[7] Texas v. U.S. No. 19-10011(US Court of Appeals for Fifth Circuit). On appeal from the U.S. District Court for the Northern District of Texas No. 4:18-cy-167-O

contractual obligation to State Retirees in the amount of 10 billion dollars for forty years.[8] Any statement by the Defendants that the State of Maryland does not have the resources to meet their obligations has been rendered moot in consideration of the State's willingness to accumulate new debt but not adhere to the contractual obligations formed in the past.[9]

The Plaintiffs assert that in balancing the hardships between the parties, the Plaintiffs loss of their property right in this benefit will drive thousands into poverty versus no real articulable argument from the Defendants as to why it cannot adhere to the contract that it codified into law, the Court should issue a permanent injunction in favor of the Plaintiffs.

   D.     **The Public Interest would not be disserved by a Permanent Injunction.**

It is in the public interest to prevent application of a statute and regulation, likely to be found unconstitutional. Giovani Carandola, Ltd. v. Bason, 147 F. Supp. 2d 383 (M.D.N.C. 2001). Finally, the public interest is best served when representatives and agencies of the state are operating under lawful orders and by lawful means.  The public interest is not served when a state agency or unit operates, at least in part, pursuant to an invalid rule or order and sentences public employees who retired from the state to shortened life sentence so that money for their Program can be used elsewhere.  Upholding the constitutional rights of State Retirees serve the public interest.

   E.     **Conclusion**

A contract exists between the State and State employees who vested in the prescription drug coverage through the Health Program.  If the Court does not issue a permanent injunction, State retirees will suffer irreparable injury by not having access to prescription drug coverage that they earned through their employment with the State.  The State will not suffer hardship if the enactment of SB946 is stayed and sustaining the life of the disabled and elderly who retired from State service is

---

[8] SB946 Fiscal and Policy Note
[9] See 2020 Fiscal Budget - https://governor.maryland.gov/2019/01/17/governor-larry-hogan-announces-fiscal-year-2020-budget/

in the public interest.  No person who has worked and vested in this benefit should be denied access

to this benefit because of an unconstitutional, arbitrary and unilateral modification of the benefit that

was retroactively applied.

Respectfully,

*/s/ Deborah Hill*

_____
Deborah A. Holloway Hill (#28384)
111 Warren Road, Suite 7B
Cockeysville, MD 21030
O: 410.428.7278
F:  866.499.6906
DAHHLaw@outlook.com

*Attorney for Plaintiffs*

.