**IN THE US DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(GREENBELT)**

| | |
|---|---|
| KENNETH FITCH, PHYLIS REINARD, | * |
| DEBORAH HEIM, MARY FRYE, ALVIN RIVKIN, | |
| HOWARD KILIAN, MICHAEL BRIDGET, | * |
| DEBORAH MONROE, DEBORAH GARLITZ, | |
| *and all individuals similarly situated,* | * |
| Plaintiffs, | |
| | * |
| v. | |
| | * |
| STATE OF MARYLAND | |
| c/o Office of the Attorney General | * |
| 200 St. Paul Place | |
| Baltimore, Maryland 21202 | * |
| Defendant, | |
| | * |
| GOVERNOR LARRY HOGAN | |
| c/o Office of the Attorney General | * |
| 200 St. Paul Place | |
| Baltimore, Maryland 21202 | * |
| *In his Official and Individual Capacity* | |
| Defendant, | * |
| | |
| SECRETARY DAVID R. BRINKLEY | * |
| Department of Budget and Management | |
| c/o Office of the Attorney General | * |
| 200 St. Paul Place | |
| Baltimore, Maryland 21202 | * |
| *In his Official and Individual Capacity* | |
| Defendant, | * |
| | |
| NANCY KOPP, STATE TREASURER, | * |
| CHAIRMAN OF THE SRPS BOARD OF TRUSTEES | |
| c/o Office of the Attorney General | * |
| 200 St. Paul Place | |
| Baltimore, MD 21202 | * |
| *In her Official and Individual Capacity* | |
| Defendant, | * |
| | |
| PETER FRANCHOT, STATE COMPTROLLER, | * |
| VICE CHAIR OF SRPS BOARD OF TRUSTEES | |
| c/o Office of Attorney General | * |
| 200 St. Paul Place | |
| Baltimore, MD 21202 | * |

1

*In his Official and Individual Capacity*
           Defendant,

SRPS BOARD OF TRUSTEES                                *
PENSION SYSTEM
c/o Office of Attorney General                              *
200 St. Paul Place
Baltimore, MD 21202                                  *
                              Defendant,
                                      *

*     *     *     *     *     *     *     *     *     *     *     *     *

## THIRD AMENDED COMPLAINT FOR
## DECLARATORY JUDGMENT & OTHER RELIEF

**NOW COMES,** the Plaintiffs, Kenneth Fitch, Phyliss Reinard, Mary Frye, Deborah Heim,

Alan Rivkin, Howard Kilian, Michael Bridget, Deborah Monroe, Deborah Garlitz and Debra

Kisamore, through the undersigned legal counsel, and complain on behalf of themselves and all

those similarly situated, (collectively "Plaintiffs") against Defendants, State of Maryland,

Governor Larry Hogan, Secretary David R. Brinkley, State Treasurer Nancy Kopp, State

Comptroller Peter Franchot and the Board of Trustee of the State Retirement Pension System and

states as follows:

## INTRODUCTORY STATEMENT

This action seeks to protect and restore the contractual and constitutional rights of man

long-serving retired employees of the State of Maryland and ensure their future right to hard earned

prescription drug coverage maintained by a financially solvent system.    The named Plaintiffs,

through their service to the State of Maryland, earned vested rights to access the Maryland State

Employee and Retiree Health Welfare and Benefits Program ("Health Program") administered by

the Maryland State Department of Budget and Management ("DBM") for the duration of their

retirement. The Defendants have or will breach their contracts with the Plaintiffs and have

2

impaired the Plaintiffs constitutional rights by passage of (1) the 2019 Maryland Laws 767 § 2, requiring Plaintiffs' election to Medicare Part D coverage and barring access to the Maryland State Health based upon Plaintiffs current and future Medicare eligibility; and (2) passage of the Budget and Reconciliation Act of 2020 that diverts the employer contribution appropriated for the Other-Post Employments Benefits Trust Fund ("OPEB Trust") that funds the Health Program. On behalf of themselves and all other similarly situated vested retirees, the Plaintiffs move the Court to reinstate the contractually and constitutionally protected rights to participation in the Health Program and seeks the return of the employer contribution appropriated for the OPEB Trust fund by requiring the Defendants to follow the statutory guidelines for funding.

**PARTIES**

1.      That the Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

2.      The Plaintiff Kenneth Fitch, a citizen of Maryland and is a resident of Baltimore County for more than one (1) year preceding the commencement of this action. Plaintiff began his employment with the State of Maryland in 1989 and after 23 years of service retired in 2012. Plaintiff Fitch's medications currently cost approximately $930.00 in co-pays per year. If he is forced to choose Medicare Part D in open enrollment, the costs of his medications will increase to $11,683.10. Plaintiff Fitch vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during his employment and is a beneficiary of the OPEB Trust Fund after retirement.

3.      The Plaintiff, Phylis Reinard is a resident of North Carolina. Plaintiff Reinard began her employment with the State of Maryland in 1980 and retired after 33 years of service in 2013. Plaintiff Reinard's medication currently cost approximately $760 a month annually in co-

3

pays. If she is forced to choose Medicare Part D in open enrollment, the costs of her medications will increase to $11,741.05 in January of 2019. Plaintiff Reinard vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during her employment and is a beneficiary of the OPEB Trust Fund.

4.     The Plaintiff Deborah Heim is a citizen of Maryland, and a resident of Charles County. Plaintiff Heim began her employment with the State of Maryland in 1997 and retired after 21 years of service in July of 2018. Plaintiff Heim paid $30,000 in April of 2018 to receive full health benefits that includes prescription drug coverage when she retired. In June 2018, Plaintiff Heim was informed that her coverage was terminated. Plaintiff Heim vested in the Health Program and was a mandated participant of the State Retirement and Pension System during her employment and is a beneficiary of the OPEB Trust Fund after retirement.

5.     The Plaintiff Mary Frye is a citizen of Maryland and a resident of Charles County. Plaintiff Frye began her employment with the State of Maryland in 1976 and retired after 32 years of service in 2009. Plaintiff Frye's medication currently costs approximately $73.00 a month in co-pays. If she is forced onto Medicare Part D for prescription drug coverage, the costs of her medication will increase to $2017.00 a month. Plaintiff Frye vested in the Health Program and is a beneficiary of the OPEB Trust Fund after retirement.

6.     The Plaintiff Alan Rivkin is a citizen of Maryland and a resident of Baltimore County, Maryland. Plaintiff Rivkin began his employment with the State of Maryland on April 5, 1978 and retired after 38 years of State service in 2016. Plaintiff Rivkin vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during his employment and is a beneficiary of the OPEB Trust Fund after retirement.

4

7.    The Plaintiff Howard Kilian is a citizen of Maryland and a resident of Harford County, Maryland. Plaintiff Kilian began his employment with the State of Maryland in 1973 and retired after 31 years of State service. If forced onto Medicare Part D for prescription drug coverage his cancer drug cost will be over $13,000 a year. Plaintiff Kilian vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during his employment and is a beneficiary of the OPEB Trust after retirement.

8.    The Plaintiff Michael Bridgett is a citizen and resident of Maryland. Plaintiff Bridgett began his employment with the State of Maryland in 1988 and retired after 35 years of State service on November 28, 2019. Plaintiff Bridgett vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during his employment and is a beneficiary of the OPEB Trust after retirement.

9.    The Plaintiff Deborah Monroe is a citizen and resident of Maryland.    Plaintiff Monroe began employment with the State of Maryland in August 1976 and retired after 43 years of state service. Plaintiff Monroe vested in the Health Program prior to 2011 and was a mandated participant of the State Retirement and Pension System during her employment and is a beneficiary of the OPEB Trust Fund after retirement.

10.    The Plaintiff Deborah Garlitz is a citizen and resident of Maryland and is currently employed with the State of Maryland as an employee with the Maryland Department of Public Safety and Correctional Services. She has already completed 24 years of State service prior to this filing and has not retired. Plaintiff Garlitz vested in the Health Program prior to 2011 and is a mandated participant of the State Retirement and Pension System and will become a beneficiary of the OPEB Trust Fund upon retirement.

5

11.     The Defendant Governor Larry Hogan is presently the Governor of the State of Maryland and is ultimately responsible for the actions of his cabinet member, the Secretary of Budget and Management.

12.     The Defendant David R. Brinkley is presently Secretary for the Department of Budget and Management for the State of Maryland and is an ex officio member of the State Retirement and Pension System Board of Trustees ("SRPS Board"). The Secretary is charged with development and administration of the Health Program.

13.     The Department of Budget and Management ("DBM") administers retiree health benefits that includes prescription drug coverage.

14.     The Defendant State Retirement and Pension System Board of Trustee ("SRPS Board") is a body politic and corporate, organized, and existing pursuant to Md Code Annot. Personnel & Pensions Articles ("SPP"). The SRPS Board is charge with the general administration and responsibility for the proper operation of the State Retirement and Pension System pursuant to the Articles in Division II of State Personnel & Pensions code.

15.     The Defendant, Nancy K. Kopp, the Treasurer for the State of Maryland and as such is an *ex officio* member and Chairman of the SRPS Board.

16.     The Defendant, Peter Franchot is the Comptroller for the State of Maryland and as such is *ex officio* member and Vice Chair of the SRPS Board.

### CLASS ACTION ALLEGATIONS

17.     Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiffs seek to represent in this action are:

### A. Proposed Class

All current or future Medicare-eligible State retiree who vested in the Maryland State Employee and Retiree Health, Welfare and Benefit Program on or before July 1, 2011.

18.     This class is ascertainable and there is a well-defined community of interest among the members of the class. Furthermore, the members of the class are so numerous (approximately 90,000) that joinder of all members of the class is impractical.

19.     Questions of law and fact, common to the members the class predominate over any questions affecting only an individual member or group of members of any class.

20.     The claims of Plaintiffs are claims of all members of the Class, as all members of the Class are similarly affected by Defendants wrongful conduct in violation of federal and state law, as alleged herein.

21.     Plaintiffs will fairly and adequately protect the interests of the class, as that Plaintiffs have no interests that are antagonistic to other members of any class and have retained competent counsel.

22.     The members of the class are entitled to injunctive, declaratory, and other relief for the wrongful acts of the Defendants.

23.     The Defendants have acted or refused to act and will continue to act or refuse to act, on grounds applicable to each class thereby making appropriate injunctive or declaratory relief with respect to each class as a whole.

24.     Separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the Defendants.

25.     This class action is superior to the alternatives, for the fair and efficient adjudication of this controversary. Prosecution as a class action, will avoid repetitious litigation. There will be no material difficulty in maintaining this action as a class action.

## FACTUAL ALLEGATIONS

26.     That the Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

27.     The Plaintiffs all have at least five (5) years of creditable service with the State of Maryland prior to the enactment of the Statutes and Regulations at issue and are vested and eligible to receive prescription drug benefits from the Health Program.

28.     During the tenure of employment with the State of Maryland, all Plaintiffs were granted certain benefits appurtenant to their status as State of Maryland employees and as a part of their overall compensation for employment.

29.     Plaintiffs continued their employment as State of Maryland employees in exchange for certain deferred compensation from the State, including but not limited to retirement benefits and guaranteed health insurance benefits which includes prescription drug coverage throughout the duration of their retirement.

30.     The promise and provision of certain guaranteed health benefits, which include prescription drug coverage, for the duration of their retirement induced Plaintiffs, and all other similarly situated, to continue working as a State of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers.

31.     One such benefit is a health benefit that includes prescription drug coverage through the Health Program that is in place and maintained by Defendants on the date which

8

Plaintiffs vest for benefits. Another is the stability and solvency of the OPEB Trust Fund that pays for that benefit for the duration of the State employee's retirement.

## MARYLAND HEALTH PROGRAM

32.    The legislature for the State of Maryland has codified the retirement benefits afforded to retirees of the State of Maryland. Maryland Code Annot. State Personnel & Pensions §1-101 *et. seq.*

33.    Those codified retirement benefits originally included, amongst other things, eligibility for a health insurance benefit that expressly includes a prescription drug coverage benefit plan. SPP §§ 2-502.1 and 2-508; COMAR 17.13.05(c)(1). These provisions created a contract between Plaintiffs and Defendants, including the State of Maryland, that obligated the State of Maryland to provide health benefits that included a prescription drug coverage benefit plan.

34.    In direct response to the Federal Medicare Prescription Drug Improvement and Modernization Act of 2003, the Maryland General Assembly reaffirmed its pre-existing contractual relationship with the Plaintiffs by codifying the legislature's intent for Health insurance benefits option to continue the inclusion of a prescription drug coverage benefit plan in 2005. SPP § 2-509.1.[1]

35.    In 2005 codification of the legislative intent makes clear that anyone vested at the time or vested prior to any subsequent amendment would be eligible for participation in a health insurance benefit that included a prescription drug coverage benefit plan.

---

[1] 2005 - Maryland Code Annot. State Personnel and Pensions § 2-509.1 (2005).
(a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ r2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state

36.     That in 2013, the legislature altered its reaffirmation in § 2-509.1 to discontinue prescription drug benefits for Medicare eligible retirees in fiscal year 2020.[2]

37.     However the 2013 amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested at the time of the enactment of the 2013 amendment to participate in a health benefit plan that included a prescription drug coverage benefit plan subsidized by the State of Maryland during the individual's retirement.

38.     Prior to the enactment of the 2013 amendment, SPP § 2-508 required a State of Maryland employee to have worked at least 5 years to be eligible for participation in a health benefit plan that included a prescription drug coverage benefit plan subsidized by the State of Maryland.

39.     The terms of the contract between the State of Maryland and State of Maryland employees, including the Plaintiffs contain the following provisions:

> "As to employees with a start date on or before June 30, 2011, "If a retiree receives a State disability retirement allowance or has 16 or more years of creditable service, the retiree or the retirees' surviving spouse or dependent child is entitled to the same State subsidy allowed a State employee.  In all other cases, if the retiree has at least 5 years of creditable service, the retiree or the retiree's surviving spouse or dependent is entitled to 1/16 of the State

---

[2] 2013 - Maryland Code State Personnel and Pensions Ann. § 2-509.1 (2013).
(a) Enrollment in Program -- Prescription drug benefit plan. -- The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available retirees §§ r2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state
(b) Discontinuance of benefits in 2020. -- The State shall discontinue prescription drug benefits for Medicare-eligible retirees in fiscal year 2020

subsidy allowed a State employee for each year of the retiree's creditable

service up to 16 years."

Md. Code Annot. State Personnel & Pensions § 2-508(b)(4)(i) and (ii).

40.     On March 28, 2018, the legislature further amended SPP § 2-509.1. The 2018 Amendment, in pertinent part, altered the legislature's reaffirmation in § 2-509.1 to discontinue prescription drug coverage benefit plan for Medicare eligible retirees on January 1, 2019.

41.     However, the 2018 amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who had already vested at the time of the 2013 amendment to participate in a health benefit plan that included a prescription drug coverage benefit plan subsidized by the State of Maryland during the individual's retirement.

42.     In May of 2018, the retired Plaintiffs were notified by DBM that they were obligated to register for Medicare Part D and would no longer be eligible for participation in the State's prescription drug coverage plan; a breach of their vested health benefit rights as described above.

43.     On September 10, 2018, Plaintiffs filed in the Circuit Court for Baltimore City (Fitch v. Maryland, 24-18-005077) a complaint framed in five counts for (1) Declaratory and Injunctive Relief; (2) Breach of Contract; (3) Unconstitutional Taking; (4) Unconstitutional Impairment of Contracts under Federal Law; (5) Unconstitutional Impairment of Contracts under State Law; and (5) violations of the Equal Protection and Due Process Clause. The Complaint named the State of Maryland, the Governor of Maryland, the Secretary of the Department of Budget and Management as Defendants.

44.     On September 11, 2018, the Defendants removed the action to the U.S. District Court for the District of Maryland.

11

45.     The Court scheduled a hearing on the Motion for Preliminary Injunction. The hearing took place on October 10, 2018, five days before enrollment in Medicare Part D was to commence. After hearing the arguments of the parties, the Court entered a Preliminary Injunction in favor of Plaintiffs, and all similarly situated State retirees maintaining the status quo during the pendency of this action.

46.     On May 25, 2019, the legislature altered its reaffirmation in § 2-509.1 by eliminating the prescription drug benefits for current and future Medicare eligible state employees and creating three new programs 1). The Maryland State Retiree Prescription Drug Coverage Program; 2) the State Retiree Catastrophic Prescription Drug Assistance Program; and 3) the Maryland State Retiree Life-Sustaining Prescription Drug Assistance Program ("collectively 2019 Programs").[3]

47.     The State Retiree Prescription Drug Coverage Program requires the State retirees to pay for their medication prior to reimbursement.

48.     The State Retiree Catastrophic Prescription Drug Assistance Program will allow reimbursement once the retiree reaches the Catastrophic Phase. Prior to reaching that stage, all out of pocket costs are borne by the State retiree.

49.     To combat the argument that all medications were not covered by Medicare Part D, the 2019 amendment created the State Retiree Life-Sustaining Prescription Drug Assistance Program.

50.     However the passage of the 2019 Amendment did not (and could not) alter the constitutionally protected property right of any person already retired or any person who vested at the time of the enactment of the 2013 amendment to participate in a health plan that included a

---

[3] Senate Bill 946. Maryland Laws 2019, Chapter 767

prescription drug coverage benefit plan subsidized by the State of Maryland during the individual's retirement.

51.     On September 1, 2019, DBM caused a letter to be mailed to all vested employees who had not retired, in other words current employees.  The letter stated that current employees who chose to retire by December 31, 2019 would qualify for the State Retiree Prescription Drug Assistance Program. Any active employee who retired after that date would only qualify for the Catastrophic Drug Assistance Program.  For current employees to retire by December 31, 2019, retirement papers had to be submitted by September 30, 2019.

52.     Pursuant to Court Order, Plaintiffs filed a Motion to Expand the Scope of the Preliminary Injunction to enjoin the date requirements of the 2019 amendment until final adjudication of this litigation.

53.     On November 1, 2019, Council 3 of the American Federal State County and Municipal Employees ("AFSCME") filed to intervene and moved to expand the scope of the Preliminary Injunction.

54.     On December 10. 2019, after hearing arguments, the Court denied the Plaintiffs and AFSCME's Motion to Expand Scope as Moot and directed Plaintiffs' counsel to add current employees into the Complaint.

## MARYLAND OPEB TRUST FUND

55.     The Plaintiffs are vested members of the State Retirement Pension System ("SRPS") a body politic and corporate that is statutorily required to provide benefits to its members under Division II of the State Personnel & Pensions Code ("SPP"). SPP § 20-101(z).

56.     SRPS consists of eleven pension systems and has been designated as a qualified Trust under section 401(a) of the Internal Revenue Code.[4] SPP § 21-102.   SRPS treats the Other Postretirement Benefits Trust Fund ("OPEB Trust") the same as the other systems for purposes of actuarial calculations of contributions and disbursements, record keeping and calculations of income, gains and losses.  SPP § 2-123(e)

57.     During their tenure of employment with the State of Maryland, Plaintiffs were granted certain post-retirement benefits due to their status as State of Maryland employees as part of their overall compensation for employment

58.     In 2004, the Government Accounting Standards Board ("GASB") issued new standards that required States and municipal governments to recognize Other Post-Employment Benefits ("OPEB") liabilities on their balance sheets as they accrue rather than on a pay-as-you-go basis[5].  In effect the new standards required public employers to account for OPEB benefits (typically health insurance coverage for retirees) in a manner similar to the way pension benefits are treated and "…it has long been Maryland State policy to follow GASB standards."[6]

59.     The purpose of the OPEB Trust is to "…assist the State in financing the postretirement health insurance subsidy, as specified in § 2-508 of this article."  SPP § 34-101(c).

---

[4] The State Retirement and Pension System consists of:
(1) the Correctional Officers' Retirement System, established on July 1, 1974;
(2) the Employees' Pension System, established on January 1, 1980;
(3) the Employees' Retirement System, established on October 1, 1941;
(4) the Judges' Retirement System, which consists of:
(i) the contributory plan, established on July 1, 1969; and
(ii) the noncontributory plan, established on April 7, 1904;
(5) the Legislative Pension Plan;
(6) the Local Fire and Police System, established on July 1, 1989;
(7) the Law Enforcement Officers' Pension System, established on July 2, 1990;
(8) the State Police Retirement System, established on  July 1, 1949;
(9) the Teachers' Pension System, established on January 1, 1980;
(10) the Teachers' Retirement System, established on August 1, 1927; and
(11) any other system or subsystem that the Board of Trustees administers.
[5] Pay As You Go financing is when current employees pay for current retirees.
[6] Public Employees' and Retirees' Benefit Sustainability Commission – 2010 Interim Report, page 20.

The OPEB Trust Fund is specifically designed to provide a vehicle for the State to prefund future costs associated with providing health coverage for State Retirees with federal assistance. As the money in the OPEB Trust accumulates and is invested, the State's reliance on the pay-as-you-go basis will diminish and this added security and solvency of the OPEB Trust will fulfill the State's contractual obligation to its employees.  SPP § 21-101(b).

60.     The health benefit that is the subject of this case is part of the other postretirement health insurance subsidy that is administered through the aforementioned State Employee and Retiree Health and Welfare Benefits Program ("Health Program")[7].

61.     The Health Program that includes prescription drug coverage is partially funded by the OPEB Trust Fund that was created in 2004 as a tax-exempt irrevocable trust in accordance with § 115 of the Internal Revenue Code.  SPP § 34-101(b).

62.     The OPEB Trust is part of the employer contributions for post-employment health benefits to all SRPS systems.[8]  However, unlike the other systems under SRPS, the OPEB fund's only source of revenue is appropriations through the State budget's (or through the budget of any State Agency) and funds derived from investments of those assets.  SPP §§ 34-101(d) and (f)(2)(i). And unlike the other systems under SRPS, appropriations to the OPEB Trust are employer contributions that are mandatory and irrevocable under the Internal Revenue Code.[9]

63.     The rate of the employer contribution is required to fluctuate so that OPEB Trust is maintained in an actuarially sound manner as adopted by the SRPS Board. SPP § 21-304. Employer contributions are comprised of contributions made by the State pursuant to actuarial

---

[7] Maryland Code Annot. State Personnel & Pensions §§ 2-501 – 2-516 (2018).
[8]  Employer contributions are comprised of State and local government contributions based on actuarial assumptions in addition to statutorily mandated State contributions. See SPP § 21-308
[9] 28 U.S. Code § 401(a).

assumptions, statutorily required payments and payments from other governmental units that participate in the SRPS system for the post-employment benefits.[10]

64.   The SRPS Board are Trustees of the OPEB Trust Fund and have the power to invest and manage its assets to achieve the statutory purpose of the OPEB Trust Fund, which is to assist the State in financing the health subsidy that includes prescription drug benefits found in the Health Program.[11]   State retirees are the beneficiaries of that the Trust.

## FEDERAL FUNDS OF EMPLOYER CONTRIBUTION.

65.   Beginning in fiscal 2006, any subsidy received by the State that was provided to employers as a result of the federal Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("2003 Medicare Act") was to be deposited into the OPEB Trust Fund.[12]   However, the Budget Reconciliation and Financing Act of 2005 diverted the Medicare Part D federal subsidy from the fund to pay for employee and retiree health premiums in fiscal year 2006 and 2007.[13]

66.   The 2007 Maryland Laws, Chapter 355 restored these proceeds from the federal health subsidy to the OPEB Trust beginning fiscal year 2008.

67.   The Budget Reconciliation and Financing Act of 2009 however diverted the federal funds to be deposited into the Health Program for 2010-2012.[14]

68.   The Maryland Budget Reconciliation and Financing Act of 2012 enacted provisions that for Fiscal Year 2013, and each fiscal year thereafter, any subsidy received by the state that is provided to employers as a result of the 2003 Medicare Act or similar federal subsidy received as a result of the State's prescription drug program,  would be deposited in the OPEB Trust Fund. [15]

---

[1010] Maryland Code Annot. § 21-303(a).
[11] SPP § 34-101(f)(1)/
[12] House Bill 72, 2011 Session, Fiscal and Policy Note Revised, Page 13; Enacted as the Budget Reconciliation Act of 2011.
[13] 2005 Maryland Laws, Chapter 444.
[14] Id.
[15] 2011 Maryland Laws, Chapter 397

Upon information and belief, every year since then, the State diverted the annual Federal health subsidy of $20 million dollars earmarked for the OPEB Trust Fund to the General Fund a clear violation of Federal and State law. [16]

## STATE FUNDING OF EMPLOYER CONTRIBUTIONS

69.     In an effort to begin prefunding its OPEB liabilities, the State set aside funds in fiscal year 2007, 2008 and 2009.

70.     The 2007 fiscal budget appropriated $100 million into a Dedicated Purpose Account, which was later transferred to the OPEB Trust Fund once it obtained the necessary clearance as an irrevocable trust.[17]

71.     The 2008 fiscal budget as enacted also appropriated $100 million in general funds in the Dedicated Purpose Account toward prefunding the State's liabilities.  During the 2008 legislative session however, the Maryland General Assembly cut that figure in half. [18]

72.     The Governor's 2009 fiscal allowance included a $210 million contribution to the OPEB Trust Fund.  As enacted, the 2009 fiscal budget only contained half that amount.  In October of 2009, the Board of Public Works cancelled the remaining $46 million that had yet to be paid into the trust as a cost containment measure. [19]

73.     The Maryland Budget Reconciliation and Financing Act of 2015 ("2015 Act") tried to address the funding issue in the OPEB Trust.[20]

74.     The 2015 Act required for fiscal year 2017 through fiscal year 2020, an amount equal to one-half of the unappropriated general fund surplus in excess of $10 million from the

---

[16] House Bill 72, 2011 Session, Fiscal and Policy Note Revised, Page 10.
[17] *Id.* at page 21.
[18] *Id.*
[19] *Id.* at 21.
[20] 2015 Maryland Laws, Chapter 489

second prior fiscal year be paid to the SRPS Trust Fund, up to a maximum of $50 million annually.[21] The payments were required to continue indefinitely beyond fiscal year 2020, but also beginning in fiscal year 2021, the payments be evenly divided between the SRPS Trust fund and the OPEB Trust Fund, up to the same combined total of $50 million beginning in fiscal year 2021 (July 1, 2020).[22]

75.     A payment of $50 million was made to the OPEB Trust Fund in fiscal year 2017.[23] However, even though the general funds surplus exceeded $60 million in each succeeding year, successive Budget Reconciliation and Financing Acts have repealed the required payments in fiscal years 2018, 2019, and 2020.[24]

76.     In the 2020 Legislative session, the Governor of the State of Maryland requested that the Legislature divert the OPEB Trust appropriation to the General Fund for Fiscal Year 2021 in Senate Bill 192.[25]

77.     On March 18, 2020, in violation of the Maryland Open Meetings Act, [26] Senate Bill 192 passed both houses of the Maryland Legislature.[27]

78.     Contrary to Maryland law, the Governor will not use the appropriated funds to ensure the assistance to the State for financing the postretirement health insurance subsidy in violation of the aforementioned statutes and the Maryland Constitution Article 2 § 9 which states, "He [the Governor] ...shall take care that the Laws are faithfully executed."

---

[21] *Id.*
[22] 2017 Maryland Laws, Chapter 557.
[23] Fiscal Policy Note 2020 Session, Senate Bill 192, Department of Legislative Services, Maryland General Assembly.
[24] Senate Bill 192 Page 23, Line 32 thru Page 24, line 17
[25] Fiscal Policy Note 2020 Session, Senate Bill 192, Department of Legislative Services, Maryland General Assembly
[26] Md. Code Annot. General Provisions §§ 3-101 – 3-501.
[27] The Maryland General Assembly closed access to the public on March 12, 2020, in wake of the COVID-19 pandemic. Senate Bill 192 passed both houses on March 18, 2020.

79.     The establishment of the OPEB Trust Fund, and the numerous legislative amendments made to it over the ensuing years, the State of Maryland has created a systematic funding method to safeguard the financial integrity of the OPEB Trust.  The Health Program that includes prescription drug coverage as well as the actuarial integrity and security of its source of funding for payment for these benefits are contractual rights of the vested members of SRPS and the beneficiaries of the OPEB Trust.

80.     The State has not made a full employer contribution since 2007 and continues to fund retiree health benefits on a pay-as-you-go basis a clear breach of the contractual duty between the State and its retirees.

81.     However, the States ongoing failure to properly fund the OPEB Trust did not and could not alter the constitutionally protected property rights of any person retired or already vested as a beneficiary in the OPEB Trust Fund.

82.     The Defendants breached the terms of the contract between the State of Maryland and State of Maryland employees by the continuous diversion to the General Fund of the appropriated employer contribution.  SPP § 34-101 states:

> The Postretirement Health Benefits Trust Fund shall consist of any funds appropriated to the Postretirement Health Benefits Trust Fund, whether directly or through the budgets of any State agency.

Maryland State Personnel & Pensions § 34-101(d).

83.     Maryland law requires that the Governor, "…shall include in each budget bill any other appropriation required by… other law to be included in the budget bill."  Md. Code Annot. State Finance and Procurement § 7-108(a)(8).

84.     The SRPS Board have a duty to properly administer and enforce the statutes in the Div. II articles of the State and Personnel and Pensions Code. [28]

85.     The State Budget is required to embrace an estimate of all appropriations as prescribed by law for such purposes as are set forth in the laws of this State.  Maryland Constitution Art 3 § 52 (5).

86.     The Comptroller is charged under the Maryland Constitution for spending in accordance with appropriations, however upon information and belief issued a warrant to the Treasurer to use money appropriated to the OPEB Trust Fund and divert it to the General Fund. Since both the Comptroller and the Treasurer had to sign the check for disbursement, they violated their oath of office and Articles 6 § 2 and § 3 of the Maryland constitution.

87.     Upon information and belief, the actions of the Defendants threaten the actuarial soundness of the OPEB Trust fund. As such, Defendants actions constitute a substantial impairment of contract.

88.     The State and its officials' propensity to divert appropriated funds from the OPEB Trust Fund fuels Plaintiffs, and all those similarly situated, concerns over the OPEB Trust Fund's continued existence.  Plaintiffs are fighting to retain access to their health benefit that includes prescription drug coverage and during this time the Defendants are extinguishing the funds statutorily mandated to bear its cost.

89.     As of June 30, 2019, the market value of assets in the OPEB Trust was $350.7 million[29] calling into question 1) the OPEB Trust Fund's solvency since its liability as of June 30, 2019 is $15 billion [30] and 2)

---

[28] SPP § 21-1119a)(1).
[29] 2020 Fiscal and Policy Note for Senate Bill 192, page 24.
[30]  State of Maryland Comptroller's 2019 Comprehensive Annual Financial Report (Fiscal Year ending June 30, 2019)

90.    The COVID-19 pandemic has placed the State in an economic spiral. [31] Plaintiffs have amended the Complaint in an effort to ensure the solvency of the OPEB Trust Fund during this litigation and protect the vested rights of its beneficiaries.

91.    Plaintiffs incorporates by reference all documents, pleadings, mentioned or filed during this litigation.

### COUNT I – DECLARATORY JUDGMENT – HEALTH PROGRAM

92.    That the Plaintiff realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

93.    That the retirement benefits offered to the Plaintiffs upon his/her employment with the State of Maryland included, inter alia, a State Employee and Retiree Health Welfare Benefits Program ("Health Program").  See SPP § 2-501 *et. seq.*

94.    That State retirees have always been eligible for participation in the Health Program for including prescription drug coverage during retirement.

95.    That the eligibility of State retirees is codified in SPP § 2-508.

96.    That since its original codification, SPP § 2-508 has always expressly included State Retirees with a certain number of creditable service years in those eligible for participation in the State's Health Program.

97.    That prior to the General Assembly's 2013 amendment to SPP § 2-508, a retiree needed 16 years of creditable service to be eligible to enroll in the State's Health Program.

98.    That upon reaching these service thresholds, an employee of the State of Maryland becomes entitled to the receipt of these benefits; stated in another way, the employee becomes vested.

---

[31] *Maryland Budget panel approves $120M in spending cuts with more to come* by Pamela Woods, May 20, 2020, <u>Baltimore Sun</u>

99.    That the notices received by the Plaintiffs in May of 2018 and September of 2019 evidence that the State of Maryland fails to acknowledge the Plaintiffs rights as retirees to participate in the State's Health Program as a contractual obligation earned after the appropriate years of service.

100.    The basis for the Defendant's failure to acknowledge Plaintiffs' vested right to participate in the State sponsored program that includes a prescription drug coverage benefit are the subsequent legislative changes to SPP § 2-509.1

101.    That Plaintiffs maintain that the legislature's subsequent changes to §§ 2-509.1 and 2-508 are ineffective in altering their vested right to participate in the State sponsored program that includes a prescription drug coverage benefit plan.

102.    Thus there exists and actual controversary of a practicable issue between Plaintiffs and Defendants within the jurisdiction of this Court involving the rights and liabilities of the parties under a contract, which terms may be determined by a judgment of this Court; namely whether the vested rights of the Plaintiffs include a right to participate in a health benefit plan that includes a prescription drug coverage benefit plan during the course of Plaintiffs' retirement.

103.    Insofar as there arises a conflict amongst the parties as to the rights, duties, privileges, and obligations of the parties as to the validity or constitutionality of the above referenced statutes and regulations, this Court may find, declare, or establish said-rights as dictated by law and equity under the circumstances.

## COUNT II – DECLARATORY JUDGMENT – OPEB TRUST FUND

104.    That the Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

105.    That the Plaintiffs are vested members of SRPS and beneficiaries of the OPEB Trust Fund.

106.    That SRPS Board administers the OPEB Trust whose sole purpose is to provide funding assistance to the State of Maryland to finance the postretirement health insurance subsidy which includes prescription drug coverage.

107.    That Maryland law expressly codified the purpose and sole use of any funds appropriated for the OPEB Trust. As originally enacted, this Trust Fund was to be applied exclusively for its specific and clearly stated purpose.

108.    That funding for OPEG Trust is based on a statutorily mandated systematic actuarial calculation and used as inducement for employees to begin or continue working. All the Plaintiffs have relied on and continue to rely on, these representations and inducements.

109.    That the seizure and diversion of appropriated funds earmarked for the OPEB Trust Fund as described in this Complaint is an unreasonable alteration of Plaintiffs rights in their other post-employment benefits, in that the actions bear no material relation to the successful operation of an irrevocable trust, and is not accompanied by comparable new advantages to its beneficiaries. Furthermore, upon information and belief, the actions of Defendants threaten the actuarial soundness of the OPEB Trust.

110.    Unless the Defendants are enjoined from the continuous diversion of funds earmarked for the OPEB Trust fund, the Class will be irreparably harmed by the present economic loss during the pendency of this litigation and the future economic loss to the beneficiaries of this Trust which is incalculable.

111.    Plaintiffs are entitled to a declaratory judgment from this Court establishing as a matter of law that the actions of the State, through the Governor, the General Assembly, the SRPS

23

Board and state officials violate the constitutional rights of OPEB Trust Fund's beneficiaries, is inconsistent with the OPEB Trust's purpose and that funds appropriated to the OPEB Trust shall not be applied, diverted, loaned to or used by the State or any agent of the State.

## COUNT III – ANTICIPATORY BREACH – HEALTH PROGRAM

112.   That the Plaintiffs alleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

113.   The Plaintiffs and Defendants have a contract as outlined above.

114.   The notices received in May of 2018 and September of 2019 from DBM is a definite, positive, and unconditional refusal by the Defendants to perform under the terms of the contract described above.

115.   The Defendants have definitely and specifically refused to provide a health benefit plan with a prescription drug benefit.

116.   Should the Defendants' nonperformance under the terms of the contract outlined above be excused, the Plaintiffs will be forced to enroll in the Medicare Part D prescription drug coverage plan.

117.   Medicare Part D prescription drug plan includes fewer medications in its formulary than the State sponsored plan to which the instant vested retirees are currently eligible. In addition, the out of pocket costs for prescription drugs under Medicare Part D prescription drug plan are significantly higher under the State sponsored plan to which the instant vested retirees are currently eligible.

118.   As a consequence of the foregoing, the Class Plaintiffs have suffered and will continue to suffer loss and damages in an amount to be determined at trial, which damages are ongoing and continued unabated at the time of the filing of this Complaint.

## COUNT IV – BREACH OF CONTRACT

119.    Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

120.    The Health Program that includes a health benefit with prescription drug coverage is partially funded by the OPEB Trust Fund that was created in 2004 as a tax-exempt irrevocable trust.

121.    The State of Maryland has created a systematic funding method to safeguard the financial integrity of the OPEB Trust Fund. This financial integrity – the actuarial soundness of the OPEB Trust Fund – is a vested contract right of the SRPS members, including the Plaintiffs in this lawsuit.

122.    Upon vesting, state employees became beneficiaries of the Trust.

123.    The Defendants conduct, including but not limited to: 1) the State of Maryland's enactment of the provisions found in the Budget Reconciliation and Financing Act of 2020 that diverts millions earmarked for the OPEB Trust Fund to the General Fund; 2) the Board's breach of its fiduciary duty to the members of SRPS and the beneficiaries of the OPEB Trust; and 3) the State of Maryland's and state officials knowing and willful failure to fund the Plan adequately, the Defendants have definitely and specifically refused to provide funding for the health benefit plan that includes prescription drug coverage thereby materially breaching the terms of the contract.

124.    Should the Defendants' nonperformance under the terms of the contract outlined above be excused, the OPEB Trust will become insolvent and the health benefits that are funded by this Trust will be severely reduced and/or extinguished.

125.   As a result of this breach of contract, Plaintiffs are entitled to declaratory judgment declaring the seizure and diversion of appropriated funds earmarked for the OPEB Trust Fund is unlawful and unconstitutional.

126.   As a consequence of the foregoing, the Class Plaintiffs have suffered and will continue to suffer loss and damages in an amount to be determined at trial, which damages are ongoing and continued unabated at the time of the filing of this Complaint

## COUNT V - GOVERNMENTAL TAKING - HEALTH PROGRAM

127.   The Plaintiffs alleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

128.   That pension benefits, including retiree health benefits are a form of deferred compensation and constitute a property right.

129.   That reducing the availability of previously promised retiree health benefits is an unconstitutional violation of the Takings Clause of the Fifth Amendment of the United States Constitution made applicable to the actions complained of by Plaintiffs through the Fourteenth Amendment.

130.   That reducing the availability of previously promised retiree health benefits is also an unconstitutional violation of the Takings Clause of Article III § 40 of the Maryland Constitution.

131.   That the State of Maryland has not compensated the Plaintiffs for the reduction in their retiree health benefits despite their property right in the same as described below.

132.   As a result of this impairment in contract, Plaintiffs are entitled to declaratory judgment from this Court that the actions described in this complaint violate Article III § 40 of the Maryland Constitution. `

133.    In addition, as a consequence of the foregoing, the Class Plaintiffs have suffered and will continue to suffer loss and damages in an amount to be determined at trial, which damages are ongoing and continued unabated at the time of the filing of this Complaint.

## COUNT VI – GOVERNMENTAL TAKING – OPEG TRUST FUND

134.    Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

135.    The Plaintiffs have a vested property right to the benefits promised by the State of Maryland to be funded by the OPEB Trust Fund and to its adequate and proper operation.

136.    The Plaintiffs and all those similarly situated were induced to commence and continue their employment with the State of Maryland in reliance on the vested benefits promised by the State, which the State guaranteed would be prefunded.

137.    The Plaintiffs viewed the benefits promised under the plan as a secured form of deferred compensation because of the statutorily mandated systematic actuarial calculation required to be submitted to the SRPS Board and relied on this systematic funding as security against destitution in retirement and financial catastrophe.

138.    In exchange for the security of these post-employment benefits, Plaintiffs and all those similarly situated provided a mandatory contribution through payroll deduction to the State Retirement and Pension System and fulfilled the requirements to become beneficiaries of the OPEB Trust.

139.    The State's willful and systematic underfunding of the plan, as alleged herein, has substantially and materially impaired and diminished the vested property rights of the members of the putative Class.

140.    Plaintiffs contractual right to a retirement system that is maintained in an actuarially sound manner is a property right within the meaning of the due process clause of the Fifth Amendment to the United States Constitution as applied to the States by the Fourteenth Amendment to the United States Constitution.

141.    As a result of this impairment in contract, Plaintiffs are entitled to declaratory judgment from this Court that the actions described in this complaint violate the Fifth and Fourteenth Amendments to the Constitution of the United States.

142.    In addition, as a consequence of the foregoing, the Class Plaintiffs have suffered and will continue to suffer loss and damages in an amount to be determined at trial, which damages are ongoing and continued unabated at the time of the filing of this Complaint

## COUNT VII – UNCONSTITUTIONAL IMPAIRMENT OF CONTRACTS (ALL)

143.    That the Plaintiff realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

144.    Defendants' acts complained herein have deprived Plaintiffs of the protection against impairing the obligations of contracts in violation of Article 1 § 10 of the United State Constitution.

145.    As a result of these impairments in contract, Plaintiffs are entitled to declaratory judgment from this Court establishing that the actions described in this complaint violate the Article I § 10 of the Constitution of the United States.

## COUNT VIII – UNCONSTITUTIONAL IMPAIRMENT OF CONTRACTS

146.    That the Plaintiff realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

147.    Defendants failure to provide Plaintiffs with access to participate in the Health Plan that includes a prescription drug benefit and other acts in depriving Plaintiff of said earned benefits constitute a deprivation of property without due process of law in violation of Article 24 of the Maryland Constitution.

148.    As a result of these impairments in contract, Plaintiffs are entitled to declaratory judgment from this Court establishing that the actions described in this complaint violate Article 24 of the Maryland Constitution.

### COUNT IX – BREACH OF CONTRACTUAL FIDUCIARY DUTY OPEB TRUST FUND

149.    Plaintiffs realleges and incorporates herein by reference all allegations contained in the preceding paragraphs.

150.    As set forth in statute, the SRPS Board owes a fiduciary duty to the members of SRPS and beneficiaries of the OPEB Trust Fund.

151.    By virtue of the foregoing conduct, including but not limited to the SRPS Board's complicity in allowing the State of Maryland to underfund the OPEB Trust fund for the benefit of the Defendants and to the detriment of the members of SRPS and beneficiaries of the OPEB Trust, the Board violated its fiduciary duty to the members of the putative Class.

152.    As a consequence of the foregoing, the members of the Class have suffered and will continue to suffer harm and loss, and have sustained damages including but not limited to the loss of statutory contributions to the OPEB Trust Fund, which are ongoing and continue unabated at the filing of this complaint.

### COUNT X – BREACH OF TRUST – OPEB TRUST FUND

153.    Plaintiffs realleges and incorporates herein by reference all allegations contained in the preceding paragraphs.

154.   The OPEB Trust Fund was established as an irrevocable tax-exempt trust in accordance with § 115 of the Internal Revenue Code and their actions violated 26 U.S.C. § 401(a)((13).

155.   Under Maryland law once an irrevocable trust is created, the grantor gives up all rights of ownership of the property used to fund the trust and any modification of the trust will require the consent of the beneficiaries. [32]

156.   Defendants actions constitute a breach of trust. A "trust" is a "trust". No reason, practical or legal, exists to have an OPEB Trust Fund if holding the state employees' money in "trust" has any meaning.

### COUNT XI – EQUAL PROTECTION

157.   The Plaintiffs realleges and incorporation herein by reference all the allegations contained in the preceding paragraphs.

158.   The Defendants acts complained of herein deprived the Plaintiffs of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

### COUNT XII – PETITION FOR WRIT OF MANDAMUS, PRELIMINARY/PERMANENT INJUNCTION/ SPECIFIC PERFORMANCE – HEALTH PROGRAM.

159.   The Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

160.   Defendants will illegally cease to provide the Plaintiffs with a Health Benefit Plan that includes prescription drug coverage, despite the Plaintiffs vesting pursuant to the relevant statues and regulations.

---

[32] MD Code, Estates and Trusts, § 14.5-410.

161.     Plaintiffs are entitled to the issuance of a writ of mandamus requiring the Defendants reinstate and continue to provide the already vested health benefits including a prescription drug coverage plan to the Plaintiffs and others similarly situated.

162.     In the alternative to the issuance of a writ, Plaintiffs are entitled to the issuance of a preliminary/permanent injunction requiring the Defendants to reinstate and provide the already vested health benefits including prescription drug coverage plan to Plaintiffs and others similarly situated.

163.     Plaintiffs are likewise entitled to an order for specific performance requiring Defendant to provide the already vested health benefits including a prescription drug coverage plan to Plaintiffs and other similarly per terms of the contract.

**COUNT    XII    –    PETITION    FOR    WIRT    OF    MANDAMUS, PRELIMINARY/PERMANENT INJUNCTION/ SPECIFIC PERFORMANCE – OPEB TRUST FUND**

164.     The Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

165.     Plaintiffs as discussed in detail in this complaint, have a clear right of relief from the actions of the individual defendants that have imperiled the financial integrity of the OPEB Trust Fund.

166.     Plaintiffs have no other appropriate remedy at law. The SRPS Board has done nothing, the Treasurer's office has done nothing, the General Assembly has done nothing to address the unlawful seizure and diversion of appropriated funds by the Governor. Plaintiff are left only to turn to the Courts for the relief they seek.

167.     Plaintiffs are entitled to the issuance of a writ of mandamus compelling the Governor, the Comptroller and the Treasurer to perform their official duties consistent with the

31

law, specifically to desist from the seizure and diversion of the employer contributions and to return to the OPEB Trust all funds that were appropriated, paid, seized and diverted.

168.    Plaintiffs seek, and are entitled to, a writ of mandamus compelling the SRPS Board to perform their official duties consistent with the law and assess penalty against the State, to formally notify the State Treasurer of the default of the required payments to the OPEB Trust Fund while further compelling Defendants to take such other reasonable actions as are necessary to discharge the fiduciary duties owed by the SRPS Board, and its members inclusive of the State Treasurer, the Comptroller and the Secretary of DBM.

169.    In the alternative to the issuance of a writ, Plaintiffs are entitled to the issuance of a preliminary/permanent injunction requiring the Defendants to desist from the seizure and diversion of employer contributions.

170.    Plaintiffs are likewise entitled to an order for specific performance requiring Defendant to provide the aforementioned seized and diverted funds appropriated for the OPEB Trust Fund as per terms of the contract.

## XIII – CONSULTING AND RESULTING TRUST

171.    That the Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

172.    As a consequence of Defendants acts complained herein, Plaintiffs and other members of each class are entitled to have a constructive or resulting trust impressed upon all funds held by Defendants to which Plaintiffs and other members of each class are entitled and the actuarial equivalent of the underpayment and interest thereon.

## XIV - ACCOUNTING

173.   That the Plaintiffs realleges and incorporates herein by reference all the allegations contained in the preceding paragraphs.

174.   The Board is under a legal duty pursuant to Maryland law, to accurately account for money and property that was or should have been allocated to, maintained by, or distributed to and from the OPEB Trust Fund.

175.   The SRPS Board manages eleven accounts that benefit from the OPEB Trust Fund and the accounting distributions to and from the OPEB trust are deemed not available to state retirees in general or the public at large, by statute, making any accounting so complicated that there is no adequate remedy at law. [33]

176.   The Board's actions as alleged herein are injurious to the members of the Class.

177.   A fiduciary relationship exists between the Board and the members of the Class which requires the rendition of an account with respect to the money and/or property deposited into and withdrawn from the OPEB Trust Fund crucial.

**WHEREFORE** Plaintiffs respectfully pray that this Court;

1. That the Court certify this action as a class action
2. That the Court order Defendants to identify members of the class and to provide a full accounting of all past, present, and future benefits to which Plaintiffs and other class members are entitled as a consequence of his or her and other class members being vested with the foregoing Health Benefits;
3. That the Court order Defendants to immediately reinstate health benefits including a prescription drug benefit plan to Plaintiffs and others similarly situated;

---

[33] SPP § 21-123(g)(1)

4. That Defendants be ordered to reinstate Plaintiffs' vested benefits in the form of a Writ of Mandamus, a preliminary and permanent injunction, or specific performance;

5. For damages caused by Defendants' breach of contract and/or impairment of contract or other constitutional violations;

6. Prohibit the State from implementing the diversion provision of the Budget and Reconciliation Act of 2020.

7. Compel the State to reimburse to the OPEB Trust Fund the full amount appropriated for Fiscal Year 2021;

8. Compel the State to reimburse the OPEB Trust Fund the full amount diverted from SRPS specifically for Other Post-Employment Benefits;

9. Compel the State to contribute annually to the OPEB Trust as required by Statute.

10. Appoint a Special Monitor to conduct annual reviews of the OPEB Trust Fund until such time as the OPEB Trust is 85% funded using the fair market value of assets;

11. Declare that the funds appropriated to an irrevocable trust established under § 115 of the Internal Revenue Code cannot be seized and diverted for any other purpose than specified by Statute;

12. Declare any seizure or diversion of appropriated funds to the OPEB Trust Fund by the State of Maryland or state officials violated the Maryland Constitution and are unlawful and unconstitutional;

34

13. That the State of Maryland and/or state officials perform their official duties consistent with the law, specifically, permanently to desist from the seizure and diversion of appropriations viewed as employer contributions and return to the OPEB Trust Fund all funds that were appropriated, seized and diverted;

14. For damages caused by Defendants' breach of contract and/or impairment of contract or other constitutional violations;

15. That this mater be tried before a jury on all issues so triable;

16. That Defendants be required to pay all costs incurred by Plaintiffs in this action, including prejudgment and post judgment interest and reasonable attorney's fees, as allowable; and

17. Order such other relief as it deems just, necessary, and proper.

Respectfully,

June 24, 2020
Date

*/s/ Deborah A. Holloway Hill*
Deborah A. Holloway Hill
(Federal Bar 28384)
111 Warren Road, Suite 7B
Cockeysville, MD 21030
P: (410) 428-7278
O: (866) 499-6906
dahhlaw@outlook.com

*Attorney for Plaintiffs*

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all counts.

*/s/ Deborah A. Holloway Hill*
Deborah A. Holloway Hill
111 Warren Road, Suite 7B
Cockeysville, MD 21030

35