**IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Greenbelt)**

| | | |
|---|---|---|
| **KENNETH FITCH,** *et al.*, | * | |
| Plaintiffs, | * | |
| , | | |
| v. | * | **CASE NUMBER:  18-02817** |
| | | |
| **STATE OF MARYLAND,** *et al.*, | * | |
| Defendant, | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**
**TO ENJOIN DIVERSION OF FUNDS**

     **NOW COMES**, Plaintiffs, by and through their undersigned attorney, pursuant to Fed. R. Civ. P. 65 files this Memorandum in Support of the Motion for Preliminary Injunction to Enjoin the Defendants' Diversion of the employer contribution appropriated to the Other Post-Employment Benefits Trust Fund for fiscal year 2021.  The purpose of the Other Post-Employment Benefits Trust Fund is to assist the State in financing the postretirement health insurance subsidy (that includes prescription drug coverage) found in the State Employee and Retiree Health, Welfare and Benefit Program.  The continued depletion of funds to finance this program before the conclusion of this litigation will seriously compromise the ability of the Fund to finance future health benefits of state employees and specifically, the health benefit that includes prescription drug coverage.

## INTRODUCTION

     The Plaintiffs in this action, without exception, devoted their adult working lives to the service of the State of Maryland and her people. They come from all areas of the state. They include

building managers, nurses, correctional officers, and social workers.  Like other Marylanders, they worked hard to provide for their families and their futures.  And like other Marylanders they pay taxes.  Unlike their fellow citizens, however, these current and retired State employees are being required to assist in balancing the budget not only through paying taxes, but also through sacrificing the solvency of the Other Postemployment Benefits Trust Fund  ("OPEB Trust Fund") that finances their health care benefits, which includes prescription drug coverage - the subject of this litigation.  The State's seizure of the employer contribution appropriated for the OPEB Trust Fund has threatened the stability of continued health benefits in a retirement system that has been heralded for the amount of its unfunded liabilities.  The Defendants seizure of these funds and diverting them for purposes other than the statutory purpose expressed for the OPEB Trust Fund is unlawful. This action seeks the return of the appropriated employer contribution diverted by provisions in the Budget Reconciliation Act of 2020 and place those funds back into the OPEB Trust Fund as required and codified by Maryland law.

## FACTS

1.      The Plaintiffs are vested members of the State Retirement Pension System ("SRPS") a body politic and corporate that is statutorily required to provide benefits to its members under Division II of the State Personnel & Pensions Code ("SPP"). SPP § 20-101(z).

2.      SRPS consists of eleven pension systems and has been designated as a qualified Trust under section 401(a) of the Internal Revenue Code. [1] SPP § 21-102.  SRPS treats the Other

---

[1] The State Retirement and Pension System consists of:
(1) the Correctional Officers' Retirement System, established on July 1, 1974;
(2) the Employees' Pension System, established on January 1, 1980;
(3) the Employees' Retirement System, established on October 1, 1941;
(4) the Judges' Retirement System, which consists of:
(i) the contributory plan, established on July 1, 1969; and
(ii) the noncontributory plan, established on April 7, 1904;
(5) the Legislative Pension Plan;

Postretirement Benefits Trust Fund ("OPEB Trust") the same as these other systems for purposes of actuarial calculations of contributions and disbursements, record keeping and calculations of income, gains, and losses.  SPP § 2-123(e)

    3.    During their tenure of employment with the State of Maryland, Plaintiffs were granted certain post-retirement benefits due to their status as State of Maryland employees as part of their overall compensation for employment

    4.    In 2004, the Government Accounting Standards Board ("GASB") issued new standards that required States and municipal governments to recognize Other Post-Employment Benefits ("OPEB") liabilities on their balance sheets as they accrue rather than on a pay-as-you-go basis[2].  In effect the new standards required public employers to account for OPEB benefits (typically health insurance coverage for retirees) in a manner similar to the way pension benefits are treated and  "…it has long been Maryland State policy to follow GASB standards." [3]

    5.    In response to GASB guidelines, in 2004, the Maryland General Assembly established the OPEB Trust Fund as a tax-exempt irrevocable trust in accordance with § 115 of the Internal Revenue Code.   SPP §34-101(b).

    6.    The purpose of the OPEB Trust is to "…assist the State in financing the postretirement health insurance subsidy, as specified in § 2-508 of this article."  SPP § 34-101(c). The OPEB Trust Fund is specifically designed to provide a vehicle for the State to prefund future costs associated with providing health coverage for State Retirees.  As the money in the OPEB

---

(6) the Local Fire and Police System, established on July 1, 1989;
(7) the Law Enforcement Officers' Pension System, established on July 2, 1990;
(8) the State Police Retirement System, established on  July 1, 1949;
(9) the Teachers' Pension System, established on January 1, 1980;
(10) the Teachers' Retirement System, established on August 1, 1927; and
(11) any other system or subsystem that the Board of Trustees administers.
[2] Pay As You Go financing is when current employees pay for current retirees.
[3] Public Employees' and Retirees' Benefit Sustainability Commission – 2010 Interim Report, page 20.

Trust accumulates and is invested, the State's reliance on the pay-as-you-go basis will diminish and this added security and solvency of the OPEB Trust will fulfill the State's contractual obligation to its employees.  SPP § 21-101(b).

7.      The health benefit that is the subject of this case is part of the other postretirement health insurance subsidy that is administered through the aforementioned State Employee and Retiree Health and Welfare Benefits Program ("Health Program")[4].

8.      The Health Program that includes prescription drug coverage is partially funded by the OPEB Trust Fund that was created in 2004 as a tax-exempt irrevocable trust in accordance with § 115 of the Internal Revenue Code.  SPP § 34-101(c).

9.      OPEB funding is part of the employer contributions for post-employment health benefits to all SRPS systems.[5]  However, unlike the other systems under SRPS, the OPEB fund's only source of revenue is appropriations made through the State budget's (or through the budget of any State Agency) and funds derived from investments of those assets.   SPP §§ 34-101(d) and (f)(2)(i). And, unlike the other systems under SRPS, appropriations to the OPEB Trust are employer contributions that are mandatory and irrevocable under the Internal Revenue Code.[6]

10.      The rate of the employer contribution is required to fluctuate so that OPEB Trust is maintained in an actuarially sound manner as adopted by the SRPS Board. SPP § 21-304. Employer contributions are comprised of contributions made by the State pursuant to actuarial assumptions, statutorily required payments and payments from other governmental units that participate in the SRPS system for the post-employment benefits.[7]

---

[4] Maryland Code Annot. State Personnel & Pensions §§ 2-501 – 2-516 (2018).
[5]  Employer contributions are comprised of State and local government contributions based on actuarial assumptions in addition to statutorily mandated State contributions. See SPP § 21-308
[6] 28 U.S. Code § 401(a).
[77] Maryland Code Annot. § 21-303(a).

**11.**    The SRPS Board are Trustees of the OPEB Trust Fund and have the power to invest and manage its assets to achieve the statutory purpose of the OPEB Trust Fund, which is to assist the State in financing the health subsidy that includes prescription drug benefits found in the Health Program.[8]  State retirees are the beneficiaries of that the Trust.

## FEDERAL FUNDS OF EMPLOYER CONTRIBUTION.

12.    Beginning in fiscal 2006, any subsidy received by the State that was provided to employers as a result of the federal Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("2003 Medicare Act") was to be deposited into the OPEB Trust Fund.[9]  However, the Budget Reconciliation and Financing Act of 2005 diverted the Medicare Part D federal subsidy from the fund to pay for employee and retiree health premiums in fiscal year 2006 and 2007.[10]

13.    The 2007 Maryland Laws, Chapter 355 restored these proceeds from the federal health subsidy to the OPEB Trust beginning fiscal year 2008.

14.    The Budget Reconciliation and Financing Act of 2009 however diverted the federal funds to be deposited into the Health Program for 2010-2012.[11]

15.    The Maryland Budget Reconciliation and Financing Act of 2012 enacted provisions that for Fiscal Year 2013, and each fiscal year thereafter, any subsidy received by the state that is provided to employers as a result of the 2003 Medicare Act or similar federal subsidy received as a result of the State's prescription drug program,  would be deposited in the OPEB Trust Fund. [12] Upon information and belief, every year since then, the State diverted the annual Federal health

---

[8] SPP § 34-101(f)(1)/
[9] House Bill 72, 2011 Session, Fiscal and Policy Note Revised, Page 13; Enacted as the Budget Reconciliation Act of 2011.
[10] 2005 Maryland Laws, Chapter 444.
[11] *Id.*
[12] 2011 Maryland Laws, Chapter 397

subsidy of $20 million dollars earmarked for the OPEB Trust Fund to the General Fund a clear violation of Federal and State law. [13]

## STATE FUNDING OF EMPLOYER CONTRIBUTIONS

16.     In an effort to begin prefunding its OPEB liabilities, the State set aside funds in fiscal year 2007, 2008 and 2009.

17.     The 2007 fiscal budget appropriated $100 million into a Dedicated Purpose Account, which was later transferred to the OPEB Trust Fund once it obtained the necessary clearance as an irrevocable trust.[14]

18.     The 2008 fiscal budget as enacted also appropriated $100 million in general funds in the Dedicated Purpose Account toward prefunding the State's liabilities.   During the 2008 legislative session however, the Maryland General Assembly cut that figure in half. [15]

19.     The Governor's 2009 fiscal allowance included a $210 million contribution to the OPEB Trust Fund.  As enacted, the 2009 fiscal budget only contained half that amount.  In October of 2009, the Board of Public Works cancelled the remaining $46 million that had yet to be paid into the trust as a cost containment measure. [16]

20.     The Maryland Budget Reconciliation and Financing Act of 2015 ("2015 Act") tried to address the funding issue in the OPEB Trust.[17]

21.     The 2015 Act required for fiscal year 2017 through fiscal year 2020, an amount equal to one-half of the unappropriated general fund surplus in excess of $10 million from the second prior fiscal year be paid to the SRPS Trust Fund, up to a maximum of $50 million

---

[13] House Bill 72, 2011 Session, Fiscal and Policy Note Revised, Page 10.
[14] *Id*. at page 21.
[15] *Id*.
[16] *Id*.at 21.
[17] 2015 Maryland Laws, Chapter 489

annually.[18] The payments were required to continue indefinitely beyond fiscal year 2020, but also beginning in fiscal year 2021, the payments be evenly divided between the SRPS Trust fund and the OPEB Trust Fund, up to the same combined total of $50 million beginning in fiscal year 2021 (July 1, 2020).[19]

22.     A payment of $50 million was made to the OPEB Trust Fund in fiscal year 2017.[20] However, even though the general funds surplus exceeded $60 million in each succeeding year, successive Budget Reconciliation and Financing Acts have repealed the required payments in fiscal years 2018, 2019, and 2020.[21]

23.     In the 2020 Legislative session, the Governor of the State of Maryland requested that the Legislature divert the OPEB Trust appropriation to the General Fund for Fiscal Year 2021 in Senate Bill 192.[22]

24.      On March 18, 2020, in violation of the Maryland Open Meetings Act, [23] Senate Bill 192 passed both houses of the Maryland Legislature and will be enforced July 1, 2020. [24]

25.     Contrary to Maryland law, the Governor did not use the appropriated funds to ensure the assistance to the State for financing the postretirement health insurance subsidy, an act in violation of the aforementioned statutes and the Maryland Constitution Article 2 § 9  which states, "He [the Governor] …shall take care that the Laws are faithfully executed."

---

[18] *Id.*
[19] 2017 Maryland Laws, Chapter 557.
[20] Fiscal Policy Note 2020 Session, Senate Bill 192, Department of Legislative Services, Maryland General Assembly.
[21] Senate Bill 192 Page 23, Line 32 thru Page 24, line 17
[22] Fiscal Policy Note 2020 Session, Senate Bill 192, Department of Legislative Services, Maryland General Assembly
[23] Md. Code Annot. General Provisions §§ 3-101 – 3-501.
[24] The Maryland General Assembly closed access to the public on March 12, 2020, in wake of the COVID-19 pandemic.  Senate Bill 192 passed both houses on March 18, 2020.

26.     With the establishment of the OPEB Trust Fund, and the numerous legislative amendments made to it over the ensuing years, the State of Maryland has created a systematic funding method to safeguard the financial integrity of the OPEB Trust.  The Health Program that includes prescription drug coverage as well as the actuarial integrity and security of its source of funding for payment for these benefits are contractual rights of the vested members of SRPS and the beneficiaries of the OPEB Trust.

27.     The State has not made a full employer contribution since 2007 and continues to fund retiree health benefits on a pay-as-you-go basis, a clear breach of the contract between the State and its retirees.

28.     However, the States ongoing failure to properly fund the OPEB Trust did not and could not alter the constitutionally protected property rights of any person retired or already vested as a beneficiary in the OPEB Trust Fund.

29.     The Defendants breached the terms of the contract between the State of Maryland and State of Maryland employees by the continuous diversion to the General Fund of the appropriated employer contribution.  SPP § 34-101 states:

> The Postretirement Health Benefits Trust Fund shall consist of any funds appropriated to the Postretirement Health Benefits Trust Fund, whether directly or through the budgets of any State agency.

Maryland State Personnel & Pensions § 34-101(d).

30.      Maryland law requires that the Governor, "…shall include in each budget bill any other appropriation required by… other law to be included in the budget bill."  Md. Code Annot. State Finance and Procurement § 7-108(a)(8).

31.     The SRPS Board have a duty to properly administer and enforce the statutes in the Div. II articles of the State and Personnel and Pensions Code. [25]

32.     The State Budget is required to embrace an estimate of all appropriations as prescribed by law for such purposes as are set forth in the laws of this State.  Maryland Constitution Art 3 § 52 (5).

33.     The Comptroller is charged under the Maryland Constitution for spending in accordance with appropriations, however upon information and belief issued a warrant to the Treasurer to use money appropriated to the OPEB Trust Fund and divert it to the General Fund. Since both the Comptroller and the Treasurer had to sign the check for disbursement, they violated their oath of office and Articles 6 § 2 and § 3 of the Maryland Constitution.

34.     Upon information and belief, the actions of the Defendants have and continue to threaten the actuarial soundness of the OPEB Trust Fund. As such, Defendants actions constitute a substantial impairment of contract.

35.     The State and its officials' propensity to divert appropriated funds from the OPEB Trust Fund fuels Plaintiffs, and all those similarly situated, concerns over the OPEB Trust Fund's continued existence.  Plaintiffs are fighting to retain access to their health benefit that includes prescription drug coverage and during this time the Defendants are extinguishing the funds statutorily mandated to bear its cost.

36.     As of June 30, 2019, the market value of assets in the OPEB Trust was $350.7 million[26] calling into question 1) the OPEB Trust Fund's solvency since its liability as of June 30,

---

[25] SPP § 21-1119a)(1).
[26] 2020 Fiscal and Policy Note for Senate Bill 192, page 24.

2019 is $15 billion [27] and 2) no bills have been submitted by the Governor or money appropriated by the legislature to return the funds that were unlawfully and unconstitutionally seized.

37.    Since, the COVID-19 pandemic has placed the State in an economic spiral, [28] Plaintiffs have amended the Complaint in an effort to ensure the solvency of the OPEB Trust Fund during this litigation and protect the vested rights of its beneficiaries.

38.    Plaintiffs incorporates by reference all documents, pleadings, mentioned or filed during this litigation.

## STANDARD OF REVIEW

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." United States v. South Carolina, 720 F.3d 518, 524 (4th Cir. 2013) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).  To obtain a preliminary injunction, "a plaintiff must show that:

> 1. It will likely succeed on the merits;
> 2. It is likely to suffer irreparable harm absent preliminary relief;
> 3. The balance of equities tips in its favor; and
> 4. An injunction is in the public interest.

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); Centro Tepeyac v. Montgomery Cty., 722 F.3d 184, 188 (4th Cir. 2013)(en banc). The Court applies the same four factors to determine whether a temporary restraining order.

## ARGUMENT

This motion presents a very simple question with tremendous public policy implications: *Is it permissible in Maryland to use the OPEB Trust Fund established for the State's*

---

[27]   State of Maryland Comptroller's 2019 Comprehensive Annual Financial Report (Fiscal Year ending June 30, 2019)
[28] *Maryland Budget panel approves $120M in spending cuts with more to come* by Pamela Woods, May 20, 2020, Baltimore Sun

*employees as a rainy-day fund for the government at large?*  Through the establishment of the

OPEB Trust in  2004 and the numerous legislative amendments made to it over the ensuing years,

the State of Maryland has created a systematic funding method to safeguard the financial integrity

of state employees' retirement pension and health benefits.  The financial integrity – the actuarial

soundness of this system is a contractual obligation of the State and a vested contract right of its

members, including the Plaintiffs in this lawsuit.  The mismanagement of OPEB Trust and the

latest legislation to divert funds will severely reduce its viability to the detriment of the state

retirees who depend on its continued function and its solvency during this litigation.  The continued

breach of that contractual obligation of the Defendants has substantially impaired the contract.

> **I.    Maryland Law provides funds earmarked for the OPEG Trust Fund can only
> be used to provide health benefits inclusive of the prescription drug coverage
> at issue in this case.**

In general, a statute is itself treated as a contract when the language and circumstances

evince a legislative intent to create private rights of a contractual nature enforceable against the

state.  Andrews v. Anne Arundel County, Md., 931 F. Supp. 1225, 1260 (D. Md. 1996) citing

United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 17 (1977).  In addition, statutes

governing the interpretation and enforcement of contracts may be regarded as forming part of the

obligation of contracts made under their aegis. *Id*.

The Plaintiffs, current and retired employees of the State of Maryland, assert that the

statutes in question outlines the terms of a contract between the Plaintiffs as state employees and

the State of Maryland.  The Plaintiffs contends that these statutory provisions created an OPEB

Trust Fund in which the State of Maryland is contractually obligated to fund.  The Plaintiffs claims

arise out of the 2020 legislation that seizes the employer contributions earmarked for the OPEG

Trust and diverts them for other purposes.   Specifically, the Plaintiffs contest the diversion of 25

million dollars from the OPEG Trust fund that was mandated by the 2015 Act. As a consequence, the Defendants have destabilized and defunded the property rights of the Plaintiffs.

The trust fund at issue assists in financing the post-retirement health insurance subsidy. The evidence in this case will show that the Plaintiffs vested into the OPEB Trust Fund as they all completed the required performance through employment service.  The evidence will also show that the Defendants impaired the contract and violated the Plaintiffs constitutional rights by diverting the employer contributions appropriated for the OPEB Trust Fund.  The Plaintiffs request that the Court enjoin the Defendants from seizing and diverting the employer contributions appropriated for fiscal year 2021 for the OPEB Trust Fund.

## II.    Diversion of the Appropriated Funds violate State and Federal Law.

The health benefit that includes prescription drug coverage that is the subject of this case is part of the postretirement health- insurance subsidy that is administered through the Health Program[29] and funded by the OPEB Trust Fund administered under the SRPS system. SPP § 34-101(c). Since the SRPS system has been designated as a qualified plan under section 401(a) of the Internal Revenue Code employer contributions are mandatory.[30]

The OPEB Trust Fund was established as an irrevocable tax-exempt trust in accordance with § 115 of the Internal Revenue Code ("IRC")  A 115 Trust is a vehicle for segregating agency funds from general assets for the purpose of funding essential governmental functions. [31] Providing post-retirement health benefits through a Trust is deemed an essential government function by the Internal Revenue Code.[32]   Therefore, the State of Maryland is precluded from diverting Trust funds from its intended use and cannot spend these appropriated funds for any

---

[29] Maryland Code Annot. State Personnel & Pensions §§ 2-501 – 2-516.
[30] 28 U.S. Code § 401(a).
[31] 26 U.S. Code § 115(1).
[32] Internal Revenue Code Rev. Rul. 77-261, 1977-2 C.B. 45.

purpose other than state retiree post-employment benefits. In doing so the Defendants' have jeopardized the Trust Fund's tax-exempt status. See also IRC, 26 U. S. C. § 401(a)(13)( "[a] trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." ). The Plaintiffs contend that appropriated funds are indeed part of this Trust per statute and that the Governor, by requesting, and the General Assembly, by enacting, the Budget and Reconciliation Act of 2020 have violated federal law.

The OPEB Trust Fund was formed as an irrevocable trust. [33] Under Maryland law once an irrevocable trust is created, the grantor gives up all rights of ownerships of the property used to fund the trust and any modification of the trust will require the consent of the beneficiaries.[34] In this case, the state retirees have not received any requests for consent to divert the employer contribution appropriated from its intended purpose. In fact, the General Assembly who created the SRPS system directed it to hold the assets within the Trust Fund for the exclusive purpose of providing benefits to participants, i.e., state retirees. SPP § 21-202.

The Plaintiffs are entitled to relief from this Court to enjoin the Defendants from seizing and diverting OPEB Trust Funds for purposes other than post-employment benefits that finances the health subsidy that includes prescription drug coverage.

### III.      The Defendants Actions are a violation of the Contract Clause.

Article I, Section 10, clause 1 of the United States Constitution provides, in pertinent part, that "[n]o State shall…pass…any law impairing the Obligation of Contracts."  It, "long has been established that the Contract Clause limits the power of the States to modify their own contracts

---

[33] Public Employees' and Retirees' Benefits Sustainability Commission, 2010 Interim Report Annapolis, MD January 2011, page 21
[34] MD Code, Estates and Trusts, § 14.5-410

as to regulate those between private parties." United States Trust Co. v. New Jersey, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515 (1987).

The OPEB Trust Fund is not and has never was intended to be a gratuity. See City of Frederick v. Quinn, 371 A. 2d 724 (1977). Rather retirement benefits in Maryland are contractual in nature. The State uses the promise of other-post employment benefits as an inducement to attract and keep a skilled workforce. Workers as a rule, value these post-employment benefits, as part of their overall pension package of compensation and greatly devalue pension benefits (and thus view competing private opportunities more favorably in comparison) when they lose confidence in the integrity of the retirement system responsible for paying their benefits. When the government, as in the present case, interrupts the statutorily mandated and legislatively appropriated flow of money previously determined to be necessary for the successful operation of the OPEB system, it materially impairs the contract that exists between the State and the worker. When the purpose of behind the impairment is merely to use the money to maintain a balanced budget, the government action violates the Contract Clause of the United States.

### IV.  Plaintiffs are Entitled to Relief from this Court to Stop Defendants' Continuous Unlawful Use of Appropriated Funds

#### A.  Likelihood of Success

Likelihood of success on the merits is measured by whether the instant litigation has a realistic chance of achieving its goal. Ehrlich v. Perez, 394 Md. 691, 708 (2006). "[T]he party seeking the … injunction must establish that it has a real probability of prevailing on the merits, not merely a remote possibility of doing so." Id. (emphasis in original).

Maryland Courts have a long history of treating the relationship between governmental employers and employees as fundamentally contractual in nature and have determined that as,

"'pension benefits represent a form of deferred compensation for services rendered, the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property, ... an employee acquires a [judicially recognized] property right to pension benefits when he enters upon the performance of his employment contract.'" Deering v. Deering, 292 Md. 115, 127, 437 A.2d 883 (citing Brown, supra, 126 Cal. Rptr. at 637, 544 P.2d at 565)."

Archer v. Archer, 303 Md. 347, 492 A.2d 1074 (1985).

The claims alleged in this motion arise out of the contractual relationship between the Plaintiffs and the Defendants.  Therefore as to the OPEB Trust Counts contained in the Complaint, the Plaintiffs claims will be successful in the event of  1) Plaintiffs establishing contractual rights to statutorily mandated funding; and 2) whether it is permissible for the State of Maryland to use funds appropriated to an irrevocable trust as a rainy day fund for the government at large. It is relevant for the Court to consider that it is the law in the State of Maryland that determines the contract.  Baker v. Baltimore County, 487 F. Sup. 466 (Dist. Md 1980).

Once the issue whether and to what extent a contract exists, the next inquiry is whether the contract has been substantially impaired.  See U.S. Trust, at 17-18, 97 S.Ct. at 1515-16. When it comes to pensions or like benefits, the Federal District Court in Maryland has found that any diminution in already-earned benefits is likely to be substantial.    To determine the degree of impairment, the primary measure is "the reliance which the aggrieved party placed on the contractual obligation."  Andrews v. Anne Arundel County, 14 F. Supp. 2d 752 (Dist. Md. 1998). Therefore, any reduction of pension benefits is likely to be significant given that "individuals plan their lives [based upon these benefits]. Id.

**B.  Balancing of Convenience.**

The balance of convenience factor, also referred to as the balance of hardships factor, is "determined by whether greater injury would be done to the defendant by granting the injunction than would by its refusal." Schade v. Md. State Bd. of Elections, 401 Md. at 36. This Court has stated that "of the four factors to be considered by the trial court, the balance of hardships is the most important." Antwerpen Dodge, Ltd. v. Herb Gordon Auto World, Inc., 117 Md. App. 290, 304, cert. denied, 347 Md. 681 (1997). If the balance of hardship weighs in favor of the plaintiff, the likelihood of success factor becomes less important. Eastside Vend Distributors, Inc., 396 Md. at 242; see also Antwerpen Dodge, Ltd., 117 Md. App. at 304.

The Plaintiffs have a contractual right to a fully funded OPEB Trust Fund that includes the employer contribution appropriated in the State Budget. Deprivation of this contractual right which is codified in SPP § 21-303(a) for any period of time that will create insolvency in the Fund and is an infringement on a vested contractual right that can only be cured by allowing the employer contributions appropriated to the OPEB Trust fund to stay there, as well as, following the statutory guidelines to allow stabilization of the Trust.

The State contractually obligated to bear the burden of this injunction and due to this obligation, the Plaintiffs should not have to post bond.

**C.    The Plaintiffs would suffer irreparable injury if the funds appropriated by Statute are diverted from the OPEB Trust Fund for other purposes.**

What constitutes "irreparable harm" depends on the unique circumstances of each individual case. State Comm'n on Human Relations v. Talbot County Det. Ctr., 370 Md. 115, 140 (2002). But in general, an injury is considered irreparable for the purposes of an injunction if:

> "it is of such a character that a fair and reasonable redress may not be had in
> a court of law, so that to refuse the injunction would be a denial of justice—
> in other words, where, from the nature of the act, or from the circumstances
> surrounding the person injured, or from the financial condition of the person
> committing it, it cannot be readily, adequately, and completely compensated
> for with money."

State Comm'n on Human Relations, 370 Md. at 140.

In examining irreparable injury, the circuit court may consider the necessity to maintain the status quo pending a final outcome." LeJeune v. Coin Acceptors, Inc., 381 Md. 288, 301 (2004) That status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." Ehrlich v. Perez, 394 Md. 691, 734 (2006).

For reasons stated above, the Plaintiffs are entitled to this contractual right.  If the State had made the required employer contributions, the unfunded liability would be much less and the OPEB Trust fund level – only 3% in 2018, would be greater and more sustainable. Irreparable harm occurs since the diversion of appropriated funds will contribute to the insolvency of the OPEB Trust Fund threatening the financial livelihood of state employee's post-employment benefits in their health subsidy.

Plaintiffs, and all those similarly situated have the right to expect that the payments from the OPEB Trust will be made when they are supposed to be made.  This is part of the overall compensation package that members of the SRPS system have earned through their long service to the State. If the appropriated funds were calculated and based on the actuarial assumptions pursuant to SPP § 21-125, the funds belong in the OPEB Trust to benefit state employees when they retire and state retirees now.    Employer contributions that are diverted do not belong to the

State at all, but rather constitute earned compensation that the government has converted to the use of the citizenry at large.

Timely, systematic funding is the essence of the benefit afforded through the OPEB system. Departure from the systematic method of funding to OPEB is unconstitutional because the failure to do so causes harm to the actuarial soundness of that system.  In addition, the selection of an actuarially pre-funded method of financing similar to the pension system indicates a legislative intention to protect future taxpayers from the consequences of profligacy of past legislatures.

This action is to protect the assets of the OPEB Trust for only when they become so depleted and that benefit check starts bouncing will the State's financial liquidity be questioned. Plaintiffs are concerned that the depletion of this Fund is a reality and calls into question of why fight for a benefit that will (through the seizure and diversion of appropriated funds by the Defendants) become sufficiently depleted that the Plaintiffs will be forced onto Medicare Part D despite the time and effort put forth in this litigation. The harm will be irreparable if the Court does enter a preliminary injunction to enjoin this diversion of funds.

The diversion of appropriated funds must be enjoined to decrease the liability of a State's contracted obligation. The employer contributions appropriated for the OPEB Trust Fund will be wrongly disbursed and will be spent during fiscal year 2021 for purposes and objects other than what the Maryland law and the Internal Revenue Code specify. The actions of the Defendants have placed the post-employment future of state retiree's post-employment health benefits that include prescription drug coverage in jeopardy of elimination. Every retiree and every state employee who has currently vested into that system will suffer a loss of a property right that cannot be regained, making the harm irreparable to over 200,000 people.

### D.     Public Policy

Finally, the public interest is best served when representatives and agencies of the state is operating under lawful orders and by lawful means. The public interest is not served when a state agency or unit operates, at least in part, pursuant to an invalid rule or order.

We have also acknowledged that "[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." See Fogle v. H & G RESTAURANT, INC., 337 Md. 441(1995); Space Aero Products Co., Inc. v. R.E. Darling Co., Inc., 238 Md. 93, 128, 208 A.2d 74, cert. denied, 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed.2d 83 (1965).  No greater right and necessity to enjoin government action exists that is superior to the Plaintiffs' right that their property be protected from waste, wrongful expenditure and for safekeeping of their property, in trust and otherwise, as guaranteed by the Constitution of the United States.

The constitutionality of Governor Hogan's request for the appropriated funds and the subsequent passage of the Senate Bill 192 is of great public importance.  Maryland courts have not yet had an opportunity to rule that a State official's action in raiding the OPEB funds to balance the budget violates Md. Constitution, Art. 2, § 9; Md. Constitution, Art. 3, § 44; Md. Constitution, Art. 3, § 56; or Md. Constitution, Art. 3, § 32.   But the potential insolvency of the fund is so critical and grim, that only the Courts can protect Maryland State retirees from a breach of such magnitude.

Both Governor Hogan and his predecessor Governor O' Malley have attempted to avoid budget deficits by misappropriating System funds; but no court ruled on the lawlessness of their actions.  The issue is of great concern to State employees because the Governor's actions have threatened the actuarial soundness of the SRPS System, and because governors may continue to harm the soundness of the SRPS system by misusing OPEB funds to solve budget problems.  The

dire results that will occur if there is a failure to repay any and all escrowed contributions and to do anything less would be actuarially unsound and an injustice to our public employees who earned and vested into this benefit.

A judicial determination that the diversion of appropriated funds by government officials in unconstitutional is of paramount importance to current and future retirees because the integrity of the OPEB Trust Fund that funds the health benefit that includes prescription drug coverage is severely threatened during this litigation.   State retirees need to receive the intended constitutional protection from government officials who unilaterally and unlawfully act in ways that threaten the integrity of the OPEB Trust Fund.   Consequently, a message from this Court declaring the unconstitutionality of the Defendant, State of Maryland's actions through the Governor and the General Assembly's is essential to ensure that State officials do not continue to ignore their statutory fiscal and fiduciary responsibilities to State retirees by raiding the OPEB Trust fund.

## V.    CONCLUSION

Maryland statutes have defined the mechanism for funding the OPEB Trust Fund in the Maryland State Personnel & Pension Articles. Seizing and diverting appropriated OPEB funds is a violation of those laws, but the raiding of the employer contributions constitutes a brazen act of disregard for the principals and purposes expressly outlined in the State Personnel & Pensions Article. The OPEG Trust Fund, by its nature and funding mechanism should be insulated from the political and budgetary exigencies of a given time, given its purpose of having to produce post-employment health benefits for state retirees, a benefit that was used to induce and keep them employed with the State of Maryland.  If Maryland continues to divert millions of dollars of money earmarked for the OPEB Trust Fund every year, the only way to cope with the increasing OPEB liabilities will be by raising taxes on citizens, who will not receive government services or benefits

for the taxes that go to pay these benefits. Or the State will be forced to reduce the benefits that were earned by State retirees. Too many states have turned their backs on their employees after retirement, leaving them to face illness and poverty after giving twenty, thirty or more than forty years in service to this State.   This is not a permissible use of the State's police power. The Defendants have demonstrated that it was easier to divert these appropriated funds than to find other non-contractual appropriations to curtail or postpone, therefore State retirees are forced to turn to the Court for relief.

Plaintiffs respectfully request that this Court enter an injunction prohibiting the diversion of appropriated funds as outlined in the Budget Reconciliation and Financing Act of 2020 and further enjoining the diversion of appropriated OPEB Trust funds during the pendency of this case.

Respectfully

July 7, 2020                          /s/ Deborah A. Holloway Hill
   Date                               (Federal Bar 28384)
                                      Deborah A. Holloway Hill
    `                                 111 Warren Road, Suite 7B
                                      Cockeysville, MD 21030
                                      P: (410) 428-7278
                                      F: (866) 499-6906
                                      dahhlaw@outlook.com

                                      *Attorney for Plaintiffs*