**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | | |
|---|---|---|
| KENNETH FITCH, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No. 1:18-cv-02817-PJM |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**AFSCME'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## I.     Introduction

Intervening Plaintiff the American Federation of State, County, and Municipal Employees, Council 3 ("AFSCME"), by and through undersigned counsel, submits this memorandum in opposition to Defendants' motion to dismiss AFSCME's First Amended Complaint in Intervention. (ECF No. 140). The State's motion rehashes legal issues that it has raised without success in initially moving to dismiss the complaint (ECF No. 18-1), in opposing Plaintiffs' motion for a preliminary injunction (ECF No. 12), in opposing Plaintiffs' motion to expand the preliminary injunction (ECF No. 95 at 13-29), and other filings. Rather than advance this litigation to the next stage and develop an appropriate record, the State strains to prevail prematurely as though through sheer force of repetition in may change the Court's rulings. The State is wrong. The State again ignores the most relevant case law. Maryland law squarely permits a cause of action for unreasonable diminution of public employee benefits. The State's motion must therefore be dismissed.

**II.     Background and Procedural History**

This case concerns the State of Maryland's attempts to force State employee retirees off of the State prescription drug benefits and on to Medicare Part D. (ECF No. 131, ¶¶ 17-20). Prior to 2011, Maryland law provided that the State extend subsidized prescription drug benefits to its retirees, to receive the same benefits as State employees. (ECF No. 131, ¶ 15). In 2011, the Maryland General Assembly amended the law to discontinue such benefits to retirees who are eligible for Medicare Part D, as of Fiscal Year 2020. (ECF No. 131, ¶ 17). Retirees, who began working for and continued working for the State with the promise and understanding that they were entitled to continue their prescription drug benefits, would now be forced off of those benefits and on to the materially less favorable, more expensive Medicare Part D plans. (ECF No. 131, ¶¶ 17, 19).

On September 10, 2018, a group of retirees ("retiree Plaintiffs") brought this action to preserve their prescription drug benefits. (ECF No. 1). Retiree Plaintiffs asked this Court to declare that State retirees are due prescription drug benefits as a contractual right. (ECF No. 31). On October 16, 2018, this Court entered a preliminary injunction enjoining the State from retracting prescription drug benefits from State retirees.. (ECF No. 31; ECF No. 131, ¶ 23).

In part in response to the present litigation, in 2019 the General Assembly further amended the law regarding prescription drug benefits. 2019 Laws Ch. 767; (ECF No. 131, ¶ 24). While this legislation ("Chapter 767") extended some benefits to retirees, the level and extent of those benefits did not reach the level of the benefits of the State prescription drug benefits and still leaves retirees worse off. (ECF No. 131, ¶¶ 39-42). Additionally, in order to receive the most (though still inadequate and unreasonable) replacement benefits under the 2019 legislation, active State employees would have had to retire by December 31, 2019. (ECF No. 131, ¶ 37). On September

1, 2019, the State sent, by certified mail, notice to 70,000 individuals, including active State employees that the only way to retain prescription drug benefits was to retire immediately, by December 31, 2019. (ECF No. 131, ¶ 37). This letter created massive confusion amongst State employees regarding their promised benefits, their retirement options, and what benefits would be available to them if they retired before December 31, 2019, and what benefits would be available to them if they retired after December 31, 2019. (ECF No. 131, ¶¶ 35-42).

On September 5, 2019, this Court entered a revised scheduling order ordering the retiree Plaintiffs to file an amended Complaint, taking into account Chapter 767. (ECF No. 82). In response to Chapter 767, AFSCME moved to intervene in this litigation on November 1, 2019. (ECF No. 91). AFSCME represents 44 affiliated local unions who represent approximately 26,000 active employees of the State. (ECF No. 131, ¶¶ 7-11). AFSCME serves as the certified bargaining representative of those State employees. (ECF No. 131, ¶ 7). One of those subjects of collective bargaining is health benefits, including prescription drug benefits. (ECF No. 131, ¶ 11). AFSCME represents many members who received the State's September 1, 2019 letter, and who faced the decision of whether they need to retire early in order to secure some, but not all, of the promised benefits. (ECF No. 131, ¶¶7-11; 35-36).

This Court granted AFSCME's motion to intervene on December 11, 2019. (ECF No. 105). On March 2, 2020, the State filed a motion to dismiss AFSCME's Complaint. (ECF No. 109). The Court deferred ruling on the motion and AFSCME filed a First Amended Complaint on July 17, 2020. (ECF No. 131). The Court set a new briefing schedule on July 21, 2020. (ECF No. 134). The State filed a new Motion to Dismiss AFSCME's Amended Complaint on August 13, 2020. (ECF No. 140).

### III.   Standard of Review

"[T]he pleading standard [on a motion to dismiss for failure to state a claim] does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In order to survive a motion to dismiss for failure to state a claim, a plaintiff is only required to allege "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 93. "[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, … [though] 'factual allegations must be enough to raise a right to belief above the speculative level.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "A motion to dismiss tests the sufficiency of a complaint." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Thus, the court's evaluation of a motion to dismiss is "generally limited to a review of the allegations of the complaint itself … [and] documents that are explicitly incorporated into the complaint by reference. *Goines v. Valley Community Services Board*, 822 F.3d 159, 166-67 (4th Cir. 2016).

### IV.   Argument

AFSCME's Amended Complaint raises a straightforward claim of breach of contract under Maryland law, cognizable under *City of Frederick v. Quinn*, 35 Md. App. 626 (1977) and its progeny. The State's survey of out-of-state caselaw regarding public employee benefits is

irrelevant given the cause of action recognized by *Quinn*. Further, AFSCME is not required to allege any facts beyond the existence of promised public employee benefits, the State's attempt to diminish those benefits, and the unreasonableness of the replacement benefits, which are fully alleged in the Amended Complaint. The State has waived sovereign immunity in this matter both through its legislative contractual promises to State employees and through the MOU it entered into with AFSCME. Further, AFSCME may plead in the alternative, and if its *Quinn* claims fail, it is entitled to proceed under the contract clause as there would be no other remedy for the contractual violations. All counts of AFSCME's Amended Complaint state a claim upon which relief can be granted and the State's motion should be denied.

> **A. AFSCME has stated a claim under *Quinn* because AFSCME has alleged that the State seeks to diminish public employee benefits without reasonable substitute.**

The AFSCME Amended Complaint states a claim under established Maryland law regarding public employee benefits. The State notably—and disingenuously—ignores established Maryland law. The State's survey of public employee benefits and whether they are treated as contractual rights in other states is irrelevant given that Maryland courts have affirmatively determined and set out the standard in cases such as these. (ECF No. 140-1 at 20-34). Maryland law and precedent provide that public employee benefits cannot be divested by State or local government except by "reasonabl[e] modification [of] the plan, or [by] modifying benefits [such that] there is a simultaneous offsetting new benefit or liberalized qualifying condition." *City of Frederick v. Quinn*, 35 Md. App. 626 (1977). As the Fourth Circuit Court of Appeals has stated, "The reasonable modification principle articulated by Maryland's courts verifies that the plaintiffs have an opportunity to litigate a breach of contract claim under state law." *Cherry v. Mayor & City Council of Balt.*, 762 F.3d 366, 372 (4th Cir. 2014). Thus, to state a claim under *Quinn*, a plaintiff must plead: (1) that promised public employee benefits have been diminished or that public

5

employees have been divested of promised benefits; (2) that the change is not a reasonable modification of the plan; and (3) that there is no simultaneous offsetting new benefit or liberalized qualifying condition. *Id.* Because AFSCME has sufficiently pleaded all three elements, the motion to dismiss must be denied.

### 1. The Amended Complaint sufficiently alleges that the State is seeking to diminish contractual public employee benefits.

The laws enacted by the State which take away retirees' prescription drug benefits constitute a diminishment and divestment of public employee benefits. Maryland law recognizes that diminishing vested public employee benefits can be a breach of contract. *Quinn*, 35 Md. App. at 360-31; *Cherry*, 762 F.3d at 372. The *Quinn* Court discussed the aspects of the public employee benefits at issue which were relevant to determining that it was a contractual benefit, the diminishment of which serves as the basis of a *Quinn* breach of contract action:

> It is reasonable to assume … that [employees] were induced, at least in part, to their employment by the pension benefits held out at the time, just as they were induced by the salary then offered. The future benefits vested as they were proratedly earned. … Momentarily assuming for argument that the City could terminate either or both of these benefits at its option, by doing so it would have no more right to withdraw retroactively the … benefits that had accrued than it could demand repayment of the salary the employees had earned and been paid.

*Quinn*, 35 Md. App. at 630 (citations omitted). The prescription drug benefits at issue here induced many active employees represented by AFSCME to seek and retain State employment. (ECF No. 131, ¶ 12). The benefits vest after five years of State employment. (ECF No. 131, ¶ 47). These promised benefits are undeniably reduced and modified, as the State seeks to remove retirees from their vested right to these benefits by shifting them onto Medicare Part D. That is, the retirees will no longer receive the promised benefits, and active employees will no longer be able to expect the

contractual benefits. (ECF No. 131, ¶¶ 17-18).[1] These allegations are sufficient to plead the first *Quinn* element.

The State's argument that prescription drug benefits are not covered by *Quinn* seeks to relitigate arguments it has previously raised with slightly modified language. These arguments are unavailing. First, the State argues that in other states, cases about whether public employee benefits are contractual rights are treated differently, and that, again in other states using other standards, public employee benefits have seen a "sea change." (ECF No. 140-1 at 20-34; 37-39). This argument ignores the test fashioned by the Maryland courts to analyze public employee benefits cases which has not been questioned or modified by Maryland courts. *See Quinn*, 35 Md. App. at 630-31 (holding that inducement and vesting are central factors in this determination).

The State's second argument attempts to resurrect immaterial distinctions between the benefits at issue in this case and in *Quinn*, which argument is specifically foreclosed by *Quinn*. The State argues that there is a distinction between pensions and vested retiree health benefits. (ECF No. 140-1 at 37-39 17-18). There is no support in Maryland law that such a distinction matters. Like in *Quinn*, the benefit at issue here is a non-contributory benefit that employees have a right to after a number of years of service. *Quinn*, 35 Md. App. at 627. Indeed, the *Quinn* Court was concerned with whether the benefit induced employment and whether it vested, not whether the plan was contributory or constituted deferred compensation. There is simply no authority to suggest that this is a relevant distinction.

The State's new formulation of this argument is to draw a distinction between automatic and voluntarily drawn benefits, *i.e.*, a retiree may or may not choose to take advantage of the

---

[1] The State does not contest that this constitutes a diminution of benefits, but rather argues that the replacement benefits are reasonable. This argument addresses the second *Quinn* element.

7

prescription drug benefit. (ECF No. 140-1 at 38). This distinction is not relevant, and is not even correct. There is no authority, in *Quinn*, *Cherry*, or their progeny, that the voluntariness of a benefit is relevant in the *Quinn* breach of contract cause of action. But perhaps more importantly, the benefit is <u>not</u> voluntary. The benefit vests in employees after five years of State service. (ECF No. 131, ¶ 47). Employees cannot choose not to earn the benefit of being eligible for the prescription drug benefit upon retirement—they simply earn that right if they retire after reaching five years of State service.[2] That the employee has to take the affirmative step of paying premiums is immaterial: what is at stake is a right to the benefit. This is the right that the State seeks to divest employees of. Arguing that the benefit is not vested because it is contingent upon the retiree accepting it would, under the same logic, mean that a pension is not automatic because a retiree might not give the pension fund his address or cash the checks. Retirees may opt not to enroll in the benefits, but they may also opt not to cash their pension checks. The distinction is false and irrelevant. AFSCME has plainly pleaded a diminishment of contractual benefits.

### 2. The Amended Complaint sufficiently alleges that the substituted benefits are not reasonable.

The substituted benefits offered by the State under Chapter 767 are not reasonable modifications to the plan. Whether the replacement benefits are reasonable or sufficient is, necessarily, a highly factual and fact-dependent analysis that is inappropriate for adjudication in a motion to dismiss:

> Each case where a changed plan is substituted must be analyzed on its record to determine whether the change was reasonably intended to preserve the integrity of the [benefit] by enhancing its actuarial soundness, as a reasonable change promoting a paramount interest of the State without serious detriment to the employee. In short, the employee must have available substantially the program he

---

[2] Retirees do not, for instance, lose the ability to participate in the prescription drug benefit if they elect not to participate in it in a given year.

8

> bargained for and any diminution thereof must be balanced by other benefits or justified by countervailing equities for the public's welfare. … It is for the courts to determine upon the facts of each case what constitutes a permissible change.

*Quinn*, 35 Md. App. at 631 (quoting *City of Downey v. Bd. of Admin., Pub. Emp. Retire. Sys.*, 121 Cal. Rptr. 295, 303 (Cal. Ct. App. 1975)) (emphasis added). All AFSCME is required to do at this stage is allege facts supporting that the substitute is unreasonable.

AFSCME's Amended Complaint alleges that most retirees will be forced to bear higher out-of-pocket costs, that the substituted benefits are "materially worse," and that first dollar costs will greatly increase. (ECF No. 131, ¶¶ 39-40). The Amended Complaint alleges that many of the substitute benefits that the State purports to offer in Chapter 767 are thus far undefined, so that retirees (and this Court) cannot currently determine what payments will be covered and how they will be covered.[3] (ECF No. 131, ¶¶ 30, 32, 36-37, 41). Further, in order to retain the benefits State employees already have a vested contractual right, the State required those employees to seek early retirement, which significantly interferes with their life and future earnings. (ECF No. 131, ¶ 32, 37). AFSCME has plainly and sufficiently alleged that the substituted benefits are not reasonable. (ECF No. 131, ¶ 42.)[4]

---

[3] Reimbursement is significantly more onerous than the current system, as it requires retirees to front costs and wait an indeterminate period of time for reimbursement for significant medical expenses.

[4] The three programs, and their specific effects and injury to employees, are laid out below:

(1) The "Maryland State Retiree Prescription Drug Coverage Program," SPP § 2-509.1(d), applies to employees who retire on or before December 31, 2019. This program reimburses retirees when their out-of-pocket costs under a Medicare Part D plan exceed the $1,500 cap. SPP §2-509.1(d)(2). The effect is to cap the increased costs to retirees, who are now forced onto more expensive Medicare Part D plans, at $1,500, but the damage is obviously substantial.

The State's argument that the programs are substantially the same is not appropriate for a motion to dismiss. *See Quinn*, 35 Md. App. at 630-31. The Amended Complaint's allegations regarding increased costs, change in allocation of benefits, confusion, and forcing early retirement are more than sufficient to survive at this stage. The State, indeed, agrees that there is a modification of benefits and that the two programs are not equivalent for all retirees. (ECF No. 140-1 at 43). The State seeks to introduce material outside of the pleadings and advance arguments regarding the State's interests prior to discovery and the creation of an evidentiary record upon which it could base such an argument. *See Goines v. Valley Community Services Board*, 822 F.3d 159, 166-67 (4th Cir. 2016) (holding that extraneous documents not integral to the complaint may not be considered at the motion to dismiss phase). The State is free to make such a case at the summary judgment stage. However, based upon the pleadings, the State has no viable argument that AFSCME has not plead allegations that the benefits are not reasonable. The State's motion must be denied.

---

(2) The "Maryland State Retiree Catastrophic Prescription Drug Assistance Program," SPP § 2-509.1(e), applies to employees who retire after December 31, 2019. This program "reimburses a participant for out-of-pocket costs after the participant has entered catastrophic coverage" under Medicare Part D. SPP § 2-509.1(e)(2). Thus, employees who retire after December 31, 2019, will receive some reimbursement once they have paid sufficient out-of-pocket costs. DBM has not yet specified the extent of that reimbursement. While State benefits are not fully terminated or divested, under this program and the program above, benefits are drastically reduced and access to the current prescription drug plan is discontinued.

(3) The "Maryland State Retiree Life-Sustaining Prescription Drug Assistance Program," SPP § 2-509.1(f), applies to all Medicare-eligible retirees who are in either of the above programs. It reimburses retirees "life-sustaining" drugs covered by the State prescription drug benefit but not covered under Medicare. SPP § 2-509.1(f)(2). Previously, of course, a retiree would be eligible to receive all drugs covered by the State plan, regardless of whether that drug is deemed "life-sustaining." DBM has not yet determined which drugs are "life-sustaining," or how it will determine that status.

(ECF No. 131, ¶¶ 20-29).

10

### 3. The State has not offset the benefits or liberalized the qualifying conditions.

The Amended Complaint sufficiently pleads that the State has not offset diminution of the benefits or liberalized the qualifying conditions. The State may modify vested contractual benefits by "modifying benefits [such that] there is a simultaneous offsetting new benefit or liberalized qualifying condition." *Quinn*, 35 Md. App. at 631. The Amended Complaint sufficiently pleads that there is no offsetting benefits, as the benefits offered by Chapter 767 "are materially worse for State employees," and their "costs, even with various levels of subsidy, will go up. … [F]irst dollar costs will greatly increase." (ECF No. 131, ¶ 40). The qualifying conditions are in no sense liberalized – in fact, qualifying conditions are now considerably more restrictive as they are based on new and earlier deadlines to retire in order to retain benefits. (ECF No. 131, ¶ 37).

The State does not appear to contest this third element in its motion. The State argues that the modification is reasonable given the benefits retirees get through Medicare Part D, not through a new offsetting benefit offered by the State. (ECF No. 140-1 at 42-44). The offsetting benefits offered by the State through Chapter 767 do not offset the lost benefits. First, the State is relying on Medicare Part D to fill much of the gap, not an offsetting State offered benefit. Second, while Chapter 767 does offer some alternative benefits, AFSCME pleads that it does not fill the gap. (ECF No. 131, ¶ 40).

### B. The State has waived sovereign immunity through its contractual agreements through legislation and through the MOU it entered with AFSCME.

The State argues that sovereign immunity bars this suit because there is no written contract. The State has waived sovereign immunity in breach of contract cases where the contract is reduced to writing. Md. Code State Government ("SG") § 12-201(a). This provision has been interpreted to mean that waiver does not apply to implied contracts. *Alternatives Unlimited, Inc. v. New Balt. City Bd. of School Comm'rs*, 155 Md. App. 415 (2004).

11

The contract here is not implied, and a cause of action under *Quinn* does not rely upon an implied contract. Rather, it depends, and this case depends, upon the legislative promises made to State employees as a condition and benefit of employment. Just as in *Quinn*, the contractual benefits were reduced to writing in the form of legislation, and in doing so the General Assembly bound itself to the vested benefits. There is no question here of an implied contract – the question answered by the analysis laid out by *Quinn* and *Cherry* is whether the legislative actions of a public sector employer create contractual benefits for public sector employees. *Quinn*, 35 Md. App. at 629-32; *Cherry*, 762 F.3d at 372. Maryland law treats the legislation as an intent to be bound and manifesting intent to form a contract to extend employees those benefits. *Id.* A *Quinn* breach of contract action does not create an implied contract – rather, it reconciles contractual benefits with the fact that "[u]nder Maryland law, the contract or vested rights of employees 'are subject to a reserved legislative power to make reasonable modifications in the plan, or indeed to modify benefits if there is a simultaneous offsetting new benefit.'" *Cherry*, 762 F.3d at 372. The case turns on the written contractual benefits found, in part, in Md. Code State Personnel and Pensions ("SPP") § 2-509.1, as variously amended. Under *Quinn*, that is the contract, and under SG § 12-201(a), sovereign immunity is waived in this case.

This was not the only contract the State entered into regarding prescription drug benefits. In Article 25 of the Memorandum of Understanding between AFSCME and the State, the State commits to "maintain the current health (including vision) and dental insurance programs and practices." (ECF No. 131, ¶ 13). This additional contract was reduced to writing and has been re-affirmed by the State as recently at 2017. The State cannot argue that sovereign immunity has not been waived in this case.

### C. AFSCME's Count III is a valid alternative pleading.

The State's newest motion to dismiss, for the first time, vigorously contests the Contracts Clause claim, Count III of the Amended Complaint. The State argues that there is no Contract Clause claim available to plaintiffs under federal precedents which do not treat the statutes at issue as a contract or valid source of contractual rights. Because the Contract Clause claim is an alternative theory under which AFSCME may seek relief, and litigants are entitled to pursue alternative theories past the motion to dismiss stage, the State's motion must be denied as to Count III as well. Further, because Maryland law does address the question of the contractual nature of these statutes, and answers in the affirmative, the federal caselaw—which concern cases where state law does not treat such statutes as contractual rights—is not relevant.

The State is correct that the *Cherry* Court denied the plaintiffs relief under an unconstitutional impairment of contracts claim in similar circumstances, however, the State ignores that that step was taken in the final disposition of the case, not at the motion to dismiss stage. 762 F.3d at 370. In *Cherry*, the plaintiffs brought both a *Quinn* breach of contract claim and a Contract Clause claim. *Id.* Both claims survived the motion to dismiss phase and were decided a full trial on a large evidentiary record. *Id.* at 369. The *Cherry* Court determined that the Contract Clause claim failed because when "plaintiffs retain the right to recover damages for breach of contract, there is no impairment of contract under the Contract Clause." *Id.* at 371. That is, the Court determined that the Contract Clause claim failed because the *Quinn* breach of contract succeeded and was viable.

At this stage, in this case, it remains to be seen whether plaintiffs retain the right to recover damages for breach of contract. It may transpire that plaintiffs will succeed, or one of the State's arguments may prevail and plaintiffs may fail even though the Court finds a contractual right to

the benefits. There can be no debate that plaintiffs are entitled to plead alternative theories of liability, and may allege a right to relief under alternative theories. Fed. R. Civ. P. 8(a)(3); *Homeland Training Center, LLC v. Summit Point Auto Research Ctr.*, 594 F.3d 285, 295 (4th Cir. 2010). AFSCME may pursue any alternative theories supported by the face of the Amended Complaint, and have pleaded a source of contractual rights protected by the Contract Clause. The motion must be denied as to Count III as well.

> **D. There is no authority to suggest that the State may evade its contractual duties by passing two laws to do so instead of one law to do so.**

The State's argument that there is no allegation that the contractual benefits existed after 2011 is mistaken and without support. (ECF No. 140-1 at 39). The State's argument here is that it did not simply take away a contractual benefit but, first, it passed a law stating that it would later take away a contractual benefit. First, there is no authority to suggest that this procedure in any way effects the analysis this Court performs under *Quinn*. Rather, the *Quinn* Court is clear that public employees are entitled to "substantially the program [they] bargained for." *Quinn*, 35 Md. App. at 631. It is unclear why a law warning employees that the State would not provide certain contractual benefits would have any effect on a vested contractual right, any more than a law passed which said the State would do so explicitly. To follow this reasoning, the State would be allowed to post hoc invalidate any and all vested employee benefits simply by first passing a law saying that it would do so. Two violations of *Quinn* do not make a right.

> **E. AFSCME's claims are ripe.**

Finally, the State's argument that AFSCME's claims are not ripe because it does not represent retired people (ECF No. 140-1 at 40), ignores Chapter 767, the vesting nature of the contractual right, and this very litigation. "[A] claim is not ripe for judicial review if it rests upon contingent future events that may not occur as anticipated," or if the issue is not "fit[] … for judicial

14

decision." *Mayor and City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 492 (D. Md. 2019). There is no doubt here about the status of the statute or its effect. AFSCME's entry into this litigation was prompted by Chapter 767 and, in particular, the State's decision to send a letter to tens of thousands of active State employees—many represented by AFSCME—which set a retirement deadline of December 31, 2019 for employees to retain certain retirement rights. (ECF No. 131, ¶¶ 35-37). The terms of Chapter 767, especially as interpreted in the State's letter, impacts active employees and AFSCME members. The State has admitted as much. Implicit in the State's letter is the understanding that employees' vested rights to certain prescription drug benefits would have a substantial impact on whether the employees decided to retire early in order to retain them. Further, once the rights vest after five years, the right exists—the State has not made any argument that an employee may somehow lose this right once vested. Current employees, and their exclusive representative under Maryland law, must have the right to preserve these rights at this stage. Finally, AFSCME is intervening in ongoing litigation that affects the rights of its members. The State's argument that current employees have no standing yet to litigate would force them out of active litigation, the object of which is to define those current employees' rights. This is hardly the kind of "premature adjudication, … entangling … in abstract disagreements." *Trump*, 416 F. Supp. 3d at 492. The Amended Complaint should not be dismissed.

## V. Conclusion

For the foregoing reasons, Plaintiff in Intervention AFSCME respectfully requests that this Court deny Defendants' Motion to Dismiss. (ECF No. 140).

Dated: September 10, 2020                                   Respectfully submitted,


                                                            /s/ David Gray Wright
                                                            Joel A. Smith (Bar No.00989)
                                                            David Gray Wright (Bar No. 29240)
                                                            David Maher (Bar No. 20634)
                                                            Kahn Smith & Collins, P.A.
                                                            201 North Charles Street, 10th Floor
                                                            Baltimore, Maryland 21201
                                                            (410) 244-1010
                                                            (410) 244-8001 fax
                                                            smith@kahnsmith.com
                                                            wright@kahnsmith.com
                                                            maher@kahnsmith.com

                                                            *Attorneys for Plaintiff AFSCME*


## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2020, the foregoing was electronically filed with the Court using the CM/ECF system which will then send electronic notification of the filing to all counsel of record by electronic mail.

                                                            /s/ David Gray Wright
                                                            David Gray Wright