## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KENNETH FITCH**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. **PJM 18-2817** |
| | * | |
| **STATE OF MARYLAND**, *et al.* | * | |
| | * | |
| Defendants. | * | |

### MEMORANDUM OPINION

This case concerns the State of Maryland's subsidized prescription drug benefit program provided to certain retired and current State employees and the State's attempt to mandate transition of those retirees and employees to Part D of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108–173, 117 Stat. 2066 (codified at 42 U.S.C. § 1395w-101 *et seq.* ("Part D")).  In the first of two complaints, a group of current retirees (the "Fitch Plaintiffs") and in the second complaint, a number of active State employees represented by the American Federation of State, County, and Municipal Employees, AFL-CIO ("AFSCME"), have sued various state defendants, claiming contractual and constitutional rights to the state-subsidized program. *See* Third Amended Complaint, ECF No. 123 ("Fitch Compl."); First Amended Complaint, ECF No. 131 ("AFSCME Compl.").

In a previous Opinion, issued December 30, 2021, the Court held that the statutes governing the drug benefit program, Md. Code Ann., State Pers. & Pens. ("SPP") §§ 2-508 and 2-509.1, confer upon certain State retirees a contractual right to prescription drug benefits—namely, those who were retired on or before June 30, 2011, with 16 years or at least 5 years of creditable service,

1

as well as employees who were retired between July 1, 2011 and December 31, 2018, with 16 years or at least 5 years of creditable service, or any employee on disability retirement of any duration during those time periods. *See* Memorandum Opinion, ECF No. 148; Order, ECF No. 149. However, the Court held that retirees who retired after December 31, 2018, and all active employees, did not have a contractual entitlement under the statutes, in consequence of which the Court dismissed the claims of those plaintiffs. The Court also dismissed all Plaintiffs' claims related to the trust funds established to fund the prescription benefit plan but held in abeyance constitutional claims related to the prescription benefit pending final resolution of the contract-related claims.

The State of Maryland has filed a Motion to Certify [an] Interlocutory Appeal, ECF No. 167, seeking appellate review of the Court's December 30, 2021 Opinion and Order, which the Fitch Plaintiffs oppose. AFSCME, which has already taken an appeal to the Fourth Circuit from the dismissal of its members' claims, does not oppose the Motion.

Having reviewed the parties' briefs, the Court finds that no hearing is necessary. *See* D. Md. L.R. 105.6. For the reasons that follow, the Motion is **DENIED**.

## I.     QUESTION THE STATE SEEKS TO HAVE CERTIFIED

Pursuant to 28 U.S.C. § 1292(b), the State seeks interlocutory review of a purportedly controlling question of law decided by the Court in its prior Opinion that it believes is certifiable; viz., "whether a contractual obligation binds the state to continue providing retiree prescription drug benefits to Medicare-eligible retirees." ECF No. 167 at 5. As indicated in its earlier Opinion, the Court found that a contractual obligation existed as to certain retirees based on its interpretation of SPP §§ 2-508 and 2-509.1.

2

The Fitch Plaintiffs, in opposition to the Motion to Certify, argue that the State, in reality, at various points, has articulated the proposed question-to-be-certified in at least four different ways:

1) "Whether the Maryland General Assembly, by directing the Department of Budget & Management to 'continue to include a prescription drug benefit plan in the health insurance benefit options... available to retirees under §§ 2-508 and 2-509 of this subtitle,' clearly and unequivocally expressed its intent to contractually bind the State to providing such a plan, in perpetuity, to those employees who retired prior to the announced January 1, 2019, date for termination of plan." ECF 167 at 4.

2) Whether a contractual obligation binds the state to continue providing retiree prescription drug benefits to Medicare-eligible retirees. ECF 167 at 5.

3) Whether the legislature's direction to the Department of Budget & Management to continue providing prescription drug benefits despite the Enactment of Medicare Part D constitutes a unilateral contractual commitment. ECF 167 at 6.

4) Whether government employee benefits programs create contractual commitments in the same way that pension programs do. ECF 167 at 9.

Nonetheless, the Court understands the State to seek certification of the ultimate legal question in its prior Opinion: Do the referenced statutes create a contract to provide prescription drug benefits for certain retired state employees and, if so, for which?

## II.   DISCUSSION

### A.   Legal Standard

28 U.S.C. § 1292(b) provides that a district judge may certify an order for interlocutory appeal where the order: "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion [3] and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," "[p]rovided, however, that application . . . shall not stay proceedings" unless ordered by the district judge or appellate court. "Unless all of the statutory criteria are satisfied, . . . 'the district court may not and should not

3

certify its order . . . for an immediate appeal under section 1292(b).'" *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)). "Failing to meet even one of the statutory requirements will defeat a litigant's request for an interlocutory appeal." *Cooke-Bates v. Bayer Corp.*, No. 3:10BCVB261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010); *Butler*, 307 F.R.D. at 452 ("Unless *all* of the statutory criteria are satisfied… 'the district court may not and should not certify its order… under section 1292(b).'") (internal citations omitted).

The Fourth Circuit has cautioned that § 1292(b) review should be used sparingly. Indeed, certification under § 1292(b) is improper if it is simply "to provide early review of difficult rulings in hard cases." *Butler*, 307 F.R.D. at 452. "A district court's decision not to certify an interlocutory appeal is final and unreviewable." *D.C. v. Trump*, 344 F. Supp. 3d 828, 833 (D. Md. 2018), *vacated on other grounds,* 838 F. App'x 789 (4th Cir. 2021).

## B. Controlling Question of Law

In order to certify appeal, this Court must first find that there is a controlling question of law, meaning that the proposed question must present "an abstract legal issue that the court of appeals can decide quickly and cleanly" without "delv[ing] beyond the surface of the record in order to determine the facts." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340–41 (4th Cir. 2017) (*quoting McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). This includes questions "of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *Clark Const. Grp., Inc. v. Allglass Sys., Inc*, No. CIV.A. DKC 2002-1590, 2005 WL 736606, at *2 (D. Md. Mar. 30, 2005)). Excluded, however, are questions that do not determine whether litigation will continue and questions of "whether the district court properly applied settled law." *United States ex rel. Michaels*, 848 F.3d at 341. "A

4

*controlling* question of law [includes] every order [that], if erroneous, would be reversible error on final appeal." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.), cert. denied, 419 U.S. 885 (1974)). A ruling can also be controlling it if "control[s] many aspects of the proceedings in substantial respects, particularly the scope of the discovery. . . ." *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 742 (D. Md. 2003).

The State argues that whether the referenced statutes in any respect constitute a contractual commitment is a "controlling question of law," because they involve "the meaning of a statutory or constitutional provision, regulation or common law doctrine." *Price v. Atl. Ro-Ro Carriers, Inc.*, No. CIV. CCB-11-1735, 2014 WL 7358729, at *1 (D. Md. Dec. 22, 2014) (citations omitted). It is a *controlling* question of law, says the State, because resolution of the question in favor of the State would end the litigation. *See, e.g., Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011) (issue is a controlling question where the appellate court's "resolution of it terminates the case"). Even a decision against the State, it suggests, would streamline the litigation by focusing the dispute on whether Medicare Part D and the additional State benefits created by legislation in 2019 constitute a "reasonable modification" of the retiree prescription drug benefit program. That more limited resolution, says the State, combined with the Fourth Circuit's resolution of AFSCME's currently pending appeal also would satisfy § 1292, because it would "significantly impact the action," *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003), by determining "the future course of the litigation," *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991).

The Fitch Plaintiffs, as mentioned, insist the issue here is not a quick and clean question of law, but, rather, involves multiple formulations, incorporating questions of fact as to the details of

the prescription benefit plans, past, present, and future that Plaintiffs believe they have a contractual right to. These factual issues, they argue, are ill suited to interlocutory appellate review. The Court engages with these arguments.

"[W]hether a contractual obligation binds the state to continue providing retiree prescription drug benefits to Medicare-eligible retirees," ECF No. 167 at 5, does turn on the interpretation of §§ 2-508 and 2-509.1 of the State Personnel and Pension Article and principles of contract formation. These are legal, as opposed to factual, inquiries. Though the Fitch Plaintiffs are correct that the meaning of these statutes, as applied, depends on the retirement dates of the State employees, those dates were themselves drawn from the statutes in question. The Court accepts that whether a contract with the State exists and its scope, based on statutorily defined dates, presents a legal issue. The Court concludes, therefore, that, even allowing for minor variations, a question of law has been identified.

The Court must next determine whether this legal question is "controlling." Though the State argues that if the Court's conclusion that there was a contract is erroneous, the litigation will end, that is not really the case: As the Court explained in its prior Opinion, the Fitch Plaintiffs' constitutional claim could proceed even in the event there is no recovery under contract. *See* Opinion at 19. That claim was specifically held in abeyance. Thus, an interlocutory decision on appeal in the State's favor would not end the litigation.

The State also argues that even a decision against it will "streamline" the litigation by focusing it on the substance of the proposed benefit replacement plans and whether the proposed modifications are "reasonable." But, as the Fitch Plaintiffs note, the Court is already at this point of inquiry: Having found that a contract or contracts exist, the question to be investigated in

6

discovery and perhaps answered on summary judgment, is precisely the reasonableness of the State's proposed modifications to the contract. Thus, certification would not "streamline" the litigation beyond what has already occurred based on the Court's decision on the Motion to Dismiss. *See In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, No. 1:17-MD-2775, 2019 WL 6345746 (D. Md. Nov. 26, 2019) (scope of statute and application to plaintiffs' claims not controlling where several claims would survive regardless of interlocutory appeal). *But see Lynn*, 953 F. Supp at 623-24 (finding controlling question of law where court's grant of summary judgment to plaintiff on three counts, if erroneous, would be reversible on appeal).

To be sure, a decision wholly in the State's favor on interlocutory review would change the course of the litigation by eliminating all but the constitutional claim. However, it is entirely possible that, following discovery and supplemental briefing and the Court's consideration of the reasonableness of the State's proposed contract modifications, the Fitch Plaintiffs' contractual claims may well be eliminated before trial, without the need for interlocutory intervention by the Fourth Circuit. And, in that case, the Fourth Circuit will have a fully developed record on which to base its decision.

The Court is aware that AFSCME has appealed the Court's final judgment dismissing its claims, and acknowledges that certification of the State's issues could permit the Fourth Circuit to consider the AFSCME decision alongside any decision made with respect to the Fitch Plaintiffs' claims. However, the Court does not believe that convenience such as that renders the question controlling for the purposes of interlocutory certification. Given that the Court has already "streamlined" the inquiry so as to reach the point of inquiry as to the reasonableness of the State's proposed modifications to the drug benefit plan, and given that discovery and briefing in this Court

7

may yet change the direction and outcome of the case, it adds little to suggest that certification will "significantly impact the action," *APCC Services, Inc.*, 297 F. Supp. 2d at 96, by determining "the future course of the litigation," *Johnson*, 930 F.2d at 1206. The "mere fact" that "resolution at this time may save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal." *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (4th Cir. 1989).

In short, the Court concludes that the first prong required for certification has not been met. While its inquiry could end here, for the sake of completeness the Court will also consider the parties' arguments as to the second and third prongs that must be satisfied for certification.

## C. Substantial Ground for Difference of Opinion

The second requirement for certification of an interlocutory appeal is that the controlling question of law must be one "as to which there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This element may be satisfied where "there is 'a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits,' or 'where a court's challenged decision conflicts with decisions of several other courts.'" *Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No. CIV. CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (quoting *APCC Services, Inc.*, 297 F. Supp. 2d at 97–98).

The State argues that both situations apply here: that this is a case where there is a dearth of precedent in the controlling jurisdiction, and that there are decisions of several other courts in conflict with the Court's decision, presumably in other federal circuits and in state courts.

To begin, the Court needs to focus on the precise question the State has asked it to certify: i.e., whether a contractual obligation binds the State to continue providing retiree drug prescription benefits to Medicare-eligible retirees.

As for dearth of precedent as to that question within the controlling jurisdiction, the State submits that neither the Maryland Court of Appeals nor the Fourth Circuit has ever addressed whether "employee benefit programs create contractual commitments in the same way that pension programs do." Motion, p. 9. The Fitch Plaintiffs agree.[1]

What about conflicting decisions from other circuits? The Court is not aware of any decision of a federal circuit court that has considered, much less reached a divergent outcome, as to the precise question of the modifiability of drug prescription benefits for retired government employees. *Cf. River City Fraternal Ord. of Police Lodge 614, Inc. v. Kentucky Ret. Sys. by & through Bd. of Trustees*, 999 F.3d 1003, 1006-7, 1011 (6th Cir. 2021) (Kentucky statutes created contract to provide retirement health insurance to retired police officers and to refrain from reducing their insurance benefit; Medicare Secondary Payer Act of 1980 did not, as State argued, require reduction of benefit for retirees who obtained later employment). Nor indeed do there appear to be any federal district courts that have precisely opined on the matter. *Cf. Sacramento Cnty. Retired Emps. Ass'n v. Cnty. of Sacramento*, 975 F. Supp. 2d 1150, 1158, 1164 (E.D. Cal. 2013) (County Board of Supervisors' resolutions providing subsidies for county retiree health and

---

[1] As for the Formal Opinion of the Maryland Attorney General to the effect that the statutes in question create no obligation on the part of the State, 90 Md. Opp. Att'y Gen. 95 (2005), the Court respectfully finds, and the Fitch Plaintiffs no doubt would agree, that that is irrelevant. Not only is the A.G.'s opinion not a court decision, it is an opinion of the Attorney for the State of Maryland, a primary litigant here; indeed it is the office of the Maryland Attorney General that is representing the State in this proceeding. For present purposes, the A.G.'s opinion in essence is little more than another brief by the State in support of its position in the case. It is not the basis for finding a substantial difference of opinion for certification purposes.

dental insurance did not create a contract; resolutions of Board expressly stated an "inten[t] to provide benefits . . . without creating any contractual . . . entitlement thereto in present or future retirees"); *Roberts v. Cuomo*, 339 F. Supp. 3d 36, 77 (N.D.N.Y. 2018) (collective bargaining agreements fixing contribution rate for retiree health benefit did not create contractual right to indefinite contribution). There are concededly some state court decisions, not all by state supreme courts, that have considered these questions and, typically based on the language of the particular statutes in those states and on whatever rationale those courts have brought to bear, those courts have concluded that certain employee health benefits are modifiable. But there are also, of course, decisions of other state courts that, as cited by the Court in its earlier Opinion, "invite comparison" with this Court's decision. The problem with all these decisions, however, is that their statutory predicates and rationales are sufficiently different, even from one another, that it is difficult to conclude that there are "substantial" grounds for disagreement as to the precise issue articulated by the State in the present case.

The State suggests that the key case in any analysis of the "substantial difference of opinion" factor is *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985) which the State says Court's opinion in the present case conflicts with. But there do not appear to be any cases from other circuit courts that have evaluated the susceptibility of government health and welfare benefit programs for retirees to modification under the clear statement of intent-to-be-contractually-bound announced in *Atchison*. *But see Sacramento Cnty. Retired Emps.* Ass'n, 975 F. Supp. 2d at 1163-1164 (E.D. Cal. 2013) (*district* court found no clear statement to be contractually bound indefinitely in county Board resolutions providing for health and dental insurance subsidy for retirees).

This Court certainly considered *Atchison* in reaching its determination that the particular statutes in this case created a contract between the State and certain retirees with respect to prescription drug benefits. However, as Plaintiffs point out, the Court engaged primarily in traditional statutory interpretation, applying conventional principles of contract law in finding a contract. To the extent that some courts may have reached conclusions in general harmony or disharmony with the Court's analysis, based on their own particular statutes or their own principles of statutory interpretation and contract law, it cannot be said that a "substantial ground for a difference of opinion" exists as to the precise question of law under consideration. More plausibly, in the Court's view, it demonstrates that, applying a generalized statement of the law, including *Atchison,* to different statutes based on their own understanding of principles of interpretation and contract law, courts have reached varying conclusions.

Even viewing the issue as one of first impression as opposed to one that has been subject to conflicting interpretations does not carry the day for the State, since the "mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Lynn*, 953 F. Supp. 2d at 624. *See also Hammons v. Univ. of Maryland Med. Sys. Corp.*, No. CV DKC 20-2088, 2021 WL 4951921, at *5 (D. Md. Oct. 25, 2021) (where relevant case law scant and party attempted to create ground for disagreement by arguing court disagreed with Supreme Court, matter was really one of first impression and that, alone, is not a substantial ground for difference of opinion).

The fact that <u>all</u> parties might disagree with an aspect of the Court's ruling for certification purposes would be of no import. *See, e.g., Lynn*, 953 F. Supp. 2d at 626 (parties' disagreement on Court's interpretation of statute irrelevant; second prong for certification not met as movant failed to show disagreement among courts).

11

Nor, of course, does one party's "own disappointment or disagreement with the outcome of an order . . . rise to the level of substantial doubt." *See Lizarbe v. Rondon*, No. CIVIL PJM 07-1809, 2009 WL 2487083, at *3 (D. Md. Aug. 12, 2009) (where there was no contrary authority other than party's own disagreement with controlling case law, there was no substantial ground for difference of opinion). *Goodman v. Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (internal quotation omitted) ("[a]n issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue."). *Cf. Commonwealth of Virginia ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, No. 3:14CV706, 2015 WL 3540473, at *5 (E.D. Va. June 3, 2015) (explaining that a substantial ground for difference of opinion exists when there is "genuine doubt as to whether the district court applied the correct legal standard in its order") (citation omitted). The State may disagree with the Court's application of the law and interpretation of the statutes but it has not shown a substantial ground for difference of opinion required for certification.

### D. Materially Advance Ultimate Termination of the Litigation

The third and final requirement for § 1292(b) certification purposes is that the controlling question of law as to which a substantial ground for difference of opinion exists is one where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." "[I]n determining whether certification will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Hammons*, 2021 WL 4951921, at *6, citing *Lynn*, 953 F. Supp. 2d at 626.

This inquiry replicates much of the first prong of the § 1292(b) analysis. If an immediate appeal may materially advance the ultimate termination of the litigation, a question of law is necessarily "controlling" because it "could advance the litigation by ending it," *Coalition For Equity and Excellence In Maryland Higher Educ.*, 2015 WL 4040425, at *7, even if "other possible outcomes exist." *Kennedy v. Villa St. Catherine, Inc.*, No. PWG-09-3021 WDQ, 2010 WL 9009364, at *4 (D. Md. June 16, 2010).  This third requirement may also be met where the appeal would "eliminate complex issues so as to simplify the trial, or []eliminate issues to make discovery easier and less costly." *Lynn*, 953 F. Supp. 2d at 626 (internal quotation omitted).

Here, again, the State seems to say that this prong is easy to satisfy: An appellate ruling in its favor, it says, would terminate the litigation. Because "it is enough that appeal may lead to a possible terminus for the case," this prong, it believes, is satisfied. *See Kennedy*, 2010 WL 9009364, at *4. Moreover—the State echoes its argument as to the first prong—certification will allow for the case to unfold in an orderly way by enabling the core legal issue of the contract to be analyzed and resolved before discovery and trial. Not certifying an appeal would mean a year-long stay while the AFSCME's appeal[2] is resolved or pressing forward with discovery and trial at the risk of having to do it again should AFSCME prevail on appeal.

The Fitch Plaintiffs, like a Greek chorus, reply that certification would not "hasten or . . . simplify the litigation in any material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *See APCC Services, Inc.*, 297 F. Supp. 2d at 100. The Fitch Plaintiffs submit, once again, that the Court has already streamlined the case by dismissing active employees and employees who retired after December

---

[2] The State also cites Plaintiff Michael Bridgett's *pro se* appeal, which the Court of Appeals has now dismissed. ECF No. 175.

31, 2018. The only outstanding issue left for the Court's determination, they believe, is whether the State's replacement plans are consistent with its initial promise to specific State retirees. Certification, in the view of the Fitch Plaintiffs, will only delay the case and generate additional litigation cost. The Court agrees with the Fitch Plaintiffs.

For the same reasons that it finds the State's question for certification not "controlling" in the sense of § 1292(b), the Court concludes for the purposes of the third prong that certification would not materially advance the litigation. *Compare Lynn*, 953 F. Supp. 2d at 626 (material advancement prong not met where discovery complete but liability as to one count and damages had yet to be determined). Moreover, as noted *supra*, even an interlocutory ruling in the State's favor would not end the litigation, since the constitutional claim currently held in abeyance would proceed. Certification would "only slow these already protracted proceedings," delaying discovery in a case that began in 2018, at best, into 2023. *See Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 528 (D. Md. 2016). The Court concludes that the third and final prong of § 1292(b) is not met.

### E. Exceptional Case

Certification of an appeal under § 1292(b) is reserved for "exceptional circumstances," a standard which measures the "significance and importance of the ruling" sought to be appealed. *Jacobson v. Comcast Corp.*, No. 1:09-CV-562, 2010 WL 5463084, at *2 (D. Md. Dec. 29, 2010).

The State argues that the stakes in this case are high for all parties – Plaintiffs and AFSCME contend that, if the State's plans take effect, their prescription drug costs will increase significantly with detrimental effects to their health; the State argues that it will be faced with a multi-million-dollar annual budget obligation and a multi-billion-dollar impact on its debt-carrying capacity.

14

More broadly, the Court's conclusion—in the State's view—threatens to erode the rule that "the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state." *Atchison*, 470 U.S. at 466. Moreover, says the State, the evaluation of the legislature's replacement plans and whether they constitute a "reasonable modification" will require inquiry into Plaintiffs' medical information, an intrusion that would be at least temporarily avoided by immediate appeal. Finally, given that AFSCME has already filed an appeal, certifying the State's question for immediate appeal, as the State sees it, would allow for a consolidated proceeding that would avoid "piecemeal appeals" that § 1292 was designed to avoid.

The Fitch Plaintiffs do not respond to each of the State's arguments in this regard. They argue instead that what they term the State's "second" formulation of the question—"whether a contractual obligation binds the State to continue providing retiree prescription drug benefits to Medicare-eligible retirees"—is a simple, straightforward question of contract law, such that exceptional circumstances for appeal are not present.

The Court agrees that, while this is an important case with serious implications for the State of Maryland, its employees, and retirees, the question of law proposed for certification is not of the "exceptional" sort justifying review. "An interlocutory appeal is not to be used simply to determine the correctness of a judgment." *In re Swann Ltd. P'ship*, 128 B.R. 138, 141 (D. Md. 1991), citing *Clark-Dietz & Assocs.-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68 (5th Cir. 1983). Ultimately that, in the Court's view, is what the State seeks here. Finally, the Court notes that the bar for obtaining interlocutory review is extraordinarily high. The Court, which in general, as it should be, has been reluctant to certify interlocutory appeals, *see Trump*, 344 F. Supp. 3d at 842, *vacated on other grounds,* 838 F. App'x at 790, was recently of the opinion that a particular case before it was "exceptional," meriting review on an interlocutory basis. But the Fourth Circuit

disagreed. *See Prince George's Cnty., Maryland v. Wells Fargo & Co.*, No. CV 18-3576 PJM, 2021 WL 5921599, at *4 (D. Md. Dec. 15, 2021) (granting motion to certify question regarding legal pleading requirements for causation in Fair Housing Act suit by counties against mortgage lenders), rev. denied, No. 21-301 (4th Cir. Feb. 11, 2022). In the present case the Court finds no reason to conclude that the State's Motion to Certify involves anything more than a very important question of law as opposed to an "exceptional" one.

### III.   CONCLUSION

For the foregoing reasons, the Motion to Certify Interlocutory Appeal, ECF No. 167, is **DENIED.**

A separate Order will **ISSUE.**

June 9, 2022

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE