PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1362

AFSCME MARYLAND COUNCIL 3,

        Appellant,

and

MICHAEL WAYNE BRIDGETT; KENNETH FITCH; PHYLIS REINARD; DEBORAH HEIM; MARY FRYE; DEBORAH MONROE; ALAN RIVKIN; HOWARD KILIAN; DEBORAH GARLITZ; MARK HENRY,

        Plaintiffs,

    v.

STATE OF MARYLAND; GOVERNOR LARRY HOGAN; SECRETARY DAVID R. BRINKLEY; STATE TREASURER NANCY KOPP, Chairman of the SRPS Board of Trustees c/o Office of the Attorney General; STATE COMPTROLLER PETER FRANCHOT, Vice Chair of SRPS Board of Trustees c/o Office of Attorney General; SRPS BOARD OF TRUSTEES PENSION SYSTEM, c/o Office of Attorney General,

        Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Peter J. Messitte, Senior District Judge. (1:18-cv-02817-PJM)

Argued: January 25, 2023        Decided: February 21, 2023
Amended: March 29, 2023

Before WILKINSON, THACKER, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Wilkinson and Judge Harris join.

**ARGUED:** David Gray Wright, KAHN SMITH & COLLINS, P.A., Baltimore, Maryland, for Appellant. Ryan Robert Dietrich, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** David Maher, KAHN SMITH & COLLINS, P.A., Baltimore, Maryland, for Appellant. Brian E. Frosh, Attorney General, John J. Kuchno, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees.

THACKER, Circuit Judge:

Appellant American Federation of State, County and Municipal Employees, Council 3 ("Appellant") filed suit against the State of Maryland alleging that the State breached a statutorily formed contract with current state employees to provide them with certain prescription drug benefits upon retirement. Though the district court agreed that Maryland law created a contract, it held that the contract was unilateral in nature and that the promised benefits do not vest until an employee retires with sufficient years of service. Therefore, the district court determined that the current employees represented by Appellant had no vested contractual right to the retirement prescription drug benefits at issue here and dismissed the complaint.

Though we affirm the dismissal of Appellant's Complaint, we do so because we find that the statutory language does not create a contract with state employees.

I.

This case centers around Maryland's offering of retirement health benefits to state employees and retirees. Specifically at issue here is whether Maryland contracted, through statute, to provide retirees with prescription drug benefits as part of their retirement subsidy.

A.

In 1993, the Maryland legislature established a comprehensive health benefits program, which it termed the "State Employee and Retiree Health and Welfare Benefits Program." *See* 1993 Md. Laws Ch. 10, § 8-101 (codified at Md. Code, State Pers. & Pens. ("SPP") § 2-502). This new program, which became effective on October 1, 1993,

3

provided generally for a retirement subsidy. If a retiree "ha[d] 16 or more years of creditable service," she was "entitled to the same subsidy allowed a state employee," and if she had between 5 and 16 "years of creditable service," she was "entitled to 1/16 of the state subsidy allowed a state employee for each year of . . . creditable service up to 16 years." 1993 Md. Laws Ch. 10, § 8-108(c) (codified at SPP § 2-508). The law did not specify the amount of the subsidy or the benefits that would be available to retirees. Rather, Maryland law provided only that the program "shall include the health insurance benefit options established by the Secretary." 1993 Md. Laws Ch. 10, § 8-102(b)(1)(ii) (codified at SPP § 2-502(b)(1)(ii)).

Then, in 2003, the United States Congress created Medicare Part D, which provides prescription drug coverage for those over the age of 65 who enroll in the program. *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066, 2071–176 (codified at 42 U.S.C. § 1395w-101, *et seq.*). Notably, the Medicare Part D program initially featured a significant coverage gap -- termed the "doughnut hole" -- that deprived an enrollee of prescription drug coverage if her prescription drug costs fell between the "initial coverage limit" of $2,250 and the "catastrophic" phase of $3,600 or more in out-of-pocket prescription drug costs.

In response to the "doughnut hole," the Maryland legislature passed legislation clarifying that "[t]he State shall continue to include a prescription drug benefit plan in the health insurance benefit options" available to retired state employees "under §§ 2-508 and 2-509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription

4

Drug, Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state." 2004 Md. Laws Ch. 296 (codified at SPP § 2-509.1).

In 2010, Congress passed the Affordable Care Act, which, among other sweeping changes to the healthcare system in the United States, aimed to close the Medicare Part D "doughnut hole" by 2020. *See* Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). This change prompted the Maryland legislature to change course and prepare retirees for a transition to Medicare Part D. To that end, in 2011, the Maryland legislature amended Section 2-509.1 to provide that "[t]he State shall discontinue prescription drug benefits for Medicare-eligible retirees in fiscal year 2020." 2011 Md. Laws Ch. 397 (codified at SPP § 2-509.1). And when Congress moved to eliminate the "doughnut hole" in January 2019, six months earlier than expected, Maryland also adjusted the timing of its transition away from the state-provided prescription drug retirement benefit. *See* 2018 Md. Laws Ch. 10 (codified at SPP § 2-509.1).

B.

This case originated in 2018 when the "Fitch Plaintiffs," a group of retired state employees, filed suit in Maryland state court alleging that the State's transition of Medicare-eligible retirees to Medicare Part D violated their contractual right to receive state-subsidized prescription drug benefits. The State removed the case to federal court, and the district court issued a preliminary injunction in October 2018, directing the State to "continue providing prescription drug benefits to current retirees and to any eligible

5

employees who might retire during the pendency of this case." J.A. 83–84.[*] Thereafter, in May 2019, the Maryland legislature again amended Section 2-509.1 to create three new avenues for state-subsidized prescription drug benefits for qualifying retirees, their spouses, and their dependents. *See* SPP § 2-509.1. These changes only take effect if or when the preliminary injunction is lifted.

After the Maryland legislature adopted these changes, Appellant moved to intervene and to expand the scope of the preliminary injunction to include the active employees it represents. The district court granted the motion to intervene but declined to expand the scope of the preliminary injunction. Both the Fitch Plaintiffs and Appellant later amended their Complaints to add allegations relating to Maryland's 2019 amendments to Section 2-509.1, but they seek principally the same relief. Appellant seeks relief on behalf of its active employee-members, all of whom began their state employment on or before June 30, 2011. Appellant alleges that the statutory provisions set forth at SPP §§ 2-501 *et seq.* "'create a contract between [Appellant and] the State of Maryland that obligate[s] the State to provide [them] a prescription drug benefit plan' upon retirement." J.A. 86 (citation omitted) (first alteration supplied). The State moved to dismiss all of the claims asserted against it. While the district court denied the motion as to the Fitch Plaintiffs, it granted the motion to dismiss Appellant's Complaint for failure to state a claim.

The district court rooted its analysis in SPP §§ 2-508 and 2-509.1. Specifically, the district court determined that Section 2-508's declaration that qualified retirees would be

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

6

"*entitled* to the same State subsidy allowed a State employee," J.A. 88 (emphasis in original), coupled with section 2-509.1's specificity that the subsidy would include prescription drug coverage created a contractual right between Maryland and its already retired State employees. But the district court determined the contractual right was not enforceable by the active employees represented by Appellant. In the district court's view, the statutes created a unilateral contract that "require[d] the performance of certain conditions before the 'right' to subsidized benefits vests; the person must have (1) commenced service on or before June 30, 2011, (2) must be actually retired, and (3) must have accrued at least 5 years of 'creditable service.'" *Id.* at 90. Therefore, the district court held, "[b]y virtue of their current employment status, active State employees have no vested entitlement to the prescription drug benefits promised in SPP §§ 2-508 and 2-509.1." *Id.* at 94.

On that basis, the district court dismissed Appellant's Complaint in its entirety. The order specified that it was a final judgment as to Appellant pursuant to Federal Rule of Civil Procedure 54(b).

## II.

"We review de novo the grant of a motion to dismiss for failure to state a claim, applying the same standards as the district court." *Speaks v. U.S. Tobacco Coop. Inc.*, 31 F.4th 838, 841 (4th Cir. 2022) (citation and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R.

7

Civ. P. 12(b)(6).  We review questions of statutory interpretation de novo.  *Hall v. United States*, 44 F.4th 218, 222 (4th Cir. 2022).

## III.

Before proceeding to the merits, we must first determine the scope of our review. The district court certified its order dismissing Appellant's Complaint as a final order pursuant to Federal Rule of Civil Procedure 54(b).  Rule 54(b) permits certification and "entry of a final judgment as to one or more, but fewer than all, claims" where the district court determines "there is no just reason for delay."  Fed. R. Civ. P. 54(b).

Appellant suggests that our review is limited to the issue of whether the district court was correct that the contract is unilateral, such that active employees have no vested rights. In other words, Appellant argues that we must accept the district court's determination that the statutes at issue form a contract in the first instance and begin our analysis with that conclusion.  According to Appellant, it sought a Rule 54(b) certification only on the question of whether the contract was enforceable by active employees, and Maryland's argument that the statutes do not create a contract amount to an appeal of the district court's denial of the state's motion to dismiss the Fitch Plaintiffs' Complaint.

Appellant's argument fails.  The district court's final order set forth its findings that "Maryland created a unilateral contract with respect to prescription drug benefits that became binding upon the fulfillment by certain retirees of specific conditions," "active State employees have no vested entitlement to the prescription drug benefits established in the law," and "[a]ctive State employees have failed to satisfy all conditions precedent to enforce the contract."  J.A. 107.  Based on those findings, the district court granted

8

Maryland's motion to dismiss and entered final judgment "against [Appellant] and in favor of [Maryland], pursuant to" Rule 54(b). *Id.*

Appellant is correct that our review under a Rule 54(b) certification is limited to the claims certified by the district court -- we could not review the district court's ruling on a different motion, for example. *See United Indus., Inc. v. Eimco Process Equip. Co.*, 61 F.3d 445, 448 (5th Cir. 1995) (citing *United States v. Stanley*, 483 U.S. 669, 667 (1987)) ("In an interlocutory appeal certified by the district court under . . . Rule 54(b), we have no jurisdiction to consider orders of the district court outside the scope of certification."). But the certification here is a certification of the district court's *entire order* dismissing Appellant's Complaint, including its conclusions that a unilateral contract existed but that active employees had no vested rights. We review that order de novo, and we are not bound by the district court's foundational legal rulings in doing so.

IV.

The threshold question, then, is whether the versions of SPP §§ 2-508 and 2-509.1 in effect between 2004 and 2011 create a contractual right to state-subsidized prescription drug benefits in retirement. This is so because prior to 2004, the statutes made no mention of prescription drug benefits. 2004 Md. Laws Ch. 296. And after 2011, they made clear the State's intention to discontinue the prescription drug program. 2011 Md. Laws Ch. 397.

A.

"[A] legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State . . . within the

protection of [the Contracts Clause of the federal Constitution]." *Indiana ex rel. Anderson v. Brand, Trustee*, 303 U.S. 95, 100 (1938). "The Contracts Clause restricts the power of the States to disrupt contractual arrangements." *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018); *see also* U.S. Const., art. I, § 10, cl. 1. "In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *U.S. Tr. Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 n.14 (1977). This "question" is "one primarily of state law," and "we accord respectful consideration and great weight to the views of the State's highest court." *Brand*, 303 U.S. at 100; *see also Phelps v. Bd. of Educ. of W.N.Y.*, 300 U.S. 319, 322 (1937) ("[W]here a statute is claimed to create a contractual right we give weight to the construction of the statute by the courts of the state."). However, "we are bound to decide for ourselves whether a contract was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation." *Brand*, 303 U.S. at 100.

"In determining whether a particular statute gives rise to a contractual obligation, 'it is of first importance to examine the language of the statute.'" *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 466 (1985) (quoting *Dodge v. Bd. of Educ. of Chi.*, 302 U.S. 74, 78 (1937)). To that end, "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Id.* at 465–66 (quoting *Dodge*, 302 U.S. at 79). "[T]he party asserting the creation of a contract must overcome this well-

founded presumption." *Id.* at 466 (citation omitted). It may do so by demonstrating that "both [the contract's] existence and the authority to make it . . . clearly and unmistakably appear [in the statutory language], and all doubts must be resolved in favor of the continuance of the power" of the state legislature to modify or repeal enactments of a previous legislature. *United States v. Winstar Corp.*, 518 U.S. 839, 889 (1996) (quoting *Home Tel. & Tel. Co. v. Los Angeles*, 211 U.S. 265, 273 (1908)). This has become known as the "unmistakability doctrine." *See id.* at 910 (Breyer, J., concurring).

　　The Supreme Court has provided examples of the type of statutory language that is sufficiently clear to create a contractual obligation binding upon the state. For example, "'[i]f [the statute] provides for the execution of a written contract *on behalf of the state* the case for an obligation binding upon the state is clear.'" *Nat'l R.R. Passenger Corp.*, 470 U.S. at 466 (quoting *Dodge*, 302 U.S. at 78) (emphasis in original). Similarly, a statute containing "a provision in which the [state] 'covenant[s] and agree[s]' with anyone to do anything," evinces the kind of unmistakable intent required. *Id.* at 470 (discussing *United States Trust Co. v. New Jersey*, 431 U.S. 1, 9–10 (1977)).

B.

　　Between 2004 and 2011, Section 2-508(b)(1) provided, "a retiree may enroll and participate in the health insurance benefit options established under the [State Employee and Retiree Health and Welfare Benefits] Program" if he or she retired with a sufficient number of years of creditable service. 2004 Md. Laws Ch. 87. Section 2-508(c) further specified that a retiree with 16 years or more of creditable service "is entitled to the same State subsidy allowed a State employee," and a retiree with between five and 16 years of

creditable service "is entitled to 1/16 of the State subsidy allowed a State employee." 2004 Md. Laws Ch. 87.

Section 2-509.1, which was first added to Maryland code in 2004, provided, in its entirety:

> The State shall continue to include a prescription drug benefit plan in the health insurance benefit options established under the Program and available to retirees under §§ 2–508 and 2–509 of this subtitle notwithstanding the enactment of the federal Medicare Prescription Drug, Improvement, and Modernization Act of 2003 or any other federal law permitting states to discontinue prescription drug benefit plans to retirees of a state.

2004 Md. Laws Ch. 296.

The district court concluded that Section 2-508's use of the word "entitled" "reveals all one needs to know about the [legislature's] intent" because "[t]o 'entitle' means to 'grant a legal right to or qualify for.'" J.A. 88 (quoting Black's Law Dictionary (11th ed. 2019)). And because Section 2-509.1 cross-references Section 2-508, the district court held that the two statutes created a contractual obligation for the State to provide prescription drug benefits as part of its retirement subsidy.

Reviewing the language of the statutes at issue here, we have little trouble concluding that they do not create a contract binding upon the State. While Section 2-508 does "entitle" retirees to a subsidy, it does not include any unmistakable contract language. It does not use terms such as contract, covenant, or bind. Nor does it set forth the specific benefits provided under the subsidy. Rather, it only "entitles" a retiree to the "same State subsidy allowed a State employee." 2004 Md. Laws Ch. 87. And Section 2-509.1 says

12

nothing on its own that gives rise to an inference of contract. Instead, it establishes a policy that the State "shall continue to include a prescription drug benefit plan in the health insurance benefit options" notwithstanding the enactment of Medicare Part D. 2004 Md. Laws Ch. 296.

Even under Maryland's general contract standard, for a contract to be enforceable, "its language must . . . be sufficiently definite to clearly inform the parties of what they may be called upon by its terms to do . . . [and] the courts which may be required to enforce it may also be able to learn from it the purpose and intention of the parties." *Reiser Co. v. Balt. Radio Show*, 181 A. 465, 467–68 (Md. 1935) (citations omitted); *see also Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 941 A.2d 1181, 1209 (Md. Ct. Spec. App. 2008) ("[A]n enforceable contract must express with definiteness and certainty the nature and extent of the parties' obligations."). Section 2-508 does not meet that standard because it does not define the type or amount of benefits that will be available to a retiree, nor does it prevent the legislature from making future changes.

That is in stark contrast to the city ordinance at issue in *Cherry v. Mayor of Baltimore City*, 257 A.3d 1087 (Md. 2021), a case upon which Appellant relies. The city ordinance in *Cherry* provided that when a covered employee became a member of the pension plan offered by the city, the employee was "deemed to have entered into a contract with the Mayor and City Council of Baltimore" and explained that the terms of that contract would be those in effect at the time the employee became a member of the pension plan and would "not thereafter be in any way diminished or impaired." 257 A.3d at 1093 (quoting Balt. City Code, art. 22, § 42). Unlike the language in Sections 2-508 and 2-

509.1, the language used in the city ordinance in *Cherry* easily satisfies the *Nat'l R.R. Passenger* standard.

Nothing in Sections 2-508 or 2-509.1 leaves us with an unmistakably "clear indication that the legislature intend[ed] to bind itself contractually." *Nat'l R.R. Passenger Corp.*, 470 U.S. at 465–66. Therefore, "all doubts must be resolved in favor of the continuance of the power" of the state legislature to modify or repeal enactments of a previous legislature. *Winstar*, 518 U.S. at 889 (citation omitted).

V.

We hold that Sections 2-508 and 2-509.1 do not create a contract between the State of Maryland and its employees or retirees. Therefore, while we disagree with the district court's reasoning, its order dismissing Appellant's Complaint is

*AFFIRMED.*