IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Greenbelt)

| | |
|---|---|
| KENNETH FITCH, et. al.<br>　　　Plaintiffs, | * |
| | * 　Case No.: 18- 02817 |
| v. | |
| | * |
| STATE OF MARYLAND, et. al.,<br>　　　Defendants, | * |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

### FITCH PLAINTIFFS' RESPONSE TO THEIS COURT'S MARCH 22, 2023, MEMORANDUM

The Fitch Plaintiffs, by and through the undersigned attorney files this Response to Defendants' Response to this Court's March 22, 2023, Memorandum and states the following:

> **INQUIRY No.1.  What would be the immediate impact of granting Defendants' Motion for Summary Judgment and Dissolution of the Preliminary Injunction?**

The Defendants have stated that "under current statutory law, retirees will continue to receive state prescription drug benefits until at least January 1, 2025." ECF-212. The Defendants' response to this first inquiry is misleading and disingenuous. The Fitch Plaintiffs and all those similarly situated have reached this point because the Defendants have failed to be bound by the law or their promises as evidenced by their legal actions over the last twelve years.

The State has failed to keep any promise made about the nature, length, or particulars of prescription drug coverage for Medicare-eligible State Retirees.  During the tenure of employment with the State of Maryland, Plaintiffs were promised certain benefits as part of their overall compensation for employment.  One such benefit is prescription drug coverage during retirement. This coverage was delivered through a State Subsidy that was in place and/or maintained by

Defendants on the date which Plaintiffs vested in the continuation of the prescription drug benefit during retirement.

It is important to note that the State required a separate vesting criterion to become eligible for access to the health program that included prescription drug coverage. It is well settled under Maryland law that a retiree has a contractual property interest in the pension upon completion of the requisite vesting period. City of Fredrick v. Quinn, 371 A.2d 626 (Md. App. 1977); Davis v. Mayor and Alderman of the City of Annapolis, 98 Md. App. 707 (1994). However, it is a novel issue in Maryland as to whether prescription drug coverage is protected by the vesting criteria. Even though no other post-employment benefit required vesting, the Defendants failed to notify or compensate the Fitch Plaintiffs.  The requirement that created a property interest is now disregarded by the Defendants.

The Defendants ignored the State retirees' property interest and the rights that accrued through that vesting when in 2011 the General Assembly enacted legislation to discontinue the State subsidy retroactively.   State retirees were informed of this development seven and a half years later (2018) after they had already retired.  State retirees were given four months (from June to October) to find a new plan despite the fact that the State retirees affected by this legislation were mainly 65 years and older with a greater propensity of being confronted with age-related dexterity or cognitive issues.  Combined with the amount of money that State retirees on a fixed income would have to expend, the passage of the 2011 legislation was cost prohibitive to retirees whose financial decisions would yield long term consequences with the elimination of this benefit.

The State promised that State retirees would receive the same benefit as a current employee but they reneged on that promise also.  These 48,000 retirees are a diminishing group. At the time of the 2019 legislation, each of the Plaintiffs and all those similarly situated had been enjoying the

benefits of retirement which included prescription drug coverage. It is no surprise to the Plaintiffs that none of the programs enacted in the 2019 legislation are remotely similar to the program that the Plaintiffs were using prior to the elimination.  The Plaintiff understood that the Defendants could make changes to the benefits of active employees, but to change the benefit after the Plaintiffs had already retired showed the complete and utter disregard the Defendants had about the well-being of its former employees.

It gets better.  From 2011 to 2018, the Defendants never directed their retirement agency to address the elimination of the benefit to future retirees.  It was kept hidden, furtive, and lived in dark corners of "you didn't need to know" and "it costs too much".  Plaintiffs made financial decisions based on the information that was told to them about the availability and cost of their post-retirement benefits which included prescription drug coverage. The Plaintiffs reduced their pension checks to ensure access to the prescription drug coverage.  After informing the Plaintiffs that the coverage was eliminated, the Defendants never reopened that process to allow modifications to the Plaintiffs' pension amounts.  Again showing complete and utter disregard for the wellbeing of their former employees when they reach 65 or older.

Notwithstanding the language in State Personnel & Pensions §§ 2-508 and 2-509.1, the State eliminated the State Subsidy.  Despite protestations of lawmakers to the contrary and the five bills submitted to reinstate the State subsidy for *all* State retirees in 2019, the General Assembly affirmed the elimination 1) of the State subsidy; and 2) the property rights of vested State retirees. The 2019 enacted legislation required that State retirees pay for their prescription drug coverage with no viable or sustainable program for reimbursement.  Plaintiffs are not even eligible for prescription drug discounts because of their status as former government employees, so the price for medications not covered by Medicare are borne solely by the retiree.

Every promise and/or statute that the Fitch Plaintiffs relied on was removed to their detriment. The Defendants have placed themselves in the unenviable position of "the boy who cried Wolf!" since they have never been straightforward or honest with Plaintiffs about this benefit and Defendants' track record indicates that this will not change. Plaintiffs have come to the inevitable conclusion that the words, actions, even laws enacted that are circulated by the Defendants cannot be trusted. This Court cannot guarantee that this program enacted in 2019 will begin in 2025. There is no guarantee that the reimbursement program will reimburse the entire cost of the medications under Medicare Part D. There is no guarantee that all lifesaving drugs will be covered or be suitable for reimbursement in this phantom drug reimbursement plan. There is no guarantee that the reimbursement program will not be eliminated as well. But Plaintiffs can guarantee that the Defendants will attempt to do one or all of these things now that modifications can be made to retiree benefits after they retire.

The end result of this is that State retirees will not be able to afford the benefit that they earned with their years of service; they will not be compensated for the taking of their property interest; and their family will face the increased mortality rates of their loved ones. That effects of that impact began when the Fourth Circuit issued its decision. It was immediate.

**INQUIRY No. 2. Would drug benefits to current or former State employees cease immediately?**

Please see the response to Inquiry No. 1. If the decision is left to the Defendants, there is a distinct possibility will cease immediately or before 2025 based on their legal actions over the last twelve years.

**INQUIRY No. 3.  Would there be a legal basis for establishing a transition period?**

Yes.  If a decision is made to grant Defendants Motion for Summary Judgment and for Dissolution of the Injunction, Plaintiff asserts the right to appeal and seek a stay pending appeal pursuant to the Federal Rules of Civil Procedure.

**INQUIRY No. 4.  If the Plaintiffs were [to] lose appeal, would there be a legal basis for a stay?**

Yes. The Fitch Plaintiffs assert that Fourth Circuit decision violated their rights under Maryland and Federal law of due process and the right to a jury trial. Those legal arguments would stay this litigation pending appeal.   Based on the pleadings submitted by the Intervenor, AFSCME 3, the question posed to the Fourth Circuit was limited to whether the contract was enforceable by active employees. There was no indication that my client's rights would be affected by the Fourth Circuit's decision, however their rights are affected therefore the Fourth Circuit's overreach in their decision must be addressed and a proper remedy must be achieved.

**A.  THE FOURTH CIRCUIT DECISION VIOLATED PLAINTIFFS' RIGHTS TO DUE PROCESS.**

Due process is a basic civil right.  No person shall be deprived of life liberty or property without due process of law.  That person must be given notice, the opportunity to be heard by an impartial tribunal.  That did not occur here. The arguments of current employees to continue a benefit that was eliminated are different from the arguments of retirees who were already receiving the benefit when it was eliminated.   The argument of current employees continuing coverage is different from the state retirees who vested in a benefit that was eliminated due to retroactive application of a statute.  *See* <u>Allstate v. Kim,</u> 829 A.2d 611, 618 (2003) (even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against ex post facto laws); *also see* Article 24 of the Md.

Declaration of Rights and Art. III, § 40 of the Md. Constitution. Retirees and Employees hold different status within the Maryland employment system. They are governed by different laws and report and question different divisions within State government. They are not the same. Yet the Fourth Circuit did not consider this when making such a sweeping and overbroad decision that deprived the Fitch Plaintiffs and a diminishing group of State retirees of their constitutional right of due process. The fact that the Fourth Circuit deprived the Plaintiffs of their due process rights cannot be justified and would warrant a stay in this matter if the Defendants Motion for Summary Judgment is granted and the injunction is dissolved.

### B. THE FOURTH CIRCUIT VIOLATED PLAINTIFFS RIGHT TO A JURY TRIAL.

The Fourth Circuit decision also deprived the Fitch Plaintiffs of a jury trial which would outline, for consideration, the legal issues arising out of the instant case. Plaintiffs assert this is a violation of their Seventh Amendment Rights. "In the Federal Courts this [jury] right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. This longstanding principle of equity dictates that only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules, we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."   Beacon, 359 at 505. Maryland views the right to trial by jury the same way. Article 23 of the Maryland Declaration of Rights provides in part, "[t]he right of trial by jury of all issues of fact in civil proceedings in the several Courts of Law in this State where the amount in controversy exceeds the sum of five hundred dollars shall be *inviolably preserved*." (Emphasis added).

"Legal issues must first be resolved by a jury before the equitable issues can be resolved in cases where both legal and equitable issues exist if a request for jury trial was made." Beacon 359 at 511; *also see* Higgins v. Barnes, *et ux*, 310 Md 532 (1987) (When the existence of both legal and equitable issues within the same case requires selection between the jury and the court as the determiner of common issues, the discretion of the trial court "is very narrowly limited and must whenever possible be exercised to preserve jury trial."). The Plaintiffs requested a Jury Trial three times and to date have not waived that right, yet the decision of the Fourth Circuit overbroad decision failed to address this when its decision dissolved the equitable remedy of injunction granted by the District Court five years ago. That is because the argument before the Court was to facilitate continuation of prescription drug coverage for active employees, not for individuals who were already retired. The decision of the Fourth Circuit changed the course of State retirees' litigation based on an argument that was tailored and argued on behalf of current employees, who are entitled to and subject to different requirements due to their active status.

It is important to note that the State required a separate vesting criterion to become eligible for access to the health program that included prescription drug coverage. It is well settled under Maryland law that a retiree has a contractual property interest in the pension upon completion of the requisite vesting period. City of Fredrick v. Quinn, 371 A.2d 626 (Md. App. 1977); Davis v. Mayor and Alderman of the City of Annapolis, 98 Md. App. 707 (1994). However, it is a novel issue in Maryland as to whether prescription drug coverage is protected by the vesting criteria. The Fourth Circuit decision did not even address this argument that the Plaintiffs wished the jury to consider.

The Court's decision has literally dissolved the injunction that has been in place for 5 years, an equitable remedy used when the Plaintiffs' legal remedy for the breach of contract claim was not ripe due to other legal considerations, i.e., the 2019 legal enactment, the move to expand the scope of the injunction, etc.  Since the Plaintiffs suit combines law with equity it requires an analysis on the viability of dissolution of the injunction before determining whether a contract existed. That was not done here. "Determining which actions belong to law and which to equity for the purpose of delimiting jury trial right continues to be one of the most perplexing questions of trial administration." 9. C. Wright & A. Miller, Federal Practice and Procedure: Civil 2d § 2302, at 18 (1995).  The U.S. Supreme Court resolved this issue by stating "[l]ong-standing equity principles, according to the Court, dictated that "only under the most imperative circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." <u>Beacon</u> 359 at 510-511,

    The original complaint and its various amendments were clear that the Plaintiffs sought a legal and equitable remedy to redress the Defendants breach of contract, their loss of property interest, just compensation for its elimination, and reinstatement of the benefit for the 48,000 State retirees retroactively affected.   To limit the Plaintiffs opportunity to present a jury every issue which has a bearing on the existence of a contract and the taking of the property interest, just compensation for its elimination and reinstatement or substitution of a similar benefit will operate either by way of res judicata or collateral estoppel so as to conclude [the actions] of both parties with respect thereto at the subsequent trial. <u>Beacon Theatres, Inc</u>. 359 at 504. The Fourth Circuit's decision to deprive Plaintiffs of a full jury trial on its claim for breach of contract cannot be justified

and would warrant a stay in this matter if the Defendants Motion for Summary Judgment is granted and the injunction is dissolved.

                                              Respectfully Submitted

Date:   April 13, 2023                /s/ Deborah A. Holloway Hill
                                              Deborah A. Holloway Hill (#28384)
                                              P.O. Box 465
                                              Cockeysville, MD 21030
                                              P: (410) 428-7278
                                              F: (866) 499-696
                                              dahhlaw@outlook.com

                                              *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13TH day of April 2023, the foregoing was served by CM/ECF on all registered CMF users and by first class mail on those parties who have indicated that they are proceeding pro se.

                                              /s/ Deborah A. Holloway Hill
                                              Deborah A. Holloway Hill (#28384)
                                              P.O. Box 465
                                              Cockeysville, MD 21030