IN THE UNITED STATES FOR THE DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH FITCH, et. al., | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: 18-02817-PJM |
| STATE OF MARYLAND, et. al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**FITCH PLAINTIFFS' MEMORANDUM BRIEF IN COMPLIANCE WITH
COURT'S JULY 20, 2023 MEMORANDUM & ORDER**

On July 20, 2023, this Court issued an Order and Memorandum stating that the Fitch Plaintiffs may provide additional briefing addressing possible alternative causes of action as opposed to an action for breach of contract.

### INTRODUCTION

As outlined in the hearing on June 29, 2023, the Fitch Plaintiffs have been made aware of additional issues that are ripe for adjudication that have a direct bearing on this case. As a result of this information, the Plaintiffs assert that Summary Judgment should not be granted because there is a genuine dispute as to the material facts in this case. The Defendants, specifically the Department of Budget & Management ("DBM") deliberately failed to disclose to employees retiring between July of 2011 to June of 2018 that the State Subsidy that lowered prescription drug expenses for Medicare eligible State retirees was eliminated in 2011. Plaintiffs would not have reduced their pension checks by choosing an option that included an expiring benefit had they known of its elimination. The Plaintiffs relied on the false representation that the State Subsidy, or a program substantially similar, would continue during their retirement and Plaintiffs made

decisions based on that reliance. This reliance proved detrimental to the Plaintiffs 'financial stability during retirement.

But there is more.

The Plaintiffs were promised superior post-employment benefits that included prescription drug coverage during their retirement to compensate for their low salary as an incentive to work for the State of Maryland. For each state benefited position, the agency contributed money for Retiree Health Insurance during the course of the Plaintiffs employment. So every year the Plaintiffs worked for the State of Maryland, the State's contribution was paid forward just like for the pension benefit. This was a fringe benefit of the salaried position and was part of the overall total amount of compensation that was paid to each salary benefit position. There is no indication that this State contribution or fringe benefit was reduced or eliminated after the passage of the 2011 Budget Reconciliation & Financing Act or its enforcement in 2019.

The elimination of the State Subsidy, the omission a material fact when retirement decisions were made, the failure to reimburse the Retiree Health Benefit insurance funds paid by the Plaintiffs during their employment has created a claim for fraud and based on additional information could support unjust enrichment, conversion, recission, detinue and/or restitution.

### A.   ARGUMENT

"Summary judgment is to be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Maryland courts note that cases that primarily raise issues of fraud or intent are generally ill-suited for summary judgment due to the need for greater than usual factual development…. <u>Barry R. Berkey v. Gregory E. Delia</u>, 287 MD 302 (1980).

A.     **There is a Dispute of Material Fact**

Plaintiffs assert that the Defendants misrepresented the status of the State Subsidy at issue when Plaintiffs sought information regarding their retirement. Specifically, for seven years, from July 2011 until June of 2018, the Defendants failed to notify employees that the subsidy that covered prescription drug coverage was eliminated by the General Assembly in 2011. Failure to disclose this vital information induced the Plaintiffs and all those similarly situated to enter into a contract with the State of Maryland for receipt of pension benefits. This contract determined the amount of pension benefits that the Plaintiffs would receive. That omission would impact the financial and long-term health interests of the Plaintiffs during their retirement, a circumstance that Plaintiffs were unaware of at the time the retirement application was submitted.

According to the Internal Revenue Service a fringe benefit is a form of pay *in addition to* an employee's stated pay for the performance of services. See IRS Fringe Benefit Guide. Fringe benefits are perks or extra compensation over and above regular salary where the cost is borne by the employer and dependent on its use, can be tax deductible. 28 U. S. C. 106. It is instructive that the State of Maryland views fringe benefits as part of an employee's wages confirming that fringe benefits belong to the employee and not the State. Md. Law & Labor Ann. Code § 3-501(c)(2). The State of Maryland has been making this contribution into the Retiree Health Insurance for the Plaintiffs during their employment for a minimum of 21 years and maximum of 38 years. The amount of this fringe benefit (paid for by the State) was part of the Plaintiffs overall compensation must be accounted for and since the State subsidy has been eliminated, the unused portion must be returned.

These issues are material facts that have not been addressed by the Defendants, making entry of summary judgment premature.

**B.     Fraud**

"Fraud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." Sass v. Andrew, 832 A. 2d 247, 262 (2003) quoting Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 529 (8th Cir. 1999).

Plaintiffs assert that there is a claim for fraud because of the actions of the Defendants. "To prevail on a claim for fraud, the plaintiff must prove: 1) that the defendant made a false representation to the plaintiff; 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; 3) that the misrepresentation was made for the purpose of defrauding the plaintiff; 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation." Goldstein v. Miles, 159 Md. App. 403, 434-35 (2004).

**1.     The Defendants Made False Representations to the Plaintiffs.**

"A `false representation' is a statement, conduct, or action that intentionally misrepresents a material fact." Sass v. Andrew, 152 Md. App. 406, 429 (2003).  Retirement counselors, Benefit counselors and Human Resource employees of DBM were acting within the scope of their employment when they counseled Plaintiffs between the years of 2011 and 2018 about the post-employment benefits being offered.  However, Plaintiff Fitch who retired in 2012, Plaintiff Reinard who retired in 2013, Plaintiff Rivkin who retired in 2016 and Plaintiff Heim who retired in May of 2018 were never informed of the State Subsidy elimination before, during or after the retirement seminars or retirement counseling sessions they received from DBM.  That is because these employees were not made aware of the elimination of the State Subsidy since the Secretary of DBM failed to update the retirement information.

In 2014, an Open Enrollment Statement for January 2014 to December 2014 was sent to all employees who retired before 2014 stating that a new program was created that would yield the same prescription drug coverage as before. See Open Enrollment Statement. In 2017, PowerPoint presentations created and distributed by DBM states that during their retirement, health benefits would continue in substantially the same form as to current employees. See Employee/Retiree Power Point Presentation. Both were deliberate misrepresentations because in 2011, by act of the Maryland General Assembly (House Bill 72 – 2011 Budget Reconciliation & Financing Act) the benefit was eliminated in its entirety. As a result, the Plaintiffs were unaware that the nature of their benefit had substantially changed and entered into contracts with the State based on this false representation. Maryland law recognizes that a promise made without the intention to perform, but with intent to induce the promisee to act, may constitute fraud. Councill v. Sun Ins. Office, 146 Md. 137, 150 (Md 1924) See Bocchini v. Gorn Management Co., 69 Md. App. 1, 19 (1986). (recognizing that a "`promissory representation made with an existing intention not to perform is actionable for fraud,' i.e., that such a representation is regarded as one of present fact father than of future possibility.").

**2. The false statement was known to the Defendants.**

The then Secretary of the Department of Budget & Management, David Brinkley, had actual knowledge of the elimination of the State Subsidy. On April 11, 2011, then Senator David Brinkley cast his vote in favor of its elimination. See Senate Vote on SB 72. When then Senator Brinkley became Secretary of DBM on February 13, 2015, DBM had still not alerted its current employees nor retirees about this change in benefit. In fact, under the administration of Secretary Brinkley notice was not given to State retirees until June of 2018.

The Secretary of DBM is charged with oversight of Budget Analysis, Capital Budgeting and Personnel Services & Benefits. The Secretary is also a member of the State Retirement and Pension System.  As a result, the Secretary not only oversees the drafting of the Annual State operating budget that benefitted monetarily from the elimination of the State subsidy, the Secretary also administers health care benefit programs, and implements state personnel policies for State employees and retirees.  <u>See</u> Functions of the Department of Budget & Management.  The Affidavit submitted by the Defendants of Anne B. Timmons, Director of Employee Benefits Division under DBM, affirms the wide authority that the DBM Secretary wields. <u>See</u> ECF 12.3 Defendants Response Affidavit of Anne B. Timmons. If the Secretary wanted to inform State employees of the elimination of that State Subsidy, he had the authority to do so.  He did not.  "A knowing misrepresentation is a fundamental and essential element of a cause of action for fraud." <u>JKC HOLDING CO. LLC v. Washington Sports Ventures</u>, 264 F. 3d 459, 469 (4th Cir. 2001) quoting <u>Marine Midland Bank v. John E. Russo Produce Co.</u>, 50 N.Y.2d 31, 427 N.Y.S.2d 961, 405 N.E.2d 205 (N.Y.1980)

> **3. The misrepresentation by the Defendants was made for the purpose of deceiving and/or defrauding the plaintiff.**

The Plaintiffs who considered retirement between 2011 and 2018 and retirees were not notified of the elimination of the State Subsidy because 1) the Defendants wanted Maryland to keep its AAA bond rating; 2) the Defendant wanted to use the money appropriated for the program for other projects; and 3) the Defendants sought to decrease the retiree population to achieve a reduction in the State's pension dollar outlay.  It was not a coincidence that the letter notifying State retirees of the elimination of the State Subsidy was sent after the deadline had passed to put a referendum on the ballot.  It was not a coincidence that the letter notifying State retirees of the elimination of the State subsidy was sent out in an election year after the 2018 session of the

General Assembly ended. It was not a coincidence that the letter notifying State retirees of the elimination of the State Subsidy was sent out after the end of the 2018 session of the General Assembly not allowing State retirees to testify, lobby or effectively organize to protest.  It was not a coincidence that State retirees had only four months to review and digest the move to Medicare Part D.  The overall intent was to deceive Plaintiffs as long as possible and leave these retirees very little time or information necessary to fight.  This seven-year scheme sought to ensure that the State retiree population would be culled for the pension dollars to fund other programs.

The plan was necessary since GASB changed the accounting standards and required States and municipal governments to recognize post-employment benefits liabilities on their balance sheets.  In effect the new standards required public employers to account for post-employment benefits in a manner similar to the way pension benefits are treated.   Because the Maryland General Assembly continuously and deliberately diverted funds earmarked for the State Subsidy, it was unable to maintain its AAA bond rating if it fulfilled its promise to State retirees.  See 2011 Department of Legislative Services Fiscal & Policy Note for SB 628 and the 2019 Department of Legislative Services Fiscal & Policy Note for SB 946. So the General Assembly created the Sustainability Commission who, while sympathetic to the plight of State retirees on a fixed income, proposed measures that would allow the Defendants to keep the money the State contributed for each employees fringe benefit.

Most telling is the fact that the Defendants were aware of the extent that this would increase the mortality rate for State retirees who were Medicare eligible.  The costs of Medicare Part D would severely restrict the State retirees' ability to afford life sustaining drugs.  The chart below shows that only 19.8 percent of State Retirees would see no change or a lowering of their costs for medication. Conversely over 80 percent of State Retirees would be exposed to prohibitive costs

for their medicine. Forty percent of the retirees affected by this elimination of the State Subsidy will die before their time due to the inability to afford their medication. The deliberate misrepresentation by DBM about the State subsidy and the omission of material substantive information demonstrates the intent of the Defendants to divert millions of dollars away from State retirees by misrepresenting their benefits at the time of employment and at the time of retirement.

**Exhibit 1**
**Effects of Transition to Medicare Part D on Retiree Out-of-pocket Costs**
**for Medicare-eligible Retirees**
**Calendar 2017 Claims Data**

|  | Participants | % of Retirees |
|---|---|---|
| Lower Out-of-pocket Costs Under Part D | 8,946 | 19.8% |
| Out-of-pocket Cost Increases |  |  |
| $0-$500 | 17,894 | 39.6% |
| $500-$1,000 | 7,116 | 15.8% |
| $1,000-$1,500 | 4,005 | 8.9% |
| $1,500-$2,000 | 2,163 | 4.8% |
| $2,000-$5,000 | 3,525 | 7.8% |
| $5,000-$10,000 | 1,253 | 2.8% |
| Over $10,000 | 267 | 0.6% |
| **Total** | **45,169** | **100.0%** |

Note: Numbers may not sum to total due to rounding.
Source: Department of Budget and Management

2019 Department of Legislative Services Fiscal and Policy Note for SB 946

The objective of the Defendants is clear. Money. Fewer pension checks would go out because the Defendants would ensure that fewer State retirees lived out their natural lives. Fewer pension checks mean more money in State coffers. A government that is for the people would take the extra step to guarantee that employees who worked their whole lives for the State of Maryland would not live a shortened life regretting that decision.

### 4. The Plaintiffs relied on the representation that health benefit would remain substantially the same during their retirement.

("[W]hen one may be induced by fraud to enter into a contract, the tort in that instance cannot be said to arise out of the contractual relationship. It is the tortious conduct which conversely induces the innocent party to enter into the contractual relationship."). Councill v. Sun Ins. Office, 146 Md. 137, 126 A. 229 (1924).

Even though current law does not consider employers to be fiduciaries of their employees, employers have long had significant statutory and common-law responsibilities toward their employees that reflect a fiduciary character. DBM was supposed to counsel employees about retirement choices that would affect their financial stability. The Plaintiffs continued their employment as state of Maryland employees in exchange for this deferred compensation from the State, including but not limited to the post-employment which included prescription drug coverage throughout the duration of their retirement. That promise and provision of these post-employment benefits induced the Plaintiffs and all other similarly situated to continue working as a state of Maryland employees and forgo additional options and opportunities for employment and benefits from other employers.

The retirement process can be quite involved and complex, in order to ensure that employees retiring are allowed to consider all options when it concerned the financial stability of their retirement. The Plaintiffs were given different options, each that had a financial impact on the amount of their pension check and were required to weigh these options with grave consideration since the contract that the Plaintiffs signed was irrevocable. The most obvious choice for these employees was to determine whether 1) they wished to participate in the post-employment benefits offered by the State; 2) whether they wished to their pension check to continue if they predeceased their spouse; and 3) whether they wished their post-retirement

benefits to continue if they predeceased their spouse.  Each of these options reduced the amount of their pension check.  Each of these options were irreversible except in the limited circumstance where married employees retired from the State and after the death of one spouse, the surviving spouse was allowed to elect post-employment benefits.  <u>See</u> State of Maryland Retirement Application.

Post-employment benefits were identified as health insurance that included prescription drug coverage, dental, vision, life insurance, and deferred compensation.  Plaintiff Heim partook of retirement seminars and counseling before submitting monies to "buy back" service time.  Plaintiff Heim paid $30,000 dollars in March of 2018 to ensure that she would have health coverage that included the prescription drug subsidy for herself and her husband during her retirement. Plaintiff Heim retired in May of 2018. She was given notice in June of 2018 that the subsidy was eliminated in 2011. Plaintiff Heim would not have elected to receive post-employment benefits from the state if told that prescription drug coverage was eliminated in 2011.  She relied on the representations of the State to her detriment. See Affidavit of Deborah Heim.

Plaintiff Reinard, Frye, Killian and Heim each had spouses who retired from companies outside of the State of Maryland. Part of their choice was to determine which job offered the best retirement benefits for their retirement.  Each relied on the representations made by DBM and went with the State benefit system because of the post-employment benefits. Their spouses are now foreclosed from reopening their retirement to obtain the benefits that were taken away from the Plaintiffs.   They relied on the representation of the Defendants to their detriment.

5. **The Plaintiffs suffered compensable injury by relying on this misrepresentation.**

Irreparable compensable injury occurs upon the Plaintiffs moving to the Medicare Part D system. As the affidavits submitted with the Complaint attest, the Plaintiffs realized prohibitive increases in prescription drug costs after review of the Medicare Part D system. To individuals who notoriously have low and fixed incomes, subjection to prescription drug increases of this magnitude will be permanent and a gross deviation to the benefits promised at the beginning of their employment. In addition, the process for registration has changed. Unless the Plaintiffs wished to change their health care provider, the Plaintiffs were not required to do anything to maintain their prescription drug coverage, now they will have to enroll every year from October 7th and December 7th to maintain this form of prescription drug coverage. At a time when retirees are getting older, some with debilitating cognitive issues, transfer to this federal system will ensure that Medicare eligible State Retirees will not maintain their coverage. The Plaintiffs are now at their most vulnerable stage since the door to employment has been irrevocably closed due to age or disability.

The Plaintiffs are looking at rationing medicine and/or selling assets that they accumulated over their lifetime to pay for a couple of months of medicine. The Defendants could have raised the cost of the insurance, raised the costs of the premium, grandfathered in all vested employees, bargained for health plans that included prescription drug coverage that would reduce the overall cash outlay, or reduced overall spending but the they Maryland chose none of these options. Instead, they removed the most vulnerable of their employees from a program that would allow them to live longer.

### C. Fringe Benefits.

"The elements of common law fraud are a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff." KC

HOLDING CO. LLC v. Washington Sports Ventures, 264 F. 3d 459 (4th Cir. 2001) quoting Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970-71 (2nd Cir.1987). Each element must be established by clear and convincing evidence. Id. at 971.

Fringe benefits are the additional benefits offered to an employee, above the stated salary for the performance of a specific service. Some fringe benefits such as social security and health insurance are required by law, while others are voluntarily provided by the employer. Retiree Health Insurance is a voluntary fringe benefit provided by the State of Maryland to its employees and was an incentive to maintain a strong workforce. See Affidavit of Ken Fitch and Letter.

Compared with plans offered by other States, the Maryland Health program for its employees and retirees was one of the most generous. Although covered charges vary among states, Maryland paid 95% of the covered charges for active employees and 98% of covered charges for retirees compared with an average of 83% for other State programs. See Public Employees' and Retirees' Sustainability Commission, Executive Summary. These covered charges or Fringe Benefits were contributed to by the State to the employee during their service years. It was this representation of these fringe benefits that enticed Plaintiffs and others similarly situated to accept and to continue employment with the State of Maryland. Plaintiffs relied on these representations to ensure that their post-employment benefits would ensure financial stability during their retirement.

In order to fill a position, the state division, agency or department must budget enough money to pay the salary of the employee and the fringe benefits that accompany the position. These fringe benefits are budgeted by the agency and paid by the employer either biweekly, monthly or annually into a fund similar to the pension process. The normal practice to calculate the fringe benefit rate of a salaried employee is to add the annual costs of all fringe benefits offered and divide that number by their annual salary. The average fringe benefit rate hovers around 20%.

Maryland fringe benefits total between 32 and 33% per employee, making the benefits offered by the State of Maryland one of the best in the county.

The total amount of fringe benefits is the total cost of all the non-wage benefits given to an employee throughout the year. Maryland offers FICA, Health insurance (as required by law) and Retiree Health Insurance as a fringe benefit for its active employees. The FICA and Health Insurance categories are outlined by the IRS and required by law. So the employee is allotted their salary and 33% of that salary which is not included in the paid salary is for fringe benefits. The problem manifests itself two-fold. First, there is not a current percentage breakdown of what percentage goes into what category, however removing the average fringe benefit rate, leaves 13% for Retiree Health Insurance. Additional discovery is necessary to confirm that calculation. Second, the Plaintiffs during their employment were allocated funds for Retiree Health Insurance culminating in the availability of resources at the time of their retirement if they retired from Maryland.

Current employees have no need for Retiree Health Insurance, yet this money is given by the state as a "fringe benefit" of the current employee's employment. Therefore, this Fringe Benefit belongs to the employee and was set aside for the purpose of funding the Retiree Health Insurance coverage during retirement. The continuous diversion of funds from the Retiree Health Insurance demonstrates that the Defendants never intended for the money contributed to this "fringe benefit" would benefit the employee. Not once did the Defendants alert the Plaintiffs or anyone similarly situated that the fringe benefit that was being contributed by the State for their benefit was being used for other purposes.

Plaintiffs would have never accepted employment with the State of Maryland if they knew that the years of State contribution for their retirement health insurance would not be used for *their*

benefit. The misrepresentation was intentional, deliberate and designed to acquire a labor work force who would work for less money for a minimum of 16 years in hopes of acquiring the benefit of an illusory promise. The State of Maryland benefited from this misrepresentation and are charged with returning the compensation that it acquired through the Plaintiffs' long years of service. In fact, Plaintiffs' combined years of service amount to 178 years and their share of the State contribution would be calculated in the millions. Since the State eliminated this benefit, the Plaintiffs are hard pressed to allow the State of Maryland to keep their hard-earned compensation. They want it back.

## II.   REMEDIES

The law has purported various remedies for the fraud that the Defendants practiced on its employees and retirees. There are also other actions that can be claimed based on the availability of information that the Defendants will provide.

1. Restitution. "One whose money or property is taken by fraud or embezzlement, or by conversion, is entitled to restitution[.]" 1 Dan B. Dobbs, *Law of Remedies* § 4.1(1), at 553 (2d ed.1993).

2. Unjust enrichment. Unjust enrichment is a remedy "'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" Cty. Comm'rs of Caroline Cty v. Roland Dashiell & Sons, Inc., 358 Md. 83, 96-97, 747 A.2d 600, 607 (2000) (quoting Dunnaville v. McCormick & Co., 21 F.Supp.2d 527, 535 (1998)).

3. Conversion. "As a general rule, money, i.e. currency, is not subject to a claim of conversion unless the Plaintiff seeks to recover specific segregated or identifiable funds.

4. Detinue. The cause of action of detinue applies to the recovery of personal property unjustly detained by one who acquired possession of that property, wither by wrongful taking or rightfully taking the property, but wrongfully detaining it. The claim is based upon the right of possession of the plaintiff. Durst v. Durst, 225 Md 175, 169 A.2d 755 (1961).

"An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Plaintiffs assert that the facts outlined above represent material facts in dispute that must be investigated. The resulting information obtained will affect the outcome of this litigation.

### III.  CONCLUSION

It has long been clear that `[f]raud may consist in a suppression of the truth as well as in the assertion of a falsehood". Bank of America v. Jill P. Mitchell Living Trust, 822 F. Supp. 2d 505(D. Md 2011). The above circumstances indicate that both have occurred here. Therefore, the Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

/s/ *Deborah Holloway Hill*
Deborah A. Holloway Hill
Federal Bar No.: 28384
P.O. Box 465
Cockeysville, MD 21030
O: 410.428.7278
F: 866.499.6906
dahhlaw@outlook.com

*Plaintiffs' Attorney*