**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KENNETH FITCH, ET AL.,                    \*

        *Plaintiffs*,                    \*

        v.                    \*          No. 1:18-cv-02817-PJM

STATE OF MARYLAND, ET AL.                    \*

        *Defendants*.                    \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**DEFENDANTS' OPPOSITION TO FITCH PLAINTIFFS' MEMORANDUM
BRIEF IN COMPLIANCE WITH COURT'S JULY 19, 2023
MEMORANDUM & ORDER**

On July 19, 2023, this Court issued a memorandum and order that had the primary

effect of dissolving a 2018 preliminary injunction that had prevented the State from

implementing its plan to discontinue state prescription benefits for Medicare-eligible

retirees.  (ECF 220, 221.)  In doing so, this Court concluded that the Fourth Circuit's

decision in *AFSCME Maryland Council 3 v. Maryland*, 61 F.4th 143 (4th Cir. 2023), was

controlling as to the question of whether there was a contract between the retirees and the

State requiring those benefits to continue.   Yet although this conclusion is dispositive as

to all of plaintiffs' claims, this Court deferred a decision on the State's motion for summary

judgment, instead opting to allow briefing on plaintiffs' claim, asserted for the first time

during the June 29, 2023 hearing in this case, "that alternative causes of action for fraud or

perhaps restitution might be justified based on the theory that Plaintiffs may have paid in

advance for benefits that they never received."  (ECF 220 at 9.)

On July 31, 2023, plaintiffs filed a memorandum brief asserting various theories of fraud.  But these theories lack merit.   Plaintiffs claim that the State committed fraud by failing to notify them that retiree prescription drug benefits would end in fiscal year 2020—yet the General Assembly's enactment of legislation in 2011 effectuating that result was, like any other duly-enacted law, notification in and of itself.  And plaintiffs claim that certain documents from 2014 and 2017 promised them prescription drug benefits indefinitely—yet, as with active employee benefits, those documents relate only to their respective plan years.  Moreover, plaintiffs' other assertions rely on an erroneous premise. Plaintiffs claim that they are entitled to a "fringe benefit" in the form of a dedicated state contribution for retiree health insurance benefits that "was paid forward just like for the pension benefit." (ECF 223 at 2.)  Yet they present no evidence that such a program existed or that payments were ever made on their behalf.  In other words, plaintiffs have failed to show that they "paid in advance for benefits that they never received."  (ECF 220 at 9.) Indeed, the record establishes otherwise.

Accordingly, this Court should not consider plaintiffs' filing as an impediment to granting the State's motion for summary judgment as to all claims asserted in the operative complaint (ECF 123), nor should this Court consider plaintiffs' filing as a substantive pleading that raises additional causes of action.  Instead, because plaintiffs' claims are not

only unsupported but also unsupportable, this Court should end this matter by entering judgment for the State on all claims in the operative complaint.[1]

I.     **The Purported Facts and Claims that Plaintiffs Raise Are Not an Impediment to Granting Summary Judgment in this Case.**

In their filing, plaintiffs assert that there "are material facts that have not been addressed by the Defendants [that make] entry of summary judgment premature." (ECF 223 at 3.) These purported "material facts" appear to take two forms. First, plaintiffs allege that, "from July 2011 until June of 2018, the Defendants failed to notify employees that the subsidy that covered prescription drug coverage was eliminated by the General Assembly in 2011." (ECF 223 at 3.) Second, plaintiffs allege that the State has been "making [a] contribution into the Retiree Health Insurance for the Plaintiffs during their employment for a minimum of 21 years and maximum of 38 years." (ECF 223 at 3.)

Neither of these purported facts stands as an impediment to granting summary judgment on the claims raised in plaintiffs' third amended complaint, which is the operative complaint in this case. As to plaintiffs' failure-to-notify claim, these allegations are not "material" because they do not relate to the issue of whether the State had, through its statutory enactments or otherwise, entered into a contract to provide retirement prescription drug benefits. Instead, taken at face value, plaintiffs' claims relate to the circumstances under which they were induced to enter into a different contract—"a contract with the State of Maryland for receipt of pension benefits." (ECF 223 at 3.) In other words, plaintiffs'

---

[1] To the extent that this Court considers plaintiffs' filing as raising any additional cause of action, summary judgment should be entered in favor of the State on any such claims for the reasons stated herein.

3

filing does not state new grounds for the existence of a contract for prescription drug benefits, but rather is a complaint about how the State's purported failure to notify employees of the lack of such a contract affected their decisions with regard to how they would receive their pension benefits.  Because these allegations appear to relate to a wholly separate claim, they are not material to the underlying matter in this case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

Plaintiffs' second purported fact fails not only on materiality grounds, but for an entirely different reason: that there is no *genuine* dispute of fact.  Throughout their filing, plaintiffs assert that, for each employee, the State paid at some interval, and into some unidentified fund, a "subsidy" for retiree health insurance.  (ECF 223 at 3, 7, 11-14.) Plaintiffs further allege that this contribution constituted a part of an employee's total compensation (i.e., a "fringe benefit"), and that therefore this contribution must be used for the employees' benefit or returned.   But nowhere in their filing do plaintiffs cite to any statutes, laws, or regulations that support their assertions.  Nor do plaintiffs cite to any paystub or other governmental record that establishes the existence of such a contributory scheme, let alone the amounts actually contributed.

Instead, plaintiffs appear to rely solely on an email from an individual who states that he "was in HR management positions for over 30 years in 3 state agencies[.]"  (ECF 223-3 at 2.)  This individual states that the state retiree prescription drug benefit "was a

fringe benefit that was collected from employees while employed so that they could receive this benefit after retirement." (ECF 223-3 at 2.) But this cursory and undeveloped email is not executed under oath, and therefore cannot be the basis for establishing a dispute of material fact for purposes of opposing summary judgment. *See Senftle v. Landau*, 390 F. Supp. 2d 463, 474 (D. Md. 2005) ("When opposing a motion for summary judgment, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavit, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"). Moreover, the theory espoused in the email is directly contrary to the theory espoused in plaintiffs' filing. Whereas plaintiffs assert in their filing that the State itself paid the purported contribution "for the Plaintiffs" (ECF 223 at 3), the email states that payment "was collected from employees while employed" (ECF 223-3 at 2).

Whether it was the State or the employee who paid the purported contribution, plaintiffs have failed support either theory through admissible evidence.[2] Plaintiffs have therefore not established a genuine dispute of material fact, and accordingly summary judgment should be entered in favor of the State.

---

[2] To be clear, plaintiffs' assertions that Maryland pre-funded retiree health insurance benefits as a "fringe benefit" (i.e., "paid forward just like for the pension benefit," (ECF 223 at 2)) are erroneous. Instead, Maryland has always funded retiree health benefits, including the prescription drug benefit, on a pay-as-you-go basis. *See* Public Employees' and Retirees' Benefit Sustainability Commission, 2010 Interim Report 21 (Jan. 2011), available at https://msa.maryland.gov/megafile/msa/speccol/sc5300/sc5339/000113/013000/013730/unrestricted/20110557e.pdf

## II.     Any Attempt by Plaintiffs to Amend Their Pleadings Should Comply with the Applicable Rules.

Pending before this Court is the State's motion for summary judgment on plaintiffs' third amended complaint.  (ECF 196.)  That complaint raised breach of contract claims, as well as constitutional claims that were derivative of those breach of contracts claims.  (ECF 123.)  Now at the 11th hour, plaintiffs seek to prolong this litigation by asserting various tort claims that are entirely independent of their contractual claims.  Although, as discussed below, these claims lack merit (and are barred by Eleventh Amendment immunity), this Court should not consider those claims because plaintiffs' filing is not the appropriate vehicle for raising such claims.

"A plaintiff is 'bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.'"  *Blissful Enterprises, Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 198 (D. Md. 2019), *aff'd*, No. 19-2217, 2022 WL 6671618 (4th Cir. Oct. 11, 2022).  Instead, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."  *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp*., 455 F. Supp. 2d 399, 436 (D. Md. 2006) (citation omitted).

Here, plaintiffs have raised a multifaceted claim for fraud.  If the State is to properly answer this claim, plaintiffs should not be excused from complying with ordinary pleading standards in articulating the basis for their claims.  *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) ("[N]otice pleading is designed

to provide defendants with fair notice of the plaintiffs' claims and the grounds upon which those claims rest.").

Accordingly, to the extent that this Court might be inclined to consider plaintiffs' newly articulated claim of fraud, it should not do so in the posture presented. Instead, because any such fraud claim is entirely peripheral to the contract and constitutional claims that are asserted in the operative complaint in this case, the appropriate outcome in this case is for this Court to grant the State's motion for summary judgment.

### III. Even if this Court Were to Treat Plaintiffs' Filing as a Motion to Amend its Complaint, That Motion Should be Denied as Futile Because Any Alleged Claim is Meritless and, in any Event, is Barred by Eleventh Amendment Immunity.

Although plaintiffs have not asked this Court to do so, this Court has discretion under Federal Rule of Civil Procedure 15(a)(2) to grant leave to amend a pleading "when justice so requires." "Leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Lerner v. Northwest Biotherapeutics*, 273 F. Supp. 3d 573, 596 (D. Md. 2017) (citation omitted).

In this case, granting leave to amend would be futile because plaintiffs' fraud claims lack merit. The gravamen of plaintiffs' claim is that the State (through its agencies and employees) failed to disclose to employees retiring after July 2011 that the state retiree prescription drug benefit would be eliminated as of fiscal year 2020. Plaintiffs' argument, however, brushes aside the fact that, when the General Assembly acted in 2011 to eliminate state retiree prescription drug benefits as of fiscal year 2020, it did so through the ordinary

legislative process for all to see.  Indeed, even before the 2011 legislative session began, a commission created by the General Assembly "to examine the benefits for State employees and retirees" issued a preliminary report that "recommend[ed] that the State establish in statute a requirement that, by the year 2020, all Medicare-eligible State retirees must join Medicare Part D for prescription drug coverage."  *See* Public Employees' and Retirees' Benefit Sustainability Commission, 2010 Interim Report 26 (Jan. 2011); *see id*. ("Consequently, [Medicare-eligible retirees] would no longer be eligible to participate in the State prescription drug plan.")  Then, once the law was passed, its plain and unmistakable text was included in the Code as § 2-509.1 of the State Personnel and Pensions Article: "The State shall discontinue prescription drug benefits for Medicare-eligible retirees in fiscal year 2020."  And contemporaneous news reports referenced the impact of this language.  *See* Aaron C. Davis, *Md. Senate, House reach final deal on state budget*, The Washington Post (April 5, 2011) (discussing the legislation and noting that, "[i]n 2020, the costs [incurred by retirees for prescription drugs] will more than double again when retirees are shifted to federal Medicare coverage.").[3]

Plaintiffs' claim thus boils down to the assertion that they were not expressly and directly made aware of this legislation until 2018.  Although that may be true, plaintiffs have presented no case law that establishes that a person must be given actual notice of a law in order for that person to be subject to it.  Nor have they presented any case law that establishes what they hope to show here:  that the government commits *fraud* by failing to

---

[3] Available at https://www.washingtonpost.com/blogs/maryland-politics/post/md-senate-house-reach-final-deal-on-state-budget/2011/04/05/AFJJKIlC_blog.html

provide that affirmative notice.  Indeed, the case law supports the opposite conclusion.  *See Richardson v. Town of Eastover*, 922 F.2d 1152, 1158 (4th Cir. 1991) ("[I]f a town's action is legislative, an affected party has no right to notice and an opportunity to be heard. Fairness (or due process) in legislation is satisfied when legislation is enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation.").

Plaintiffs also claim that the State engaged in deliberate misrepresentations by suggesting that "health benefits would continue in substantially the same form as to current employees." (ECF 223 at 5.)  To support that assertion, plaintiffs cite to an open enrollment statement from 2014, as well as a powerpoint presentation from 2017.  (ECF 223 at 5; ECF 223-5; ECF 223-6.)   But similar to health benefits documents presented to active employees, these documents on their face relate only to their respective plan years, and thus do not purport to set forth a promise to provide those benefits indefinitely. Accordingly, such documents simply do not support plaintiffs' claims of fraud.[4]

Looking beyond the merits, allowing amendment would also be futile because plaintiffs' newfound claims run headlong into the jurisdictional barrier of the Eleventh Amendment.  "By 'draw[ing] upon principles of sovereign immunity,' the Supreme Court has 'construe[d] the [Eleventh] Amendment to establish that an unconsenting State is

---

[4] Because plaintiffs cannot show that the State engaged in any misrepresentation, the fraud analysis should end there.  There is thus no reason to address plaintiffs' provocative assertions that, in enacting the 2011 legislation, the General Assembly acted with the intent to "decrease the retiree population."  (ECF 223 at 6.)  Suffice it to say that the State disagrees with these assertions.

immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'"  *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005) ("[T]he essence of the immunity is that the State cannot be sued in federal court at all, even where the claim has merit[.]).  The Supreme Court "has also recognized that the States' Eleventh Amendment immunity may extend to 'state agents and state instrumentalities.'"  *Pense*, 926 F.3d at 100.

In their filing, plaintiffs make clear that they are asserting as a cause of action the tort of fraud.  (ECF 223 at 2.)  The State, however, has not consented to tort claims in federal court.[5]  For this simple reason, this Court cannot hear plaintiffs' claims.[6]

---

[5] The State, however, has consented, through the Maryland Tort Claims Act, to tort claims in *state* court.  Md. Code Ann., State Gov't § 12-104(a)(1) (LexisNexis 2021) (limiting the State's waiver to a tort action brought "in a court of the State"); *see Pense*, 926 F.3d at 100-02 (holding that Maryland's waiver of sovereign immunity as to tort claims in Maryland courts does not waive Eleventh Amendment immunity in federal court); *Weller v. Department of Soc. Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990) ("The waiver of sovereign immunity in the Maryland Torts Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.").

[6] In addition to suing the State and state agencies, plaintiffs have sued certain individual defendants, in both their official and individual capacities.  (ECF 123 at 1.)  State officers sued for damages in their *official* capacity, however, "assume the identity of the government that employs them," and are therefore immune from damages to the same extent as the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State"); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (stating that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

Moreover, any attempt to hold these individual defendants liable in their *individual* capacities (whether in state or federal court) would be barred by Maryland state personnel immunity.  Md. Code Ann., State Gov't § 12-105 (LexisNexis 2021); Md. Code Ann., Courts § 5-522(b) (LexisNexis 2020).  Although Maryland state personnel immunity has its roots in the Maryland Tort Claims Act, state personnel immunity can be asserted by a

\*        \*        \*

The starting point of this case was the legislative process and the General Assembly's decision in 2011 to eliminate state retiree prescription drug benefits.  To the extent that plaintiffs' efforts are to continue, it should not be through the courts, but rather through that same legislative process.  For the reasons stated here, as well as in the State's earlier filings, summary judgment should be granted in favor of the State.

Respectfully Submitted,

ANTHONY G. BROWN
Attorney General of Maryland

  /s/ Ryan R. Dietrich
RYAN R. DIETRICH
Federal Bar No. 27945
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6300
(410) 576-6955 (facsimile)

Dated: August 30, 2023                     Attorneys for Defendants

---

state employee in defense of state-law claims in federal court, where the tort claims act otherwise does not apply.  *See E.W. v. Dolgos*, 884 F.3d 172, 187 (4th Cir. 2018) (applying state personnel immunity to state-law claims advanced in federal court against an employee individually); *Oliver v. Department of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 353 (D. Md. 2018) (same).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on August 30, 2023, Defendants' Opposition to Fitch Plaintiffs' Memorandum Brief in Compliance with Court's July 19, 2023 Memorandum & Order was (1) served electronically to all parties via CM/ECF and (2) mailed, postage-prepaid to:

> Michael Bridgett
> 350 Jendan Way, Apt 106
> Prince Frederick, MD 20678
>
> Deborah Monroe
> 9924 Sun Seeker Drive
> Venice, Florida 34292
>
> Deborah Garlitz
> 212 McKennel Road
> Lonacoming, MD 21259

/s/ Ryan R. Dietrich
_____

RYAN R. DIETRICH
FED. BAR NO. 27945