IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

KENNETH <u>FITCH</u>, *et. al*.                    *
            Plaintiffs,

                           *      Case No.: 18- 02817

v.

                           *

STATE OF MARYLAND, *et. al*.,
            Defendants,                    *

  *     *     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR RELIEF OF JUDGMENT & REQUEST FOR INDICATIVE RULING</u>**

# Table of Contents

**TABLE OF AUTHORITIES** ................................................................................................ ii

**I.  FACTUAL ALLEGATIONS** ........................................................................................... 1

    STATE RETIREE SUBSIDY ................................................................................. 4

    2019 LAWS CHAPTER 767 ................................................................................... 7

        MARYLAND ACCESS TO CARE ACT ......................................................... 9

        TIMELINE OF EVENTS ............................................................................... 14

**II.  STANDARD OF REVIEW** ........................................................................................... 17

**III.    ARGUMENT** ............................................................................................................ 18

  A.  TIMELINESS ........................................................................................................ 18

  B.    MERITORIUS DEFENSE…………………………………………………………………
      19

      1.    EQUAL PROTECTION ............................................................................... 19

      2.  SUBSTANTIVE DUE PROCESS ................................................................. 23

      3.  AMERICAN DISABILITY ACT ................................................................. 25

  C.  PREJUDICE TO NON-MOVING PARTY ............................................................. 27

**IV.  IN THE ALTERNATIVE** ............................................................................................ 28

  A.  SUPREMACY CLAUSE ....................................................................................... 28

  B.  U.S. AGENCIES AUTHORITY ............................................................................ 29

**V.  CONCLUSION** ............................................................................................................ **30**

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*AFSCME Maryland Council 3 v. State of MD, 22-1362* .........................................9

*Arizona v. United States, 567 U.S. 394 (2012)* ......................................................28

*Baird v. Rose, 192 F.3d 462, 466 (1999)* ...............................................................26

*Chevron v. National Resources Defense Council, 467 U.S. 837 (1984)* ..............................28

*County of Sacramento v. Lewis, et.al., 523 U.S. 833 (1998*) ................................................24

*Fitch v. Maryland, 24-18-005077* ......................................................................7

*Fitch v. Maryland, 23-2135* .............................................................................9

*Fitzgerald v. Porter Memorial Hospital, 523 F.2d716, 719-720 (CA7 1975)*......................24

*Fobian v. Storage Tech. Corp.,164 F.3d 887, 891 (4th Cir. 1999)* ........................................18

*Loper Bright Enterprises v. Raimondo, 603 U.S. ___(2024)* ................................................1, 29

*Mathews v. Diaz, 426 U.S. 67, 80 (1976)* .............................................................29

*McLawhorn v. John W. Daniel & Co., 924 F.2d 535, 538 (4th Cir. 1991)*............................18

*Nat'l Credit Union Admin Bd. V. Gray, 1 F.3d 262, 264 (4th Cir. 1993)*.............................18

*Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896(4th Cir 1987)*....................................18

*Pathways Psychosocial v. Town of Leonardtown, MD,*

    *133 F. Supp 2d 772 (2001)* ........................................................................26

*Perez v. Campbell, 402 U.S. 637 (1971)*...............................................................28

*Plyler v. Doe, 457 U.S. 202, 228 (1982)*...............................................................22

*Rosales-Mireles v. United States, 585 U.S. 129 (2018)*.......................................................24

*Reno v. Flores, 507 U.S. 292, 301-02 (1993)* ......................................................19

*Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920) ....................................................20

*Sylvia Development Corp. v. Calvert County, MD,*

   *48 F.3d 810, 819(4th Cir. 1995)* ...............................................................................20, 21

*Sylvia Landfield v. City of Los Angelos,* 729 F.3d 1189, 1195 (2013) ................................24

*Tsombanidas v. City of West Have, Connecticut,*

   *129 F. Supp 2d (136 (Dis Conn 2001)* ..........................................................................20

*United States v. Morandi, 673F.2d 7255 (4th Cir. 19820* ....................................................19

*Washington v. Glucksberg,* 521 U.S. 702 (1997) ..................................................................23

*Wong Yang Sung v. McGrath, 339 U.S. 33,48-51 (1950)* .....................................................20

*Wong Wing v. United States, 163 U.S. 228 (1896)* ................................................................20

*Yick Wo v. Hopkins*, 118 U.S. 356,369 (1886) .............................................................19, 25

**Statutes**

2024 Md. Laws Ch. 384...................................................................................................10, 15
2011 Md. Laws Ch 397..........................................................................................................7
2019 Md. Laws Ch. 767..................................................................................................2,7 8
2024 Md. Laws Ch. 841.........................................................................................................1
2023 Md. Laws Ch. 842........................................................................................................17

42 C.F.R. § 435.406...............................................................................................................9
42 U.S.C. § 1983............................................................................................................1,2,3
42 U.S.C. § 12101(b)(1).......................................................................................................25
42 U.S.C. § 12132..............................................................................................................26
42 U.S.C. § 18032(f)(3).......................................................................................................10

COMAR 17.13.05(c)(1)......................................................................................................4, 7

Fed. R. Civ. P. 60(b)........................................................................................................1,2,3
Fed. R. Civ. P. 60(b)(6) ……………………………………………………18
Fed. R. Civ. P. 62.1..........................................................................................................2,3
Fed. R. Civ. P. 621(a) ..........................................................................................................1

Md. Code Ann. Insurance § 31-123(B)(V)............................................................................10
Md. Code Ann. State Personnel & Pensions § 101, *et seq.* ...................................................3

Md. Code Ann. State Personnel & Pensions § 2-509.1............................*Passim*

Md. Code Ann. State Personnel & Pensions § 2-501.  ...........………..    *Passim*

Md. Code Ann. State Personnel & Pensions § 2-508 ..........................................................4, 7

Md. Code Ann. State Personnel & Pensions § 2-504 .............................................................4

Md. Code Ann. State Personnel & Pensions § 34-101(c).......................................................5

Md. Code Ann. State Personnel & Pensions § 2-508(b)(4)(i) & (ii)  ....................................5

U.S. Constitution, Art. 1 § 8 cl. 4 ......................................................................................28

## Other Authorities

Department of Legislative Services

    Fiscal & Policy Note 2019 Regular Session for Senate Bill 946......................................4

    Fiscal & Policy Note 2011 Regular Session for Senate Bill 628 ………….5

Maryland 2019 Regular Session

    House Bill 98 ...................................................................................................................11

    House Bill 490 .................................................................................................................11

    House Bill 979 ……………………………………………………………………11

    House Bill 1004 ...............................................................................................................11

    House Bill 1120 ...............................................................................................................11

    House Bill 1033 ……………………………………………………...11

    Senate Bill 193 ................................................................................................................11

    Senate Bill 946 ................................................................................................................11

Maryland 2020 Regular Session

    House Bill 1230 ...............................................................................................................12

Maryland 2021 Regular Session

    House Bill 1335 ...............................................................................................................12

Maryland 2022 Regular Session

    House Bill 892 .................................................................................................................12

    Senate Bill 578 …………………………………………………………12

Maryland 2024 Regular Session

    House Bill 1230 ...............................................................................................................12

    Senate Bill 349 ..........................................................................................................13, 27

    Senate Bill 705 ……………………………………………………………13, 27

**Maryland House & Senate Hearings**

Maryland 2022 Regular Session House Appropriations Committee Hearing on House Bill 892, March 15, 2022
https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=hgo&ys=2022RS&clip=HGO_2_24_2022_meeting_1&billNumber=hb0982 ...……...13

Maryland 2022 Regular Session, Senate Budget & Taxation Committee Hearing on Senate Bill 578, March 2, 2022
https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=b%26t&ys=2022RS&clip=BAT_3_2_2022_meeting_1&billNumber=sb0578 …….13

Maryland 2024 Regular Session, Senate Finance Committee Hearing on Senate Bill 349, February 28, 2024.
https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=b%26t&ys=2024RS&clip=BAT_2_28_2024_meeting_1&billNumber=sb0349 ......................................................13

Maryland 2024 Regular Session, Senate Floor Action, Maryland Senate March 6, 2024.
https://mgaleg.maryland.gov/mgawebsite/FloorActions/Media/senate-39-?year=2024RS.................................................................................16

Maryland Health Benefit Exchange and Maryland Department of Health – Health Care and Dental Care Coverage for Undocumented Immigrants – Report. .....................................................14

**EXHIBIT A**
- July 2024 Letter from Dept. of Budget & Management
- May 2024 Letter from Dept. of Budget & Management
- January 2024 Letter from Dept. of Budget & Management

**EXHIBIT B**
- 2023 Maryland Laws Chapter 384 (Senate Bill 806)
- 2023 Regular Session Senate Bill 806 Legislative History
- 2023 Regular Session Senate Bill 806 Fiscal & Policy Note

**EXHIBIT C**
- The Report on Health Care and Dental Coverage for Undocumented Immigrants.

**EXHIBIT D**
- 2024 Maryland Laws Chapter 841 (Chapter 841)
- 2024 Regular Session Senate Bill 705 Legislative History
- 2024 Regular Session Senate Bill 705 Fiscal & Policy Note

**EXHIBIT E**
- 2024 Regular Session Senate Bill 349
- 2024 Regular Session Senate Bill 349 Legislative History
- 2024 Regular Session Senate Bill 349 Fiscal & Policy Note

**EXHIBIT F**
- Email from Delegate Munoz

**EXHIBIT G**
- March 31, 2023, Article – Undocumented people urge Maryland senators to expand health insurance marketplace.
- February 22, 2024, Article – Legislation to let undocumented immigrants use Md, Health care marketplace to get house vote.
- March 8, 2024, Article -Bill allowing undocumented residents
  To more easily buy health care finally clears Senate hurdle.
- March 8, 2024, Article – Md Lawmakers vote to open health exchange to undocumented immigrants

This motion seeks relief under Fed. R. Civ. P. 60(b) based on the claim that the 2024 Maryland Access to Care Act[1] is violative of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and based on the claim that the Defendants' discriminatory conduct is prohibited by the American Disabilities Act. In the alternative Plaintiffs seek relief based on the claim that the Maryland Access to Care Act is violative of the Supremacy Clause and that pursuant to <u>Loper Bright Enterprises v. Raimondo</u> [2] U.S. Agencies need unambiguous statutory authority to waive an Act of Congress that denies aliens who crossed into the United States illegally access to State and Federal health programs.

The constitutionality of this state statute is at issue. The statute grants aliens under the Deferred Action for Childhood Arrivals ("DACA"), and aliens who entered the United States illegally ("collectively noncitizens") access to and subsidies for State and Federal Health programs (inclusive of Medicare Part D) while for the last six years the State of Maryland refused to subsidize prescription drug coverage for elderly and disabled State retirees 1) whose wages paid for this benefit for use during their retirement; 2) who earned this benefit by meeting all statutory requirements and acquired a property interest therein; 3) were hired prior to July 1, 2011; and 4) are United States citizens. The Defendants' actions disregard the constitutional rights of these State retirees and will deprive them of a fundamental right – the right to life, reducing their citizenship to one of second-class status, while, at the same time, legitimizing discriminatory conduct which, in the case of disabled retirees, is violative of the ADA.

Thus, pursuant to Rule 60(b), the Court should set aside its final judgment entered in favor of the Defendants to allow Plaintiffs to protect their constitutional rights by amending their complaint and enjoining enforcement of 2019 Laws, Ch. 767 (Ch. "767") so that the issues

---

[1] Maryland 2024 Laws Chapter 841
[2] 603 U.S. ___ (2024).

surrounding the constitutionality of MDACA are adjudicated.  Because this case is currently on appeal to the Fourth Circuit Court of Appeals, Plaintiffs request an immediate indicative ruling under Fed. R. Civ. P. 62.1 stating that this Court would be inclined to grant the Rule 60(b) motion or that Plaintiffs' Motion raises a substantive issue. This will enable the Plaintiffs to move for limited remand by the Fourth Circuit restoring this Court's full jurisdiction over the Equal Protection and Due Process claims pursuant to § 1983 and the State's discriminatory conduct under the ADA, thereby allowing the District Court to rule on the merits of Plaintiffs' request for relief under Rule 60(b)(6).

The determination of whether the subsidy (that reduced the prescription drug costs of a readily identifiable group of State retirees who were hired prior to July 1, 2011, and are 65 years and older or disabled) was a contractual obligation of the State has been in litigation for six years. During that time the Defendants argued that a contract did not exist between the parties, and with the entry of the Final Judgment on September 29, 2023, in favor of the Defendants, they succeeded in turning a vested property interest into a gratuity.

The passage of MDACA reveals that the Defendants were always willing and able to pay for this type of benefit, they just didn't want to pay for its use by their former employees. Removal of the subsidy that made Medicare Part D affordable for Maryland's former employees was an act by the State of Maryland 1) to reduce the pension rolls of this group of retirees; 2) remove GASB oversight while changing the beneficiaries of the State's limited resources from legitimate recipients to individuals that are prohibited from receiving this benefit by the federal government. Arguing that the State could not create a unilateral contract was a smoke screen to hide a more nefarious and discriminatory policy – the intent to replace one elderly and disabled group with another.

Pursuant to 42 U.S.C. § 1983 the Defendants have deprived Plaintiffs of their constitutional rights through the passage of MDACA and Plaintiffs must be allowed to defend those rights.  Accordingly, the motion under Rule 60(b) at least raises a substantial issue, such that the Court should issue an indicative ruling under Rule 62.1, so that the Plaintiffs can secure from the Fourth Circuit a limited remand to this Court for leave to file an Amended Complaint.

## I.    FACTUAL ALLEGATION COMMON TO ALL COUNTS

For over four decades, the State of Maryland ("Maryland") promised its employees that in exchange for their dedicated service they would receive retirement benefits that included a subsidy that reduced the prescription drug costs of Medicare Part D[3] for themselves, and their spouse/dependents. The legislature for the State of Maryland codified these retirement benefits. See Maryland Code State Personnel & Pensions Ann. §1-101 et. seq. ("SPP"). Those codified benefits originally included, amongst other things, eligibility for a health insurance benefit that expressly included a State subsidized prescription drug benefit plan ("State Retiree Subsidy").[4] These provisions created a contract between the Plaintiffs and Defendants, including the State of Maryland, that obligated the State of Maryland to provide health benefits including a subsidized prescription drug plan. That promise was affirmed and codified in SPP § 2-509.1.  The promise and provision of guaranteed benefits for the duration of their retirement, induced Plaintiffs (and all those similarly situated) to continue to work as a State of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers.

## THE STATE RETIREE SUBSIDY

---

[3] Medicare Part D is a federal program that provides prescription drug coverage for individuals who are age 65 years and older or disabled.

[4] See SPP §§ 2-501.1 and 2-508; COMAR 17.13.05(c)(1).

The State Retiree Subsidy was funded partially by employee wages during the retirees' employment [5] and partially by the State during their retirement.[6] Each of the Plaintiffs satisfied the statutory requirements to receive this benefit during retirement. The State Retiree Subsidy reduced the amount State Retirees paid for premiums and allowed access to the State formulary. That formulary covered more medications at a reduced cost than is currently offered by Medicare Part D. The reduced cost of medications, co-pays and premiums was one of the benefits of State employment earned by Plaintiffs since the State of Maryland negotiated these prices directly with the manufacturer or supplier and were able to pass along a discounted rate to its former employees.[7]

In 2011, the State retroactively eliminated the State Retiree Subsidy with passage and approval of the 2011 Budget Reconciliation Financing Act, 2011 Laws Chapter 397 ("Chapter 397"). This was codified into law as SPP § 2-509.1(b).[8] Approximately 45,000 State retirees were affected by this legislation.[9] This elimination was due in part to the State's refusal to follow the new standards issued by Governmental Accounting Standards Board ("GASB") in 2004. These standards required state and municipal governments to recognize liabilities for Other Post Employment Benefits ("OPEB") on their balance sheets as they accrue rather than on a pay-as-you-go ("PAYGO") basis.[10] In effect, the new GASB standards required public employers to account for OPEB benefits (typically health insurance coverage) for retirees, the

---

[5] [Benefits of Employment (maryland.gov)](maryland.gov)
[6] SPP § 2-504.
[7] SPP § 2-501.1.
[8] SPP § 2-509.1(b) 2014.
 (b) Discontinuance of benefits in 2020. -- The State shall discontinue prescription drug benefits for  Medicare-eligible retirees in fiscal year 2020.
[9] Maryland Department of Legislative Services.  Fiscal and Policy Note, 2019 Regular Session for Senate Bill, SB 946, Page 8.
[10] Md Department of Legislative Services Fiscal and Policy Note for 2011 Regular Session, Senate Bill 628, Page 7.

same way that the State treated pension benefits for retirees.[11]  This is why the law passed in 2005 had a separate criterion for qualification to receive the State Retiree Subsidy so that the program could be structured to provide prescription drug coverage in a reasonable and less costly program as well as affirm the State's guarantee of continued coverage during retirement. Therefore, in order for an employee to qualify to receive the full State Retiree Subsidy during their retirement that employee had to satisfy statutory requirements[12] i.e., a minimum of five service years for vesting into the State Retiree Subsidy and retire from State service with a minimum of sixteen years.[13]

The removal of State retirees was despite the recommendation of an alternative solution. "If the State funds the ARC (*Annual Required Contribution*) by paying the full amount into an irrevocable trust for the purpose of paying future retiree health care costs, it will have no net OPEB obligation under GASB standards".[14]  This option would have allowed the State to use a higher discount rate in projecting its liabilities, which would be the same rate used by the State Pension Fund. Under this scenario, the State's OPEB liabilities would drop from $15.9 billion to $9.2 billion.  *Id.*   In 2005, the State created an irrevocable trust just for that purpose [15], however each year the State diverted those contributions to the General Fund to be used for other expenditures or programs.[16]

---

[11] Md Department of Legislative Services Fiscal and Policy Note for 2011 Regular Session, Senate Bill 628, Page 8.
[12] Maryland Code State Personnel & Pensions Ann § 2-508(b)(4)(i) and (ii).
[13] SPP § 2-508(b)(4)(iii).
[14] See Maryland 2011 Regular Session – Fiscal and Policy for Senate Bill 628
[15] SPP § 34-101(c).

[16] In an effort to begin prefunding its OPEB liabilities, the State set aside funds in fiscal year 2007, 2008 and 2009. The 2007 fiscal budget appropriated $100 million into a Dedicated Purpose Account, which was later transferred to the Trust Fund once it obtained the necessary clearance as an irrevocable trust. In 2008, the budget appropriated $100 million in general funds in the Dedicated Purpose Account toward prefunding the State's liabilities, however the Maryland General Assembly cut that figure in half.
The Governor's 2009 fiscal allowance included a $210 million contribution to the Benefits Trust Fund.  As enacted, the 2009 fiscal budget only contained half that amount.  In October of 2009, the Board of Public Works cancelled the remaining $46 million that had yet to be paid into the trust as a cost containment measure.

In a letter dated May of 2018 (seven years after passage of the Chapter 397) the Department of Budget and Management ("DBM") informed Medicare Eligible State retirees that the State Retiree Subsidy had been eliminated and required State Retirees to register for Medicare Part D between October and December of 2018 or these State retirees would not have prescription drug coverage for the year of 2019.   The State waited seven years to tell them about the elimination of the State Retiree Subsidy and then gave them only four months to digest this devastating information before requiring registration for a program that did not have generic medicine equivalents for health issues such as cancer, glaucoma, and diabetes and presented a turntable of formularies that required calculated and minute review of medications each year. If a State retiree fell ill during that year and the medicine wasn't chosen between October and December of the preceding year, that retiree would have to pay for that medication without relief until the following year. In order to acquire lifesaving medications, Plaintiffs and all those similarly situated would have to substantially outlay more money for premiums in addition to paying a percentage for brand name medications without  being afforded the ability to discount their costs through manufacture coupons or programs due to the State's negotiations on price controls for its employees[17]  State retirees were confronted with the reality of facing higher and

---

The Maryland Budget Reconciliation and Financing Act of 2015 (2015 Act) tried to address the funding issue in the Trust Fund.  The 2015 Act required for fiscal year 2017 through fiscal year 2020, an amount equal to one-half of the unappropriated general fund surplus in excess of $10 million from the second prior fiscal year be paid to the Pension Trust Fund, up to a maximum of $50 million annually.  The payments were required to continue indefinitely beyond fiscal year 2020, but also beginning in fiscal year 2021, the payments be evenly divided between the Pension Trust fund and the Benefits Trust Fund, up to the same combined total of $50 million beginning in fiscal year 2021 (July 1, 2020).

A payment of $50 million was made to the Benefits Trust Fund in fiscal year 2017.   However, even though the general funds surplus exceeded $60 million in each succeeding year, successive Budget Reconciliation and Financing Acts have repealed the required payments in fiscal years 2018, 2019, and 2020. In the 2020 Legislative session, the Governor of the State of Maryland requested that the Legislature divert the Benefits Trust Fund appropriation to the General Fund for Fiscal Year 2021 in Senate Bill 192.

[17] SPP § 2-501.1.

increasing prescription drug costs at time in their lives when they have neither the flexibility nor capacity to earn wages to offset the increasing costs.

On September 10, 2018, four State retirees, Kenneth Fitch, Mary Frye, Deborah Heim and Phylis Reinard filed in the Circuit Court for Baltimore City (Fitch, et al., v. Maryland, et al., 24-C-18-005077) for declaratory and injunctive relief to stop the enforcement of Chapter 397, The Fitch case argued that SPP § 2-509.1 affirmed that a contract existed between the parties, SPP §§ 2-501.1 and 2-508; COMAR 17.13.05(c)(1) outlined the terms of that contract which the Defendants breached by eliminating the State Retiree Subsidy for current Medicare Eligible State Retirees and in doing so the Defendants retroactively deprived the Plaintiffs of an earned property interest without notice.

The Fitch case was removed to the US District Court for the District of Maryland (18-02817) and a Preliminary Injunction was issued maintaining the status quo of the parties while litigation was pending.

## 2019 LAWS CHAPTER 767

On January 1, 2019, the health benefit program that included subsidized prescription drug coverage was eliminated by operation of law, although retirees were able to continue to receive the subsidy as a result of the injunction.  In direct response to the entry of the Preliminary Injunction, the Maryland General Assembly passed SB 946 which was signed into law as 2019 Laws, Chapter 767 and codified as SPP § 2-509.1(d)-(k).   This law unreasonably modified the prescription drug coverage program while affirming the retroactive elimination of Plaintiffs property interest in the subsidy. Chapter 767 created three new programs 1). The Maryland State Retiree Prescription Drug Coverage Program; 2) the State Retiree Catastrophic Prescription Drug Assistance Program; and 3) the Maryland State Retiree Life-Sustaining Prescription Drug

Assistance Program ("collectively 2019 Programs"). The State Retiree Prescription Drug Coverage Program requires the State retirees who were hired prior to July 1, 2019, and retired before January 1, 2020, to pay for their medication prior to reimbursement.  The State Retiree Catastrophic Prescription Drug Assistance Program will allow reimbursement once the catastrophic phase of Medicare Part D is reached for State retirees who were hired prior to July 1, 2011, and retired after December 31, 2019.    Prior to reaching that stage, all out of pocket costs are borne by the State retiree. To combat State retirees' argument that all medications were not covered by Medicare Part D, the 2019 amendment created the State Retiree Life-Sustaining Prescription Drug Assistance Program.

The American Federation of State County & Municipal Employees ("AFSCME") intervened in the Fitch case on November 1, 2019 (ECF 91) arguing that 2-509.1 created a contract between the State and current State employees despite the program's elimination on January 1. 2019.[18]

 On December 30, 2021, the District Court (Messitte, J.) issued an Order and Memorandum Opinion that Plaintiffs (and all those similarly situated) who retired before July 1, 2011 had an enforceable contract with the State; that Plaintiffs (and all those similarly situated) who retired between July1, 2011 and December 31, 2018 had  adequately pleaded a breach of contract claim, subject to a demonstration by Defendants that their proposed modification (Chapter 767) was reasonable. However, the Court also stated that any State employee who retired after December 31, 2018, or were currently employed did not have an enforceable contract with the State. (ECF 148, ECF 149).

---

[18]AFSCME declined to add a State employee as Plaintiff so from December 2019 until December 2021, counsel argued on behalf of vested current employees.

AFSCME appealed the ruling of the District Court to the U.S. Court of Appeals for the Fourth Circuit on March 8, 2022 (ECF 166).[19]  On February 21, 2023, the Fourth Circuit issued an opinion that pursuant to <u>Nat'l Railroad Passenger Corp v. Atchison, Topeka & Santa Fe Railway Co, *et. al*</u>., (470 U.S. (451) 1985) the State of Maryland did not enter into a contract with current employees nor with State retirees (ECF 195).  In response to the <u>AFSCME</u> opinion, the District Court dissolved the injunction in the instant case on July 19, 2023 (ECF 221).  The District Court found that the Fourth Circuit opinion in AFSCME foreclosed further review of the Plaintiffs' contract claims and granted the Defendants' Motion for Summary Judgment on September 29, 2023 (ECF 235).  The <u>Fitch</u> case was appealed to the Fourth Circuit on October 23, 2023 (ECF 236). [20]

## MARYLAND ACCESS TO CARE ACT

In 2011, the Maryland General Assembly created The Maryland Health Benefit Exchange ("the Exchange") to provide a marketplace for individuals and small businesses to purchase affordable health care [21]  Under federal regulations only U.S. Citizens or lawfully present aliens are eligible to enroll in a qualified health plan through the Exchange and receive advanced premium tax credits. 42 CFR § 435.406.

In an obvious attempt to circumvent federal law [22], in 2023, the Maryland General Assembly passed legislation[23] requiring the Exchange and the Maryland Department of Health to develop a report outlining various options to allow noncitizens, regardless of their immigration status, health (inclusive of prescription drugs) and dental coverage.  The Report on Health Care

---

[19] <u>AFSCME Maryland Council 3 v. State of Maryland</u>, 22-1362.
[20] <u>Fitch, et al v. Maryland, et al.,</u> 23-2135
[21] Acts 2011, c. 1 § 1.
[22] 42 U.S.C. § 18032(f)(3).
[23] 2024 Laws, Chapter 384.

and Dental Coverage for Marylanders Ineligible for Medicaid and Qualified Health Plans Due to Immigration Status ("Health Care Report")[24], submitted in December 2023, indicates there are approximately 112,400 undocumented and uninsured individuals in Maryland who are deemed ineligible for Medicaid and qualified health plans due to their illegal immigration status. *Id.* MDACA classified these aliens as "Qualified Residents". *Id.*

Under MDACA, a Qualified Resident is an individual, including a minor regardless of immigration status who, at the time of enrollment 1) seek to enroll in a qualified plan offered to individuals through the Exchange; 2) resides in the state (for a minimum of six months); 3) is not incarcerated, other than incarceration pending disposition of charges; and 4) is not eligible for Federal Premium Tax Credit, the Maryland Medical Assistance Program, Medicare, the Maryland Children's Health Plan, or Employer-Sponsored minimum essential coverage.[25] Despite the declaration that MDACA requires payment of the premium by the qualified resident, the law has already approved that a subsidy to reduce the premium costs of the Medicare Part D (and other State and Federal health programs) can be obtained.[26]

 On May 16, 2024, the Governor of Maryland approved the Maryland Access to Care Act.[27]  The purpose of MDACA was to establish and implement the Qualified Resident Enrollment Program ("Resident Enrollment Program") to facilitate the enrollment of qualified residents in qualified plans offered by the State and Federal governments such as Federal Premium Tax Credit, the Maryland Medical Assistance Program, Medicare, the Maryland

---

[24] Maryland Department of Health Report entitled Report on Health Care and Dental Coverage for Marylanders Ineligible for Medicaid and Qualified Health Plans Due to Immigration Status, December 8, 2023.
[25] 2024 Laws, Ch. 841
[26] Maryland Code Insurance Annot. § 31-123 (B)(V)
Within six months before a fiscal year in which the Exchange implements the Qualified Resident Enrollment Program, Exchange shall submit a report to the General Assembly...on its plan to implement the program including (V) if the General Assembly authorizes funding to subsidize premiums under the program, the parameters of the subsidies.
[27] 2024 Laws Chapter 841.

Children's Health Plan, or Employer-Sponsored minimum essential coverage. [28] The Exchange is directed to administer the program on or before July 1, 2025, the law directs the Exchange to submit a State Innovation Waiver Application Amendment under §1332 of the Affordable Care Act ("ACA") to establish the Enrollment program and, if available, seek federal pass-through funding resulting from the implementation of the Enrollment Program. *Id.* The Department of Legislative Services estimates that the Qualified Resident Program will be operational as early as 2026.

### LEGISLATIVE EFFORTS TO REINSTATE STATE RETIREE SUBSIDY

During the six years of litigation, Plaintiffs availed themselves of the legislative system to obtain reinstatement of the State Retiree Subsidy for State retirees. As a result, in 2019, eight bills were submitted to the Maryland House of Delegates and the Maryland Senate asking for reinstatement of the Retiree State Subsidy.  Six of the eight bills sought to repeal Chapter 394 and reinstate the State Retiree Subsidy.[29]  The seventh (Senate Bill 946) and eighth bill (House Bill 1033)[30], required State retirees to pay for their prescription medications before applying to the State for reimbursement, a proposal that was not remotely similar to their vested program.  It was these two bills that passed both Maryland houses and became law on May 25, 2019, as 2019 Laws Chapter 767 and was codified in SPP § 2-509.1 (e)-(k).  The six other bills that sought repeal of Chapter 394 and reinstatement of the subsidy, either were withdrawn or never made it out of committee.

Chapter 767 was a deliberate and successful attempt to affirm the elimination of the State Retiree Subsidy and to abdicate any and all responsibility to fulfill the State of Maryland's

---

[28] 2024 Laws, Chapter 841.
[29] Maryland 2019 Regular Session – HB 98, HB 490, HB979, HB 1004, HB 1120, SB 193.
[30] Maryland 2019 Regular Session, SB 946/HB 1033

promise to their former employees, Every lawmaker (except four (4)[31]) voted for the new prescription drug reimbursement program. Then the General Assembly bifurcated the vested employees who were hired before July 1, 2011 informing them by letter in September of 2019 that to be eligible for the new Maryland Prescription Drug Program they would have to retire by December 31, 2019, three months after receipt of the September letter.

In the 2020 Regular Session, Delegate Joseph Boteler submitted House Bill 1230 to the Maryland House of Delegates.[32]  The bill sought reinstatement of the State Retiree Subsidy for retirees who had vested into the benefit prior to July 1, 2011.  Due to the Covid -19 pandemic the Maryland General Assembly closed access to the public on March 12, 2020, and though the legislature passed various legislation despite the closure, House Bill 1230 never made it out of committee.

In the 2021 Regular Session, Delegate Carl Jackson submitted House Bill 1335 to the Maryland House of Delegates Appropriations Committee.  This bill sought reinstatement of the State Retiree Subsidy for retirees who had vested into the benefit prior to July 1, 2011.  This bill was authored by Plaintiff Ken Fitch and counsel. Upon information and belief, State retirees did not have the opportunity to testify on this bill because Delegate Jackson withdrew the bill in exchange for an LED sign for his high school.

In the 2022 Regular Session of the Maryland General Assembly, Plaintiff Fitch persuaded Delegate Joseph Boteler and Senator Kathy Klausmeier to submit respectively, House Bill 892 and Senate Bill 578.  These bills were co-authored by Plaintiff Ken Fitch and counsel.  The bills sought to reinstate the State Retiree Subsidy to State retirees who had vested and were hired before July 1, 2011.  State Retirees testified on behalf of House Bill 892 but the bill never made it out of

---

[31] Delegate Lauren Arikan, Delegate Paul Corderman, Delegate Dan Cox, and Delegate Johnny Mautz
[32] Maryland 2020 Regular Session, House Bill 1230.

the Appropriations Committee.[33]  State Retirees testified on behalf of Senate Bill 578, but the bill never made it out of the Senate Budget & Taxation Committee.[34]

In the 2023 Regular Session of the Maryland General Assembly, Plaintiff Fitch persuaded Delegate Rachel Munoz to submit a bill to reinstate the State Retiree Subsidy.  After agreeing to submit the bill, Delegate Munoz withdrew her support indicating that she was advised to wait until litigation was completed before submitting the bill. [35]

In the 2024 Regular Session of the Maryland General Assembly, Plaintiff Fitch persuaded' Senator Mike McKay to submit a bill (Senate Bill 349)[36] to reinstate the State Retiree Subsidy for State retirees who were hired prior to July 1, 2011.  The bill was co-authored by Plaintiff Ken Fitch and counsel. State retirees testified at the hearing, pleading for sympathy for their plight and indicating that the expenditure for this benefit was a relatively small cost to the overall State Budget.[37]  The bill never made it out of the Senate Finance Committee.

During this six-year span, Plaintiff Fitch organized a petition drive that generated over 3500 signatures and was attached to each bill.  From 2019 to 2024 he spearheaded the drive for letters and testimony before the House and Senate Committees. Despite these efforts, the Maryland General Assembly would not reinstate the State Retiree Subsidy.  In sharp contrast, the bills that proposed access to State and Federal health care programs and subsidies for those programs for non-citizens were submitted, passed both houses, and were approved by the Governor in that same year.

---

[33] Maryland 2022 Regular Session, House Appropriation Committee Hearing on House Bill 892, March 15, 2022. Committees - Media (maryland.gov)
[34] Maryland 2022 Regular Session, Senate Budget & Taxation Committee Hearing on Senate Bill 578, March 2, 2022. Committees - Media (maryland.gov)
[35]  See email communications between Delegate Munoz and Plaintiff Ken Fitch.
[36]  Maryland 2024 Regular Session, Senate Finance Committee Hearing on Senate Bill 349
[37] Maryland 2024 Regular Session, Senate Finance Committee Hearing on Senate Bill 349, February 28, 2024. https://mgaleg.maryland.gov/mgawebsite/Committees/Media/false?cmte=b%26t&ys=2024RS&clip=BAT_2_28_20 24_meeting_1&billNumber=sb0349

**TIMELINE OF EVENTS**

During the six years of litigation, the Defendants fought through the Courts and the Legislature against reinstatement of the State Retiree Subsidy arguing that a contract did not exist between the parties and that the State could not afford to pay the costs of the subsidy and continued access would jeopardize the State's Triple A bond rating, The timeline below indicates otherwise since Defendants were able to successfully expand the amount of recipients who could take advantage of Maryland's healthcare system with the passage of MDACA.

**2023**

On **February 6, 2023**, Senate Bill 806 was submitted to the Senate Finance Committee to prepare a report to study the options available to provide health and dental care to non-citizens and ways to subsidize those benefits.[38]

On **February 24, 2023**, the Defendants filed a Motion for Summary Judgment and Dissolution of Preliminary Injunction (ECF 195) to deny State retirees the State Retiree Subsidy as a result of the opinion issued by the Fourth Circuit in AFSCME v. Maryland issued on February 21, 2023. (ECF 194).

On **July 19, 2023**, the District Court dissolved the injunction that had been in place since October 10, 2018.

On **September 29, 2023**, the District Court granted Summary Judgment in favor of the Defendants.

On **October 23, 2023**, Plaintiffs filed a Notice of Appeal to the U.S. Court of Appeals for the Fourth Circuit.

---

[38] 2023 Session, Senate Bill 806, 2023 Laws Chapter 384.

On **December 8, 2023**, the Report on Health Care and Dental Coverage for Marylanders Ineligible for Medicaid and Qualified Health Plans Due to Immigration Status was submitted to the Senate Finance Committee and the House Health and Government Operations Committee outlining the various options, "for offering affordable health care and coverage to State residents who are ineligible …. due to the individuals' immigration status." [39]  Among other State and Federal Health programs, the report outlines Maryland's costs for Prescription Drug Coverage under Medicare Part D if the coverage was limited to individuals 65 years of age and older.[40]

**2024**

In a letter dated **January 1, 2024**, the DBM informed retirees that were hired before July 1, 2011, that the State Retiree Subsidy would be eliminated January 1, 2025.

On **January 15, 2024**, Senate Bill 349, whose purpose was to reinstate the State Retiree Subsidy, was submitted to the Senate Finance Committee.

On **January 29, 2024**, House Bill 728 whose purpose was to establish and implement the Qualified Resident Program for non-citizens was submitted to the Maryland House Health and Government Services Committee.

On **January 30, 2024**, Senate Bill 705 whose purpose was to establish and implement the Qualified Resident Program for non-citizens was submitted to the Senate Finance Committee for its First Reading.

---

[39] Report required by SB 806, Chapter 384 (2023) – Maryland Health Benefit Exchange and Maryland Department of Health – Health Care and Dental Care Coverage for Undocumented Immigrants – Report (MSAR#1473), December 8, 2023,

[40] Report required by SB 806, Chapter 384 (2023) – Maryland Health Benefit Exchange and Maryland Department of Health – Health Care and Dental Care Coverage for Undocumented Immigrants – Report (MSAR#1473), December 8, 2023, Page 12.

On **February 28, 2024**, State retirees testified at the hearing for Senate Bill 349 in front of the Senate Finance Committee requesting reinstatement of the benefit they paid for and earned with their years of service.

On **March 6, 2024**, Plaintiffs [41] testified in front of the Maryland Senate Finance Committee Hearing held for Senate Bill 705.  Plans to grant access to and subsidize prescription drug costs for noncitizens while removing the State Retiree Subsidy for the States former employees, compelled them to testify against its passage. MDACA expressly indicates that within 6 months before a fiscal year in which the Exchange implements the Qualified Resident Enrollment Program a report shall be submitted to the General Assembly to determine if they will authorize the funding to subsidize premiums under the program and the parameters of those subsidies for non-citizens.[42]  The Plaintiffs asked the Committee to prioritize State retirees over non-citizens because this subsidy was already paid for and earned by its former employees and ironically as taxpayers, State retirees who were still residents of Maryland would be the ones subsidizing this benefit for non-citizens. These Plaintiffs were accused of being full of hate and were taken to task for not making allowances for the "New Americans." [43]  Due to their stance, after the hearing concluded the Plaintiffs and counsel were accused of being racist for not willing giving up their property interest in Retiree Health Subsidy in favor of non-citizens.[44]

On **March 14, 2024**, Senate Bill 705 passed through the Maryland Senate.

On **March 22, 2024,** House Bill 728 passed through the Maryland House of Delegates.

---

[41] Plaintiff Ken Fitch, Plaintiff Mary Frye and Plaintiff Howard Kilian along with counsel.
[42] 2024 Maryland Laws, Chapter 841.
[43] 2024 Maryland Floor Action, Maryland Senate March 6, 2024.
https://mgaleg.maryland.gov/mgawebsite/FloorActions/Media/senate-39-?year=2024RS
[44] See Letters to the Senate Ethics Committee by Plaintiff Mary Frye and counsel.

On **May 16, 2024**, House Bill 728[45] and Senate Bill 705[46] was approved by the Governor. Senate Bill 349 never made it out of committee.

In a letter dated **May 20, 2024**, DBM sent out a letter to all State Retirees who were hired prior to July 1, 2011, informing them that the <u>Fitch</u> case was dismissed and they would have to register for Medicare Part D beginning on October 15, 2024, to be eligible to receive prescription drug coverage in 2025.

Then, in a letter dated **July 1, 2024,** DBM informed State Retirees that their subsidy would end on December 31, 2024, and outlined the newly created reimbursement program which determined that though the State retirees would incur thousands of dollars medication costs monthly under Medicare Part D without the subsidy[47], the State would reimburse $750.00 for individuals and $2,000 for families for the year.

## II.    STANDARD OF REVIEW

Settled Fourth Circuit precedent makes clear that the analysis in a Rule 60(b) motion proceeds in two stages.  To obtain relief under Rule 60(b), Plaintiffs must show that their motion is timely, that they have a meritorious claim or defense, and that the opposing party would not be unfairly prejudiced by having the judgment set aside.  Once the movant has met the threshold showings, he must satisfy one of the six enumerated grounds for relief under Rule 60(b). <u>See Nat'l Credit Union Admin. Bd. v. Gray</u>, 1 F.3d 262,264 (4th Cir. 1993) (quoting <u>Park Corp. v. Lexington Ins. Co.</u>, 812 F.2d 894, 896 (4th Cir. 1987).

While an appeal is pending, a district court retains jurisdiction to consider a motion for relief under Rule 60(b).  <u>See</u> <u>Fobian v. Storage Tech. Corp.</u>, 164 F.3d 887,891 (4th Cir. 1999).

---

[45] 2024 Laws Chapter 842
[46] 2024 Laws Chapter 841.
[47] See attached Affidavit.

("[W]hen a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion and should do so promptly.") The Fourth Circuit has instructed that, upon filing of a Rule 60(b) motion while an appeal is pending, the district court may deny the motion, or may "issue an indicative ruling under Fed. R. Civ. P. 62.1 stating that a Rule 60(b) motion raises a substantial issue or would be granted". Federal Rules of Appellate Procedure 12.1.

## III.    ARGUMENT

In light of the passage of MDACA, the Court pursuant to Rule 60(b)(6) should vacate its judgment for the Defendants to allow a limited remand for a Motion to Amend Complaint for just consideration of the Plaintiffs' equal protection, due process and ADA claims.

"To obtain relief under Rule 60(b), a party must show that its motion is timely, that the motion raises a meritorious claim or defense, and that the opposing party would not be unfairly prejudiced by having the judgment set aside. *See* National Credit Union Admin Bd. v. Gray, 1 F.3d 262, 264 (4th Cir.1993).

### A.  Timeliness

While Rule 60(c) requires only that a motion under Rule 60(b)(6) be filed within a reasonable time," it is incumbent upon the movant to "make a showing of timeliness." McLawhorn v. John W. Daniel & Co., Inc., 924 F.2d 535, 538 (4th Cir. 1991).  On May 16, 2024, the Governor approved into law MDACA, a law allowing non-citizens to have access to and provide subsidies for federal and state health programs.  The law will allow the State to subsidize the costs of premiums for these programs (inclusive of Medicare Part D) six months after the program is implemented. In contrast, a letter dated July 1, 2024, reiterated to State Retirees that the subsidy reducing *their* medication costs for Medicare Part D was eliminated. After due diligence, counsel determined an equal protection and due process claim had to be

made since Plaintiffs were entitled to equal protection under the laws. Plaintiff asserts based on the timeline outlined here and above that this Motion for Relief from Enforcement of Judgment is timely.

### B.  Meritorious Defense

"[A]ll that is necessary to establish the existence of a `meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the …. party…"  United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982).

### 1.   Equal Protection Issue (42 U.S.C § 1983)

"The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. It says: `Nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' These provisions are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of color, or of nationality; and the protection of the laws is a pledge of the protection of equal laws." Yick Wo v. Hopkins, 118 U.S. 356, 369 1886).

The passage of MDACA raises serious questions and constitutional concerns that directly impact the Plaintiffs and must be addressed in the context of this lawsuit.

> "The Equal Protection Clause limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations. Even though a state law is facially neutral, its administration or enforcement can effect an unequal application by favoring one class of persons and disfavoring another. If the classification utilized is explicitly stated on the face of a statute or in the reasons given for its administration or enforcement, then the equal protection analysis requires us to determine whether an appropriate relationship exists between the legislative purpose and the classification adopted to achieve that purpose."

Sylvia Development Corp. v. Calvert County, MD, 48 F.3d 810, 819 (4th Cir. 1995) quoting

Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920).  And only if the use of a classification

is thus established does the equal protection analysis proceed with the inquiry into whether the

classification furthers a legitimate legislative purpose. *Id. See also* Tsombanidas v. City of West

Haven, Connecticut, 129 F. Supp 2d 136 (Dist. Conn 2001) (The Equal Protection Clause of the

Fourteenth Amendment "requires states to treat similarly situated persons similarly. In cases in

which a government ordinance discriminates on its face against a non-suspect group of persons,

courts are required to determine whether there is a rational relationship between the ordinance's

classification and a legitimate governmental goal.)

Plaintiffs challenges the constitutionality of a state statute that allows non-citizens to

receive the subsidized benefit of a specific federal health program, Medicare Part D, while

denying that same benefit to their former employees who are United States citizens.  Federal law

provides that aliens (whether legal or illegal) are entitled to the equal protection of the laws of the

United States. See Wong Yang Sung v. McGrath, 339 U.S. 33, 48-51 (1950); Wong Wing v.

United States 163 U.S. 228 (1896) (Even one whose presence in this country is unlawful,

involuntary or transitory is entitled to constitutional protection.) However, protecting them should

not be at the expense of State retirees who have paid for and earned this benefit during their

employment. However, the Equal Protection laws under the Fourteenth Amendment of the United

States Constitution forces a state to govern impartially and not to draw distinctions between

individuals solely on differences that are irrelevant to a legitimate governmental objective. It is

undisputed that the MDACA created two classes of needy persons, indistinguishable except to

whether they are or are not citizens which subjects this issue to close judicial scrutiny.   Plaintiffs

submit that the State of Maryland does not have the authority under the Maryland and United

States Constitution to treat these two groups differently, and by doing so, violates the Constitutional rights of both groups.

When the Senate Finance Committee was confronted with the question of why allow non-citizens the benefit of this assistance, when this particular group of State retirees had earned and paid for this benefit, the response of that committee was to imply that State retirees (who resented and were outraged by this legislation) were full of hate and that it was time to make way for the "New Americans." [48] By classifying citizenship as the primary factor for its decision, the Maryland Senate invites judicial scrutiny in this matter.

> "Whether a statute or administrative action employs a classification explicitly or implicitly, the equal protection analysis of that state action consists of the same two components. The first, a substantive component, requires us to examine whether the end that the state seeks to achieve is a legitimate governmental purpose. The second component of the equal protection analysis, the procedural component or means analysis, examines whether the classification appropriately furthers the legislative purpose. As a general proposition, legislation will be sustained if the classification utilized by the statute is "rationally related to a legitimate state interest."

Sylvia at 820 (citations omitted). It is a legitimate concern of the State to review options and pass laws to provide health (inclusive of prescription drugs) and dental benefits to its citizens, yet it is unlawful to provide this for one group and not another if both groups are the same, since in this case  this unequal treatment reveals a purpose that only can be identified as discriminatory.

The State of Maryland's express intent for the passage of MDACA was to make health care available and affordable to non-citizens. This is inclusive of subsidizing the costs of Medicare Part D for elderly and disabled non-citizens who are identified in the bill as "Qualified Residents".  Senate Bill 349 sought to reinstate the State Retiree Subsidy to make prescription drug coverage affordable for Medicare Eligible State retirees. Both bills were presented to the

---

[48] Senate Finance Committee Hearing – SB 705 Committees - Media (maryland.gov) 1:23:28

Senate Finance Committee in 2024.  MDACA passed and became law, and for the fifth year, a bill dedicated solely to the reinstatement of the prescription drug subsidy for Medicare eligible State retirees died in committee. Plaintiffs assert that if this benefit is made available to one group it should be made available to all. Failure to treat both groups similarly introduces discriminatory intent since it becomes apparent that the goal and purpose of the Maryland General Assembly to grant access and subsidize health care benefits to non-citizens and not to its former employees was a deliberate invidious, discriminatory act. Plaintiffs submit that this cannot be a legitimate governmental purpose in this country where the U.S. Constitution guarantees Equal Protection under the laws.

 The passage of the MDACA does not further a legitimate legislative purpose if its impact is reducing the citizenship of State Retirees to one of second-class status while its impact codifies discrimination. The State of Maryland cannot provide affordable health care to its residents, regardless of their immigration status, by purposely barring State retirees. Requiring that non-citizens pay a subsidized premium, "constitutes a ludicrously ineffectual attempt to stem the tide of illegal immigration at least when compared with the alternative of prohibiting the employment of illegal aliens." Plyler v. Doe, 457 US 202,228 (1982).  Plaintiffs submit that the impact of this law will draw more non-citizens to this State and this access to subsidized health care will become a foundation for indifference to the rule of law in this country.

The State has a legitimate reason to differentiate between persons who are lawfully within the state and those who are unlawfully here.  Yet somehow the roles were reversed. The State of Maryland chose to allocate resources to persons who are not lawfully within the State or the country while denying those resources to its citizens. Both groups need funding to reduce the costs of Medicare Part D.  The fact that the 2011 State retirees, whose salaries were not exempt

from State income tax, will have contributed far more financial support to the State of Maryland through payment of real property, sales, and other taxes over the years than would a non-citizen who maintained a domicile in Maryland for six months prior to his/her registration with the Exchange cannot be qualified rationally as a legitimate government objective. The Defendants actions deny Plaintiffs equal protection under the laws and therefore is unconstitutional.

### 2. Substantive Due Process Issue (42 U.S.C § 1983)

"Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition" … [s]econd, we have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. " Washington v. Glucksberg, 521 U.S. 702 (1997)(*citations omitted*).

State retirees assert that there is a fundamental right to life and self determination which is at issue here.  Plaintiffs are just seeking to reap the rewards of their labor, a right rooted in the belief of the power of the individual.  Values like hard work, patriotism, religion, and having children have defined the American character for generations.  The payoff of hard work to the Plaintiffs is security of person and stability of finances in retirement without having to rely on the government, family or friends to pay for their medical needs as they age. Therefore, Plaintiffs chose government employment based on the promise of retirement benefits similar to that of an active employee during their retirement.   Without the security of the benefit that they earned, their twilight years will be filled with financial chaos and stress to family and friends due to their inability to afford medications that would sustain their life. Without the subsidy to make their medications affordable it is a certainty that many will die.  Plaintiffs have not committed a crime

against the government, society or other persons that warrant the deprivation of their life because access to the affordable medications that they were promised, paid for and earned with their years of service were eliminated.

> [T]he individual's right to make certain unusually important decisions that will affect his own, or his family's, destiny. The Court has referred to such decisions as implicating `basic values,' as being `fundamental,' and as being dignified by history and tradition. The character of the Court's language in these cases brings to mind the origins of the American heritage of freedom—the abiding interest in individual liberty that makes certain state intrusions on the citizen's right to decide how he will live his own life intolerable."

Fitzgerald v. Porter Memorial Hospital, 523 F. 2d 716, 719-720 (CA7 1975). Plaintiffs assert that they are fighting for their lives and without affordable and necessary medications provided through the subsidy, the State of Maryland has issued them a death sentence.

Substantive due process "forbids the government to infringe certain `fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301-02, (1993); Sylvia Landfield v. City of Lose Angelos, 729 F.3d 1189, 1195(2013) ("To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency." (quotation marks omitted).  "[The Supreme] Court has said that the `shock the conscience' standard is satisfied where the conduct was `intended to injure in some way unjustifiable by any government interest,' or in some circumstances if it resulted from deliberate indifference."  Rosales-Mireles v. United States, 585 U.S.129, (2018) quoting County of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998).  No government can argue that removing elderly and disabled persons from a subsidy that reduces their prescription drug coverage is a model public policy to promote the States legitimate emphasis on availability

of health care for its citizens especially if these elderly and disabled persons earned this benefit with their years of service.   That concept is contrary to the American way of life and our system of justice.

The failure to pass Senate Bill 349 in the 2024 Regular Session will deny Plaintiffs access to benefits to which they are lawfully entitled and could make the difference between life and a slow agonizing death. [49]. Rationing of medication is a real concern in addition to the selling of assets to squirrel away enough money to live for a couple more years before their funds are depleted. The Plaintiffs American Dream has become a nightmare.[50]

This delayed gratification generation satisfied the statutory requirement of SPP § 2-508 and worked a minimum of sixteen years to acquire this benefit so that they would not be troubled by lack of affordable medication during retirement. The State does not have the right to deprive them of this benefit and deny them the right to live comfortably after years of planning for their retirement.   Plaintiffs have worked long years in service to the State in order to prepare for a retirement where life's necessities such as money, healthcare and housing would not be the primary consideration because spending time with family and friends and enjoying their twilight years would be their primary goal. It is the harshest of penalties to discover that the State focused all its actions in denying this last shred of dignity to its former employees.   "For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." <u>Yick Wo v. Hopkins</u>, 118 U.S. 356 (1886).

### 3.  American Disability Act ("ADA")

---

[49]See Affidavits submitted by State retirees in this case which are incorporated by reference.
[50]  The Affidavits filed in this case are incorporated into the Motion by reference.

The purpose of the ADA was to establish "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities".  42 U.S.C. § 12101(b)(1). [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §§ 12132.  In order to establish disability discrimination in violation of the ADA, a plaintiff must prove 1) that he is a qualified individual with a disability; 2) that he is otherwise qualified for the benefit in the question; and 3) that discrimination due to his disability served as a motivating factor in his exclusion from the benefit. <u>Baird v. Rose</u>, 192 F.3d 462,466 (1999).[7]

Plaintiff Fitch retired disabled from the State of Maryland in 2012. He had at least five years of creditable service with the State of Maryland prior to July 1, 2011, and retired from the State of Maryland after 23 years.  He was entitled to access subsidized prescription drug benefits during his retirement. Plaintiff Fitch continued his employment with the State of Maryland in exchange for a pension and guaranteed health benefits which included subsidized prescription drug coverage during his retirement. <u>See</u> SPP § § 2-508 & 2-509.1 The promise and provision of certain guaranteed health benefits which included the subsidized prescription drug coverage for the duration of his retirement induced him and all other similarly situated to continue working as a state of Maryland employee and forgo additional options and opportunities for employment and benefits from other employers. Plaintiff Fitch asserts that the State of Maryland discriminated against him based on his disability.

"[I]n order to establish intentional discrimination…(Plaintiff Fitch)… must demonstrate by either direct or circumstantial evidence, "that the decision to deny a 'benefit' was motivated by unjustified consideration of the disabled status of individuals who would be affected by the

decision.". <u>Pathways Psychosocial, et al v. Town of Leonardtown MD *et al*</u>, 133 F. Supp.2d 772, 781 (D. Md 2001).    The State of Maryland eliminated Plaintiff Fitch's (and all other similarly situated) subsidized prescription drug coverage for Medicare Part D in 2011 based on the nature of his retirement.  In doing so, the State of Maryland also eliminated the prescription drug subsidy that reduced his cost of Medicare Part D. Yet, being disabled did not deter the State of Maryland from passing MDACA with the express purpose of granting access and subsidizing State and Federal health programs inclusive of Medicare Part D to non-citizens. As outlined above, Plaintiff Fitch has been challenging the removal of the State Retiree Subsidy for six years legislatively and through the instant case.  Plaintiff Fitch asserts that removing the subsidy from State retirees who are disabled and granting a subsidized prescription drug coverage to disabled non-citizens was an inflammatory and discriminatory act.  Especially in the context of determining the viability of the 2024 Senate Bill 349, which sought to reinstate this benefit for State retirees, and 2024 Senate Bill 705 which sought to bestow this benefit to noncitizens.  The State of Maryland made a choice and that choice violates the ADA and guts the Equal Protection Clause of the Fourteenth Amendment.

### C.  Prejudice to the Non-Moving Party

The Defendants will not suffer any undue prejudice if the Final Judgment entered September 2023 is vacated.  Since 2018, the Plaintiffs (and all those similarly situated) have been receiving the subsidy that reduced the costs of prescription drug costs of Medicare Part D pursuant to this Court's injunction. (ECF 29, ECF 30).  Although the program terminated on January 1, 2019, the subsidy is continuing and in place at this time. Therefore, vacating the Final Judgment to allow Plaintiffs to address the aforementioned claims will not unfairly prejudice the Defendants, it will just maintain the status quo.

If not for the actions of the Maryland General Assembly, by passing this unconstitutional law, this issue would not be ripe.  Plaintiffs should be allowed the opportunity to preserve their constitutional rights.  In fact, not allowing the Plaintiffs to vacate the Judgment and reopen this case for review of these violations of their constitutional rights is prejudicial to the Plaintiffs.

The MDACA requires the State to submit a waiver by October 1, 2025, to allow Maryland non-<u>citizens</u> participation in state and federal health programs.  This waiver must be submitted to the U.S. Secretary of Health and Human Services and the Department of Treasury. Once the waiver is approved, the program will begin in October 2026. Six months after the program begins the General Assembly will determine the parameters of the subsidy.  Plaintiffs should not be removed from the State Retiree Subsidy if there is the remotest chance that non-citizens will be granted access and receive subsidies from the State of Maryland to participate in State and Federal health programs, inclusive of Medicare Part State Retirees.

## IV.    OR IN THE ALTERNATIVE PLAINTIFFS ASSERT THE MDACA IS VIOLATIVE OF THE SUPREMACY CLAUSE AND U.S. AGENCIES DO NOT HAVE THE AUTHORITY TO WAIVE AN ACT OF CONGRESS

It is clear that the State wants to remove the subsidy from Plaintiffs (failure to pass SB 349) and give it to non-citizens, (passage of MDACA) yet they must overcome two issues.  The first is the Supremacy Clause. The second is the case of <u>Loper Bright Enterprises v. Raimondo</u>, [51] that overturned the <u>Chevron v. Natural Resources Defense Council</u>[52] case.

### A.  Supremacy Clause

"[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." <u>Perez v. Campbell</u>, 402 U.S. 637 (1971).  The federal government "has broad, undoubted power over the subject of immigration." <u>Arizona v. United</u>

---

[51] 603 U.S. ___(2024)
[52] 467 U.S. 837 (1984).

States 567 U.S. 394 (2012). That authority derives from its "constitutional power to `establish an uniform Rule of Naturalization,' Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations." *Id*. at 394-95. Hence even though non-citizens are afforded the protections of the Equal Protection Clause under federal law they are not eligible for State and Federal health care programs as a result of laws passed by Congress who acts within its inherent authority granted by the U.S. Constitution.  Therefore, MDACA could be pre-empted by Federal Law and as a result deemed invalid.

In addition, This Supreme Court has recognized that in allocating governmental benefits to a given class of aliens, one "may take into account the character of the relationship between the alien and this country."  Mathews v. Diaz, 426 U.S. 67, 80 (1976).  When that "relationship" is a federally prohibited one, there can, of course, be no presumption that a state has a constitutional duty to include illegal aliens among the recipients of its governmental benefits. Yet Maryland chooses to use its limited resources to make invidious distinctions between residents who are elderly and disabled in conflict with federal law.

### B.  Do US Agencies Have the Right to Waive an Act of Congress?

Loper overturned a forty-year practice of the judiciary to deferring to agencies interpretation of federal laws. The Supreme Court viewed the Chevron presumption[53] as misguided because agencies have no special competence in resolving statutory ambiguities.  Loper at ____. The Court has stated that a statutory ambiguity, "… no matter why it is there, becomes a license authorizing an agency to change positions as much as it likes"… "*Chevron* thus allows agencies to change course even when Congress has given them no power to do so…and undermines the

---

[53] "*Chevron* cannot be reconciled with the APA, as the Government and the dissent contend, by presuming that statutory ambiguities are implicit delegations to agencies. Loper at _____.

rule of law." <u>Loper</u> at __.  In light of the <u>Loper decision</u>, it is unclear whether the Secretary U.S. Department of Health and the Secretary U.S. Department of Treasury have the authority to waive an act of Congress to expressly allow non-citizens one of the benefits of citizenship.  And by extension it is unclear whether the Maryland Department of Budget and Management has the authority under <u>Loper</u> to create the Reimbursement Program or the Qualified Enrollment program if the Maryland General Assembly did not specifically set forth its legislative intent without ambiguity or gaps so that DBM could not "… fill in aspects of the legislative scheme, believing that …experts would be "in a better position" than legislators to do so."  Loper at ____. This issue is one that needs clarification from the Courts since further investigation of the authority of these agencies could again make the Request for Waiver and any subsequent approval invalid.

## V.        Conclusion

For all of the reasons set forth above, Plaintiffs respectfully requests that the Court issue an indicative ruling that it is inclined to grant Plaintiffs Rule 60(b)(6) motion for relief from Final Judgment on Plaintiffs Equal Protection and Due Process Claims, Section 1983 Claim and ADA claim or that the motion raises a substantial issue.


Date:  August 28, 2024                      /s/ *Deborah A. Holloway Hill*
                                            Deborah A. Holloway Hill
                                            (Bar No.: 28384)
                                            21C Arlen Road
                                            Nottingham, MD 21236
                                            O: 410.428.7278
                                            F:  866.499.6906
                                            dahhlaw@outlook.com

                                            *Attorney for Plaintiffs*